Carol A. Sobel (SBN 84483), carolsobel@aol.com
Colleen M. Mullen (SBN 299059), mullen.colleen1@gmail.com
Justine Schneeweis (SBN 305672), justine.schneeweis@gmail.com
John P. Given (SBN 269787), john@johngiven.com
**LAW OFFICE OF CAROL A. SOBEL**
3110 Main St., Suite 210
Santa Monica, California 90405
Tel: (31) 393-3055; Fax: (310) 399-1854

Fernando Gaytan (SBN 224712), fgaytan@lafla.org
Shayla R. Myers (SBN 264054), smyers@lafla.org
**LEGAL AID FOUNDATION OF LOS ANGELES**
7000 S. Broadway
Los Angeles, CA 90003
Tel: (213) 640-3831; Fax: (213) 640-3988

(ADDITIONAL COUNSEL ON NEXT PAGE)

Attorneys for Plaintiffs

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA – WESTERN DIVISION**

| | |
|---|---|
| Carl Mitchell, et al.,<br><br>　　　　　　Plaintiffs,<br><br>　vs.<br><br>City of Los Angeles, et. al.,<br><br>　　　　　　Defendants. | CASE NO. 16-CV-01750 SJO (JPR)<br><br>Hon. S. James Otero<br><br>PLAINTIFFS' REPLY IN SUPPORT OF APPLICATION FOR A TEMPORARY RESTRAIING ORDER AND/OR ORDER TO SHOW CAUSE RE ISSUANCE OF A PRELIMINARY INJUNCTION<br><br>Date: None<br>Time: None<br>Ctrm: 1<br><br>Complaint Filed: March 14, 2016 |

Paul L. Hoffman (SBN 71244)   hoffpaul@aol.com
Catherine Sweetser (SBN 271142) catherine.sdshhh@gmail.com
**SCHONBRUN SEPLOW HARRIS & HOFFMAN, LLP**
723 Ocean Front Walk
Venice, CA 90291
Tel: (310) 396-0731; Fax: (310) 399-7040

Defendants fail to make any significant legal arguments or even dispute most of Plaintiffs' factual evidence.  Instead, the City misconstrues Plaintiffs' testimony, belittles their experiences on the streets, and ignores the real and tangible consequences for people whose belongings are seized and destroyed.

The evidence put forth by Defendants is as irrelevant as it is inflammatory and, putting aside Defendants' parade of horribles, Defendants do not dispute that they have a practice of destroying property, or that the notice and process for getting the property back is constitutionally inadequate.  Therefore, Plaintiffs have more than met their burden on each element of the required injunctive relief showing.  See *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011).

**I.       THE RECORD SUPPORTS PLAINTIFFS' APPLICATION FOR A TEMPORARY RESTRAINING ORDER AND INJUNCTION**

Defendants do not argue, nor can they, that they provide the procedural due process required by *Lavan v. City of Los Angeles* "before permanently depriving [individuals] of their possessions."  693 F.3d 1022, 1033 (9th Cir. 2012).  Defendants destroy a significant amount of homeless people's belongings, and the owners have no way to contest this deprivation. *See Logan v. Zimmeraman Brush Co.*, 455 U.S. 422, 433 (1991).  By Defendants' own account, the City destroyed a substantial amount of Plaintiff' belongings when they were taken into custody for minor quality of life offenses without any opportunity to contest that destruction.

 It is also undisputed that some of the damage Defendants use to justify the destruction of property is manufactured by the City itself.  The City admits that Mr. Roque's tent was thrown away because it was ripped but, egregiously, those rips came at the hands of City employees. Plaintiffs' Ex. 6 A-F; 18 A-D.  This is not an isolated incident, and Defendants do not argue that it is.  *See* concurrently filed Declaration of Shayla Myers and Exhibits 23 and 24.

Defendants attempt to justify these policies and practices by relying on the emergency exception in *Lavan*, which provides that the City may destroy property that "presents an immediate threat to public health or safety." 693 F.3d at1024. The

evidence does not support the City's post hoc rationalization that such an emergency exists here. At the very least, there are "serious questions going to the merits," of whether the City's practices justify the extraordinary step of permanently depriving individuals of their belongings without any way to contest the City's determination.

