UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

Priority ____
Send ____
Enter ____
Closed ____
JS-5/JS-6 ____
Scan Only ____

| | |
|---|---|
| **CASE NO.:** CV 16-01750 SJO (GJSx) | **DATE:** April 13, 2016 |
| **TITLE:** Carl Mitchell, et al. v. City of Los Angeles et al. | |

========================================================================
**PRESENT: THE HONORABLE S. JAMES OTERO, UNITED STATES DISTRICT JUDGE**

Victor Paul Cruz                           Not Present
Courtroom Clerk                            Court Reporter

**COUNSEL PRESENT FOR PLAINTIFFS:**        **COUNSEL PRESENT FOR DEFENDANTS:**

Not Present                                Not Present

========================================================================
**PROCEEDINGS (in chambers): ORDER GRANTING PLAINTIFF'S APPLICATION FOR PRELIMINARY INJUNCTION** [Docket No. 13]**.**

This matter comes before the Court on Plaintiffs Carl Mitchell, Michael Escobedo, Salvador Roque, Judy Coleman, Los Angeles Catholic Worker, and Cangress' (collectively, "Plaintiffs") *Ex Parte* Application for (1) Temporary Restraining Order ("TRO"), and (2) Order to Show Cause Re: Issuance of a Preliminary Injunction, filed on March 30, 2016. (*See generally* Ex Parte Appl. for a TRO And/Or Order to Show Cause Re Issuance of a Prelim. Inj. ("Appl."), ECF No. 13.) Defendants City of Los Angeles ("the City"), Lieutenant Andrew Mathes, Sergeant Hamer, and Sergeant Richter ("Individual Defendants") (collectively, "Defendants") filed an Opposition to the Application ("Opposition") on April 6, 2016. Plaintiffs filed a Reply ("Reply") on April 8, 2016. For the following reasons, the Court **GRANTS** the Application and **ISSUES** a preliminary injunction, as specified below.

I.      FACTUAL AND PROCEDURAL BACKGROUND

        A.      Factual Background

Plaintiffs, a group of homeless individuals and organizations providing support services to the homeless, sue Defendants for purported violations of their constitutional and statutory rights. According to Plaintiffs, the City has undertaken a mass practice and policy of clearing Skid Row and its surrounding areas of homeless people. Since around December of 2015, the City and the Individual Defendants have allegedly seized and deprived Plaintiffs of property, without a pre- or post-deprivation hearing, in violation of the Fourth and Fourteenth Amendments to the Constitution and various federal and California state laws. (*See generally* First Am. Compl. ("FAC"), ECF No. 1).

Plaintiffs' FAC alleges as follows. Since around December of 2015, LAPD officers and City employees have used arrests for what Plaintiffs call "minor quality of life offenses," (Appl. P. & A. 1), as a pretext to seize and confiscate Plaintiffs' property. The City's arrests take place pursuant

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

CASE NO.:  CV 16-01750 SJO (GJSx)          DATE:  April 13, 2016

to two LA County ordinances, Los Angeles Municipal Code ("LAMC") Section 41.18(d), which prohibits sitting, sleeping, or lying on sidewalks, and LAMC Section 41.45, which prohibits the unauthorized use of shopping carts.  (FAC ¶¶ 47-49.)  During some arrests, LAPD officers allegedly cordon off areas where homeless people are located and contact the Department of Sanitation and Street Services ("Dep't of Sanitation"), which in turn deploys trash trucks and other personnel to clean and dispose of the homeless people's property.  (FAC ¶¶ 51-53.)

The property confiscated during arrests and cleanups include tents, medications, personal items, and shopping carts provided by organizations for use by the homeless.  (FAC ¶¶ 20-25, 32-38.)  Plaintiffs claim that city workers do not use care in handling this property, and that the workers summarily dispose of tents, tarps, blankets, shoes, and clothing.  (FAC ¶ 55.)