Defendants' own evidence shows that homeless individuals' belongings are permanently destroyed based only on a cursory review of the items and a summary determination that the items "*may* have come in contact with a hazardous substance or infectious agent," or were "substances, wastes or materials which *may* be a ***potential*** health hazard." Pederson Decl., Exh. 4, 20, 48 (emphasis added). The City's definition of a health hazard as "statistically significant evidence based on at least one study . . . that acute or chronic health effects may occur in exposed persons" does not require actual evidence of an immediate threat to public health and safety. *Id.*, ¶ 5. Even if the only property destroyed pursuant to this exception is that of arrestees and what is left on the sidewalk after streets are roped off for a scheduled cleaning, this argument only further undermines the City's extraordinary position that these belongings pose such an immediate risk that no due process can be provided.

Moreover, the Los Angeles County Department of Health, brought in by the City during the *Lavan* litigation to support the City's nearly identical health and safety claim in that case, rejected the idea that the property of homeless individuals needed to be destroyed. Instead, the County cited the City, identifying the dire situation for homeless individuals and the ongoing failure to provide sufficient toilets and trash cans. *See* Request for Judicial Notice ("RJN") and Exhibits 19 and 20 (LA County Department of Public Health reports). Finally, the speculative health risk to the general community from exposure to these conditions is outweighed by the immediate adverse health effects caused by the destruction of tents, blankets, and medical items for persons with no option but to live on the sidewalk. *See* Pl. Memo at 15-17.

It is also not enough for Defendants to argue that the property belongs to an arrestee and must be collected. Pursuant to LAPD policy, the alleged violations by Coleman

1 and Mitchell were chargeable as infractions under LAMC §41.45(d), which mandates
2 citing and releasing in the field.  *See Edgerly v. City and Cnty of San Francisco*, 713
3 F.3d 976, 984 (9th Cir. 2013); RJN and Exh. 21 and pp. 10-11, Los Angeles City
4 Council File 13-1092 ("Direct Citations") (15 minutes for cite and release); Exh. 21;
5 LAPD Manual Vol. 4, Sec. 216.66, Exh. 22.  Even for a misdemeanor, Coleman and
6 Mitchell were required to be released immediately after booking, pursuant to California
7 Penal Code § 853.6, which is mandatory in any misdemeanor warrantless arrest.
8 *Schmidlin v. City of Palo Alto*, 157 Cal. App. 4th 728, 761 (2007). *See also MacKinney*
9 *v. Nielsen,* 69 F.3d 1002, 1009 (9th Cir. 1995).  In fact, even Mr. Roque was entitled to
10 release on a misdemeanor warrant on a "Non Traffic Notice to Appear."  Exh. 22.  No
11 exception under the Penal Code or City policy justifies holding Plaintiffs under the
12 facts of their arrests, so there was no need to take their property in the first place.

13    In addition, Defendants have failed to dispute Plaintiffs' extensive evidence
14 regarding the difficulty, if not impossibility, of reclaiming seized property. They do not
15 dispute that a homeless individual arrested today and released this afternoon will have
16 no way to get their belongings back until at least next Tuesday, when the Excess
17 Property Storage facility opens after the weekend.  Even then, there is no guarantee
18 their tents, tarps and blankets were preserved, or that if anything was saved, it is stored
19 at an inaccessible or unidentified location, or that the facility will be open during its
20 posted hours, if they get notice at all of how to get their belongings back.

21    Defendants do not and cannot dispute that Mr. Roque tried for months to get his
22 belongings back, to no avail.  Mr. Mitchell was never told where he could get the few
23 items that were preserved.  The declarations of Gabby Cervantes, Eric Ares, and Steve
24 Richardson evince that these are not isolated incidents, but rather, a policy that violates
25 Plaintiffs' due process rights.  *See Memphis Light, Gas and Water Division v. Craft*,
26 426 U.S. 1, 17 (1974); *Nozzi v. Housing Auth. Of City of LA*, 806 F.3d 1178 (9th Cir.
27 2015). The City does not argue otherwise.