Plaintiffs additionally claim that they have not been able to recover property after seizures take place.  Although the LAPD normally itemizes and tags property taken during an arrest, officers and city employees do not separately catalog property seized from different homeless individuals.  (FAC ¶ 58.)  According to Plaintiffs, the confiscated property is stored at various locations, including a "hard-to-identify spot in the middle of a parking lot across from the Roybal Federal Courthouse," which is only accessible between the hours of 8:00 am and 1:00 pm on Tuesday through Friday.  (FAC ¶ 60.)  As a result, property is lost after the City's arrests and cleanups. (FAC ¶ 58.)

  B. Prior Proceedings

Plaintiffs bring eleven causes of action stemming from Defendants' arrests of homeless individuals and cleanups of areas where they are located.  Plaintiffs claim that Defendants' confiscation and destruction of Plaintiffs' property, without a warrant or a pre- or post-deprivation hearing, violates the Fourth, Fifth and Fourteenth Amendments of the Constitution.  (FAC ¶¶ 72-86).  Plaintiffs also contend that Defendants falsely arrested certain Plaintiffs based on faulty allegations that they stole shopping carts, committed the tort of conversion by wrongfully seizing Plaintiffs' property, and contravened California state and federal laws protecting disabled individuals by depriving homeless people suffering from disabilities of necessary medications and medical equipment. (FAC ¶¶ 87-102, 106-110 119-21).

On March 30, 2016, Plaintiffs filed the instant Application, seeking to enjoin the City from confiscating property during arrests and cleanups of homeless areas. Plaintiffs contend that "they have lost all or nearly all of their possessions without prior notice and adequate advisement of post-deprivation resources to reclaim their property" and that "the loss of key items, including

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

CASE NO.: CV 16-01750 SJO (GJSx)          DATE: April 13, 2016

[Plaintiffs'] medications, has taken an enormous toll on them, especially when they are left without protection from the elements at night."[1]  (Appl. 4.)

II.     DISCUSSION

To obtain a preliminary injunction, Plaintiffs, the moving party, must show:  (1) a likelihood of success on the merits; (2) a likelihood of irreparable harm to the moving party in the absence of preliminary relief; (3) that the balance of equities tips in favor of the moving party; and (4) that an injunction is in the public interest.  *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008); *see also Save Our Sonoran, Inc. v. Flowers,* 408 F.3d 1113, 1120 (9th Cir. 2005).  The Ninth Circuit also employs a sliding scale test whereby the existence of "serious questions going to the merits and a balance of hardships that tips sharply towards the plaintiff can support issuance of a preliminary injunction, so long as the plaintiff also shows that there is a likelihood of irreparable injury and that the injunction is in the public interest." *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011) (internal quotation marks omitted).  "These formulations are not different tests but represent two points on a sliding scale in which the degree of irreparable harm increases as the probability of success on the merits decreases." *Big Country Foods, Inc. v. Board of Educ. of the Anchorage Sch. Dist.*, 868 F.2d 1085, 1088 (9th Cir.1989).  Overall, a preliminary injunction is an "extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter*, 555 U.S. at 22.

    A.     Likelihood of Success on the Merits

Plaintiffs bring this Application based on Defendants' purported violations of the Fourth Amendment and the Fourteenth Amendment Due Process Clause. (Appl. P.& A. 4-18.) The Court addresses these two causes of action in turn and ultimately concludes that Plaintiffs have made a threshold showing of a likelihood of success on the merits.[2]

\\

---

[1] The instant case is related to a prior case in the Central District of California, *Tony Lavan et al. v. City of Los Angeles*, CV-11-2874 (PSG).

[2] Plaintiffs bring two causes of action based on the Fourteenth Amendment, the first based on procedural due process, Defendants' deprivation of Plaintiffs' property without notice or an opportunity to be heard, (*see* FAC ¶¶ 78-83), and the second based on substantive due process, (FAC ¶¶ 84-86).  Having concluded that Plaintiffs have made a threshold showing of a likelihood of success on the procedural due process cause of action, the Court sees no need to reach Plaintiffs' substantive due process claim at the present stage of the litigation.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

CASE NO.: **CV 16-01750 SJO (GJSx)**          DATE: **April 13, 2016**

      1.      <u>Fourth Amendment</u>

The Fourth Amendment protects the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures," and requires that a warrant sanctioning a search or seizure be supported by probable cause. U.S. Const., amend. IV.