28    Finally, Defendants fail completely to address Plaintiffs' argument that the practice

3

of destroying homeless individuals' belongings and releasing homeless individuals from custody without any access to tents, blankets, medications or other items necessary to survive on the streets violates Plaintiffs' substantive due process rights. The City's own evidence demonstrates the City's "deliberate indifference" to the danger the City's practices create for homeless individuals in Skid Row. *Kennedy v. City of Ridgefield*, 439 F.3d 1055, 1062 (9th Cir. 1989).

When Judy Coleman was taken into custody on Friday, February 12, the City destroyed a significant number of her belongings, including blankets, tent and other items, but kept her medications and medical devices. Pederson Decl., Exh. 7. On Sunday, February 14, when she was finally released, the LAPD gave her nothing to protect her from the elements. They did not return her medication or her medical devices, even though she was treated for diabetes in custody. They did not give her a walker to replace the one stored in the City's warehouse. She was given nothing, and the City knew she could not get her belongings back for at least four days. In reality, it took her almost a month to get some of her belongings back, but not everything the City claimed it kept. Between her arrest and her release, when she was received a property receipt, three more bags of property were destroyed or lost. *See* Pl. Exh. 9.

Mr. Roque and Mr. Mitchell's experiences were no different. Mr. Mitchell was released in the middle of the night, with nothing to protect him against the elements. Mr. Roque had no way to get his belongings back after his release, despite his repeated efforts, and he went for weeks without a tent or any other items necessary to get by on the streets. These circumstances are repeated every day in Downtown Los Angeles—when the LAPD takes individuals into custody, the City shows no regard for the items that individuals will need when they are released, or what they will do if their belongings are destroyed. This alone justifies a TRO, particularly as the City's winter shelter program has closed, but cold nighttime temperatures and rain continue.

## II. ATTACKS ON PLAINTIFFS' CREDIBILITY ARE NOT SUPPORTED BY THE RECORD

Defendants' ad hominum attacks on Plaintiffs' credibility, which form the crux of

1  the City's opposition, are wholly unsupported by the record.[1]  No video shows Mr.
2  Roque "handling his property in all areas of his encampment." Def. Opp., 6, ln. 12-13.
3  To the contrary, his statement that the second tent and the property in it was not his is
4  bolstered by Plaintiffs' evidence documenting two other individuals who arrive and
5  inform Sgt. Richter that the property was theirs. Ares Supp. Decl. ¶¶ 6-8; Ex. 14. *See
6  also* Pederson Decl., Exh. 8. The City's videos at Exhibits F and G do not prove
7  Defendants' speculative conclusions.  Mr. Roque is shown handcuffed in the back of
8  the car, looking forward, while the arresting officers talk to each other about what
9  property is his.  No reasonable basis exists to believe he heard them. Nor are
10 Defendants' other attacks on Plaintiffs supported by the record.

### III.  AN INJUNCTION WILL NOT PREVENT THE CITY FROM CLEANING THE STREETS IN SKID ROW

Nothing about Plaintiffs' requested relief prevents the City from conducting street cleaning it deems necessary, and Defendant has not put forth a shred of evidence to suggest that, with the requested injunction, the City would be hindered from doing anything other than destroying individuals' belongings.  Nothing in Defendants' declarations suggest that the property cannot be stored in order to give Plaintiffs an opportunity contest the seizure and destruction on in a way that is accessible and provides adequate notice, as the U.S. Constitution requires.

Dated: April 8, 2016                       Respectfully submitted,
                                           Law Office of Carol A. Sobel

                                               /s/ Carol A. Sobel
                                           Attorneys for Plaintiff

---

[1] Defendant's request for a hearing for Rule 11 sanctions is without merit and procedurally defective, and therefore cannot be sustained. *Witterrowd v. Am. Gen. Aunnity Ins. Co.*, 556 F.3d 815, 826 (9th Cir. 2009).