As a preliminary matter, the Ninth Circuit has held that homeless individuals have a Fourth Amendment property interest in unattended property left on public sidewalks. *See Lavan v. City of Los Angeles*, 693 F.3d 1022, 1030 (9th Cir. 2012). "The Fourth Amendment protects against unreasonable interferences in *property interests* regardless of whether there is an invasion of privacy." *Miranda v. City of Cornelius*, 429 F.3d 858, 862 (9th Cir. 2005) (emphasis added). The Supreme Court has clearly held that personal property located in a public area is protected by the Fourth Amendment, despite its physical location in a public space. *See Soldal v. Cook Cnty*, 506 U.S. 56, 68 (1992).

The Court next addresses whether Defendants' actions in arresting individuals and confiscating their property constitute an "unreasonable" seizure, precluded by the Fourth Amendment. On the one hand, Defendants correctly assert that there are significant public health and safety issues involved in the arrests and cleanups of sidewalks and streets where homeless persons reside. For example, some of the property owned by homeless individuals may be contaminated by hazardous materials located on a Skid Row street; other property may be infested with rats and infected with rodent and other vermin transmitted diseases. (*See, e.g.*, Decl. of Lt. Andrew Mathes ("Mathes Decl.") ¶¶ 3-6, ECF No. 38-1; DVD, Ex. B to Opp'n, ECF No. 38-4.)[3] LAMC Section 56.11.3(f) empowers City employees to clear an area of property that "poses an immediate threat to the health and safety of the public." In the injunction issued in *Lavan*, the Ninth Circuit confronted very similar factual circumstances to those at issue here and recognized that some seizures of property may be necessary to protect against "an immediate threat to public health or safety." *Lavan*, 693 F.3d at 1026. In the instant case, the City claims it complies with a strict checklist to determine if immediate health hazards are present in property owned by homeless individuals. (Decl. of Steven Pederson ("Pederson Decl.") 15, ECF No. 38-2.) The Court commends the City for following this protocol. If the City deems that specific property is infected with disease or toxins, then the immediate seizure of this specific property is not unreasonable under the Fourth Amendment. The narrow preliminary injunction issued here should not dissuade Defendants from pursuing this important public health duty.

---

[3] Certain areas of the city depicted in the submitted video evidence are so dirty, it is a surprise that a widespread occurrence of infectious disease has not yet impacted the homeless community.

CASE NO.: **CV 16-01750 SJO (GJSx)**          DATE: **April 13, 2016**

On the other hand, Defendants sometimes seize and summarily dispose of essential medications and medical equipment, without distinguishing contaminated property from other property and without separating each individual's property.[4] Afterwards, Plaintiffs face significant challenges in recovering this property, some of which is necessary for their basic survival. (*See* Decl. of Carl Anthony Mitchell ("Mitchell Decl.") ¶¶ 7, 10-13, ECF No. 13-3; Decl. of Eric Ares ("Ares Decl."), ¶¶ 12-14, 17-18, ECF No. 14; Decl. of Salvador Richard Roque ("Roque Decl.") ¶¶ 5, 8, 13, 18, ECF No. 15; Decl. of Gabby Cervantes ("Cervantes Decl.") ¶¶ 6-12, ECF No. 16; Decl. of Judy Coleman ("Coleman Decl.") ¶¶ 10, 13-14, 16, ECF No. 17; Decl. of Michael Escobedo ("Escobedo Decl.) ¶¶ 10-11, 13, ECF No. 18.) In one case, certain Defendants apparently confiscated medical equipment used by a homeless person suffering from diabetes to treat her sugar and insulin levels. (Coleman Decl. ¶¶ 9-10.) In another case, some of the individual Defendants appeared to take away property from a person lying on the sidewalk, visibly suffering physical pain. (DVD, Ex. 14 at 4:40-6:00, ECF No. 31.)

Defendants attempt to challenge these affidavits and video footage by claiming that "Plaintiffs to a person are not being truthful." (Opp'n 6.) They urge the Court to watch their video footage, which shows some Plaintiffs having time to take and store their property at the time of arrest and cleanup. (Opp'n 6; DVD, Ex. E to Opp'n, ECF No. 38-4; DVD, Ex. F to Opp'n, ECF No. 38-4.) These videos also appear to show Plaintiffs Judy Coleman, Carl Mitchell, Michael Escobedo, and Salvador Roque making statements to police officers contradicting facts stated in their affidavits. (Opp'n 6.) Roque, for example, admits to having contraband in his possession at the time of his arrest. (DVD, Ex. H to Opp'n, ECF No. 38-4.) The City is correct that the possession of contraband would justify some searches and seizures incident to an arrest, although the seizure of the entirety of Roque's property, including his tent, raises countervailing Fourth Amendment concerns, especially after LAPD officers had placed Roque in handcuffs. *See Arizona v. Gant*, 556 U.S. 332, 335 (2009). Similarly, Escobedo asserts in his affidavit that the police officers dumped his tent into a garbage truck at the time of the cleanup. (Escobedo Decl. ¶ 7.) In video footage, however, LAPD officers appear to give Escobedo and those around him some time to clear their belongings and take tents down. (*See* DVD, Ex. E, ECF No. 38-4.) Nevertheless, the video footage only shows an isolated period of time, and it may be that City officials discarded Escobedo's property afterwards.

In preliminary injunction cases where a moving party's assertions "are substantially controverted by counter-affidavits, a court should not grant [injunctive] relief unless the moving party makes a further showing sufficient to demonstrate that he will probably succeed on the merits." *K-2 Ski Co.*

---

[4] The Court recognizes that in many instances, separating property that is contaminated from property that is not is, at best, difficult.

CASE NO.: **CV 16-01750 SJO (GJSx)**           DATE: **April 13, 2016**

*v. Head Ski Co.*, 467 F.2d 1087, 1089 (9th Cir. 1972). This is not the case here. The counter-evidence submitted by Defendants, including the videos, are at best inconclusive.[5] At the current stage of litigation, the Court cannot be asked to act as the final trier of fact. For now, the Court has the limited task of determining whether to issue a preliminary injunction. In this context, the Court accepts the facts contained in Plaintiffs' affidavits as true statements made under penalty of perjury, as required by federal statute. *See* 28 U.S.C. § 1746.

Considering the totality of the circumstances, including the significant claims alleged in the affidavits, the Court concludes that some of Defendants' seizures of property are unreasonable under the Fourth Amendment, particularly the seizure of essential medication and medical equipment. As the Ninth Circuit held in *Lavan*, "[v]iolation of a City ordinance does not vitiate the Fourth Amendment's protection of one's property. Were it otherwise, the government could seize and destroy any illegally parked car or unlawfully unattended dog without implicating the Fourth Amendment." *Lavan*, 693 F.3d at 1029. Plaintiffs have established a likelihood of success on the merits of their Fourth Amendment claim. *See Lavan*, 693 F.3d at 1030 ("Here, by seizing and destroying Appellees' unabandoned legal papers, shelters, and personal effects, the City meaningfully interfered with Appellees' possessory interests in that property.")

      2.      <u>Fourteenth Amendment Due Process</u>

Plaintiffs are also entitled to a preliminary injunction based on the likelihood of success on the merits of their Fourteenth Amendment procedural due process claim. The Fourteenth Amendment's Due Process Clause provides that "No state shall . . . deprive any person of life, liberty, or property, without due process of law." U.S. Const., amend. XIV. "Application of this prohibition requires the familiar two-stage analysis: [The Court] must first ask whether the asserted individual interests are encompassed within the Fourteenth Amendment's protection of 'life, liberty or property'; if protected interests are implicated, [the Court] then must decide what procedures constitute 'due process of law.'" *Ingraham v. Wright*, 430 U.S. 651, 672 (1977).

---

[5] The Court has received Plaintiffs' and Defendants' Objections to the evidence submitted but declines to rule on these objections here. (*See generally* Obj. to Evid., ECF No. 38-3; Obj. to Def.'s Evid., ECF No. 46.) Although a motion for preliminary injunction must be supported by evidence that goes beyond the unverified allegations of the pleadings, a district court may rely on otherwise inadmissible evidence in deciding such a motion. *See San Francisco Veteran Police Officers Ass'n v. City & Cnty. of San Francisco*, 18 F. Supp. 3d 997, 1006 (N.D. Cal. 2014). The Court's consideration of this evidence in the preliminary injunction context is without prejudice to either side objecting at trial.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

CASE NO.: CV 16-01750 SJO (GJSx)      DATE: April 13, 2016

In *Lavan*, the Ninth Circuit squarely held that homeless individuals retain an "interest in the continued ownership of their personal possessions." *Lavan*, 693 F.3d at 1031. After the decision in *Lavan*, several district courts in this Circuit have echoed its reasoning, concluding that homeless individuals have a property interest in possessions, such as tents, tarps, blankets, and medications, even when these possessions are kept in a public space. *See, e.g.*, *Sanchez v. City of Fresno*, 914 F. Supp. 2d 1079, 1103 (E.D. Cal. 2012) ("If there has ever been any doubt in this Circuit that a homeless person's unabandoned possessions are 'property' within the meaning of the Fourteenth Amendment, that doubt was put to rest by the Ninth Circuit's September 2012 Decision in *Lavan v. City of Los Angeles . . . .*"); *Carr v. Oregon Dep't of Transp.*, No. 3:13-CV-02218-MO, 2014 WL 3741934, at *4 (D. Or. July 29, 2014) ("Within this most basic scope of the due process guarantee is a homeless person's ownership interest in property that she has left unattended but not abandoned.")

Having established that Defendants' actions in the instant case implicate property within the meaning of the Due Process Clause, the Court next applies the test set forth in *Mathews v. Eldridge* to determine whether the City has met procedural due process requirements. 424 U.S. 319 (1976). The *Mathews* test balances three factors: "(1) the private interest that will be affected by the official action; (2) the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and (3) the Government's interest, including the fiscal and administrative burdens that additional or substitute procedural requirements would entail." *Id.* at 321. The Court addresses each prong of *Mathews* in turn.

     a.      <u>Private Interest</u>

Plaintiffs' affidavits establish that the private interest at stake in the instant litigation is significant and touches on the basic survival of homeless individuals. Tents and non-contaminated blankets are necessary to protect individuals from rain and extreme weather. (*See, e.g.*, Escobedo Decl. ¶ 12.) Medications and medical equipment are necessary to treat chronic ailments and conditions. (*See, e.g.*, Coleman Decl. ¶ 10.)

     b.      <u>Risk of Erroneous Deprivation</u>

Plaintiffs' sworn declarations also establish that there is a significant risk that the City erroneously deprives Plaintiffs of their property through its actions. Although the City apparently posted Notices advising of street cleaning and requiring that Plaintiffs remove their property from designated areas, (Decl. of Steven Pedersen ("Pedersen Decl.") 8, 12), Plaintiffs contend that the City actually offered them basically no notice of the seizure of personal property. According to Plaintiffs, the Individual Defendants sometimes gave Plaintiffs a moment's warning, ordering

CASE NO.: **CV 16-01750 SJO (GJSx)**          DATE: **April 13, 2016**

homeless persons to take their tents down, just before arresting the homeless or confiscating their property. (Mitchell Decl. ¶¶ 4-7; Roque Decl. ¶¶ 7-8; Cervantes Decl. ¶¶ 4-6; Escobedo Decl. ¶ 9.)

The City's current procedures also do not appear to afford the homeless a meaningful way to recover confiscated property. The City posted Notices advising Plaintiffs of locations where property would be located. (Pedersen Decl. 10). Despite this, some Plaintiffs claim that they have been forced to shuttle between different warehouses, which essentially results in the City not returning their property. (Roque Decl. ¶¶ 14-29; Cervantes Decl. ¶¶ 7-12.) Even when the homeless successfully find storage locations, the property returned may be incomplete. (Decl. of Steve Richardson ("Richardson Decl.") ¶¶ 14-22, ECF No. 22.)

The process afforded by the City carries a significant risk that homeless individuals are erroneously deprived of property. In *De-Occupy Honolulu v. City & Cty. of Honolulu*, a district court in Hawaii confronted a due process challenge similar to the one at issue here; the court upheld a city ordinance permitting the clearing of public spaces occupied by homeless people. CV No. 12-00668 JMS-KSC, 2013 WL 2285100, at *5-*7 (D. Haw. May 21, 2013). The Hawaii district court cited approvingly to the fact that the city ordinance provided sufficient notice and process, including twenty-four hours written notice before seizure of items, post-seizure notice describing the items taken and the location where they could be retrieved, and the storage of items for thirty days before destruction. *Id.* The Court is persuaded by the reasoning of *De-Occupy Honolulu* and applies similar principles here. Were the City to actually provide Plaintiffs additional process, including advance notice of seizures and cleanups and a readily accessible storage facility, it would allow Plaintiffs to protect and recover their essential property.

        c.    <u>Government's Interest</u>

The government's interest, including the cost of additional procedural safeguards on the City, are significant. The Court takes judicial notice of the exhibits submitted by Plaintiffs, which underscore the massive challenge created by Los Angeles' homelessness epidemic.[6] The numbers are staggering. Los Angeles apparently had around 41,000 homeless individuals in January of 2015, and this number may be growing today. (Ex. 11 to Appl., U.S. Dep't of Hous. and Urban Dev., 2015 Annual Homeless Assessment Report to Congress 16, ECF No. 19.) The Court is keenly

---

[6] The Court may take judicial notice of a fact "not subject to reasonable dispute because it is generally known within the trial court's territorial jurisdiction; or can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b).

CASE NO.: <u>CV 16-01750 SJO (GJSx)</u>          DATE: <u>April 13, 2016</u>

aware of the public health hazards posed by this situation. Seized property may be contaminated by toxins and communicable diseases. (Pedersen Decl. ¶¶ 5, 12-13, 15.) Addressing the challenge posed by homelessness will necessarily impose heavy costs on the City and its residents.

However, the Ninth Circuit's decision in *Lavan* makes clear that these costs do not justify infringing the basic constitutional rights of homeless individuals. Plaintiffs' due process challenge essentially asks the Court to consider whether one of the City's means of addressing homelessness, the arrests and summary confiscation of the property of the homeless, outweighs the individual interests of homeless people. Given the scope of the property interest at stake, which encompasses essentials such as medications and medical equipment, the Court believes that the City can offer additional process to Plaintiffs. The City, for example, could establish a more organized catalog of property seized, rather than the haphazard structure currently in place. The City also could carefully enforce its public health mandate, only seizing property that clearly poses an immediate risk to the public. In this vein, the City could provide advance notice advising the homeless of an upcoming cleanup and seizures, and advising the homeless to separate essential property such as medications and medical equipment from other property that might be confiscated.

If such additional protocol and process were put in place, the City would not contravene the Due Process Clause of the Fourteenth Amendment. At the current time, however, the City, in many instances, appears to be confiscating all property, without differentiating the types of property at issue or giving homeless people a meaningful opportunity to separate essential medications or medical equipment from their other property. Accordingly, Plaintiffs have established a threshold showing of a likelihood of success on the merits of the procedural due process claim.

  B. <u>Likelihood of Irreparable Harm to the Moving Party in the Absence of Preliminary Relief</u>

Because Plaintiffs have clearly carried their burden to establish meritorious claims based on the Fourth Amendment and the Fourteenth Amendment, the Ninth Circuit's sliding scale test requires the issuing of a preliminary injunction, so long as Plaintiffs meet the minimum requirements for a preliminary injunction. *See Alliance for the Wild Rockies*, 632 F.3d at 1135. When it comes to the second prong of the preliminary injunction test, Plaintiffs do show a likelihood of irreparable harm based on the City's alleged Fourth Amendment and Fourteenth Amendment violations. "'[A]n alleged constitutional infringement will often alone constitute irreparable harm.'" *Associated Gen. Contractors of California, Inc. v. Coal. for Econ. Equity*, 950 F.2d 1401, 1412 (9th Cir. 1991) (quoting *Goldie's Bookstore v. Superior Ct.*, 739 F.2d 466, 472 (9th Cir.1984)).

CASE NO.:   CV 16-01750 SJO (GJSx)                        DATE:   April 13, 2016

Moreover, the City apparently has continued arresting homeless individuals and confiscating their property in areas of Skid Row since the filing of the instant lawsuit. (Ares Decl. ¶ 10.) The Court is especially concerned about the possibility of continuing constitutional violations because the Ninth Circuit decision in *Lavan* required that the City stop practices similar to the ones at issue in the instant litigation. Because of the possibility of constitutional violations in the future, Plaintiffs have shown that they may suffer irreparable harm in the absence of a preliminary injunction.

      C.      Balance of Equities and the Public Interest

The Court finally considers the possible harm that a preliminary injunction might cause the City. To justify a preliminary injunction, Plaintiffs must establish that the balance of equities and the public interest favors their position. *See Thalheimer v. City of San Diego*, 645 F.3d 1109, 1128 (9th Cir. 2011). This balancing test is similar to the analysis of the three prongs of *Mathews* considered *supra*. On the one hand, the Court takes into account the immediate public health hazards posed by some of the property held by homeless individuals. There are areas of Skid Row that contain biohazardous material, which may breed bacteria and disease. (Pedersen Decl. ¶¶ 5, 12-13, 15.) On the other hand, the Court recognizes the significant, constitutionally-protected property interests at stake for the homeless. These property interests encompass essentials, necessary for their day-to-day survival.

Ultimately, as in *Lavan*, the Court holds that the balance of equities and the public interest favor Plaintiffs. *See Lavan*, 693 F.3d at 1032-33; *Lavan v. City of Los Angeles*, 797 F. Supp. 2d 1005, 1019 (C.D. Cal. 2011). Although a preliminary injunction will place additional burdens on the City to keep Los Angeles safe, Plaintiffs risk greater harm if the preliminary injunction is not granted. To put it bluntly, Plaintiffs may not survive without some of the essential property that has been confiscated.

III.     RULING

The Court has reviewed Plaintiffs' proposed order, and concludes that it cuts too broadly. (*See generally* Proposed Order Granting Pl.'s Appl., ECF No. 13-2.) The Court will not issue a sweeping preliminary injunction that will only serve to instigate further litigation to enforce the injunction. The Court also is sensitive to placing too onerous a burden on the City, especially given the scope of the homelessness challenge in Los Angeles. The Court issues the following preliminary injunction.

The City, its agents and employees are hereby enjoined from:

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

CASE NO.: <u>CV 16-01750 SJO (GJSx)</u>     DATE: <u>April 13, 2016</u>

1. Confiscating property in Skid Row or its surrounding areas, incident to an arrest or as part of a cleanup of an area where homeless people are located, absent an objectively reasonable belief that it is abandoned, presents an immediate threat to public health or safety, is evidence of a crime, or is contraband; and

2. Destroying property in Skid Row or its surrounding areas, absent an immediate threat to public health or safety, without maintaining the property in a secure location for a period of less than 90 days; and

3. Storing seized property from Skid Row or its surrounding areas in a facility not open during regular business hours; and

4. Failing to provide notice advising homeless individuals whose property is seized of the address where seized property is being stored; and

5. Storing seized property from Skid Row or its surrounding areas in a facility that does not clearly catalog and segregate property based on the names and identification, where available, of individuals from whom the property is taken; and

6. Storing seized property from Skid Row or its surrounding areas in a facility that is not accessible within 72 hours of seizure. Medication, medical equipment, and uncontaminated tents, sleeping bags, and blankets must be accessible within 24 hours of seizure or an individual's release from custody, whichever is later.

7. Additionally, where the City plans to engage in a mass cleanup of an area in Skid Row or its surrounding areas, the City must provide 24 hours advance notice advising homeless people of the cleanup and possible seizure of property and advising such individuals to remove essential property that they do not want confiscated.

The Court concludes that it is appropriate to waive the requirement that Plaintiffs file an injunctive bond in this instance. *See Barahona-Gomez v. Reno*, 167 F.3d 1228, 1237 (9th Cir. 1999), supplemented, 236 F.3d 1115 (9th Cir. 2001).

IT IS SO ORDERED.