MICHAEL N. FEUER, City Attorney
THOMAS H. PETERS, Chief Assistant City Attorney
ERIC BROWN, Deputy City Attorney (SBN 170410)
SUREKHA PESSIS, Deputy City Attorney (SBN 193206)
200 North Main Street, 6th Floor
Los Angeles, California 90012
Telephone: 213.978.7508
Facsimile: 213.978.7011
Eric.Brown@lacity.org
Sureka.Pessis@lacity.org

Attorneys for Defendants CITY OF LOS ANGELES, LT. ANDREW MATHES, and SGT. RICHTER

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CARL MITCHELL, MICHEAL ESCOBEDO, SALVADOR ROQUE, JUDY COLEMAN, as individuals; LOS ANGELES CATHOLIC WORKER, CANGRESS, as organizations,<br><br>     PLAINTIFFS,<br><br>     v.<br><br>CITY OF LOS ANGELES, a municipal entity; LT. ANDREW MATHIS, SGT. HAMER and SGT. RICHTER, in their individual and official capacities,<br><br>     DEFENDANTS. | CASE NO. CV16-01750 SJO (JPRx)<br>*[Assigned to the Honorable S. James Otero, Courtroom 1]*<br><br>**CITY OF LOS ANGELES' NOTICE OF MOTION AND MOTION FOR CLARIFICATION OF ORDER [F.R.Civ.P 60(a)]**<br><br>Date:   June 27, 2016<br>Time:  10 a.m.<br>Place:  Courtroom 1<br><br>*Meet and confer under L.R. 7-3 conducted on May 4 & 9, 2016* |

/ / /
/ / /
/ / /
/ / /

**DEFENDANTS' MOTION FOR CLARIFICATION OF ORDER**

**TO ALL PARTIES AND TO THEIR ATTORNEYS OF RECORD HEREIN:**

**PLEASE TAKE NOTICE** that on June 27, 2016 at 10 a.m., or as soon thereafter as this matter may be heard in Courtroom 1 of the above-entitled court, located at 312 N. Spring Street, Los Angeles, California, 90012, Defendants CITY OF LOS ANGELES, LT. ANDREW MATHES, and SGT. RICHTER (collectively "the City") will move the Court for clarification of the Court's Order Granting Plaintiffs' Application for Preliminary Injunction (Dkt. No. 13) (hereinafter "the Order"). Specifically, the City seeks clarification of the following:

1) Whether the City may understand the phrase "Skid Row or its surrounding areas" to mean the definition of Skid Row given in *Jones v. City of L.A.*, 444 F.3d 1118 (9th Cir. 2006) *vacated pursuant to settlement Jones v. City of L.A.*, 505 F.3d 1006 (9th Cir. 2007), plus an additional buffer zone around those boundaries as suggested herein;

2) Whether the Court intends the City to leave non-essential property of homeless arrestees on the street pursuant to Enjoined Action No. 1;

3) Whether confiscating property after 24 hours advance notice in compliance with Enjoined Action No. 7 is allowed under Enjoined Action No. 1; and

4) Whether the Order prohibits the City from removing sofas, appliances, sheds, and other bulky items from City sidewalks, streets, and other public areas.

The City has made a good faith effort to understand the Order. The City has also met and conferred with Plaintiffs' counsel in an effort to reach a mutual understanding of the Order. However, the City is still unable to reconcile certain portions of the Order with others, and with City practices that seem to already be in compliance with the Order and with federal law.

This motion will be based upon this Notice, the accompanying Memorandum of Points and Authorities, the papers filed in support of and against the application which resulted in the Order, all pleadings and papers on file in this action, and upon

**DEFENDANTS' MOTION FOR CLARIFICATION OF ORDER**

such further evidence or argument as may be presented to the Court at the time of the hearing.

DATED:  May 11, 2016          **MICHAEL N. FEUER, City Attorney**
                              **THOMAS H. PETERS, Chief Asst. City Attorney**
                              **ERIC BROWN, Deputy City Attorney**
                              **SUREKHA PESSIS, Deputy City Attorney**


                              **By:  _____/S/_____**
                                      **ERIC BROWN**
                                      **Deputy City Attorney**

                              **Attorneys for Defendants**
                              **CITY OF LOS ANGELES, LT. ANDREW**
                              **MATHES, and SGT. RICHTER**

3

## MEMORANDUM OF POINTS AND AUTHORITIES

### Introduction

The City respectfully requests clarification of the Court's order of April 13, 2016 ("the Order"), in order to comply fully with the Order and avoid potential unintended violations. City personnel interact with the homeless population in Skid Row on a daily basis. The Los Angeles Police Department ("LAPD") patrols this crime-ridden area in which homeless individuals are too often targets. The City's Bureau of Sanitation routinely clears debris and cleans in Skid Row to ensure public areas are sanitary and accessible by residents (including the disabled, as required by the Americans with Disabilities Act), and patrons of businesses in the area.

This motion seeks clarification of the effect of the Order on these activities, and whether and to what extent the Order precludes or limits them. The City is not challenging or seeking reconsideration of the Order. However, to effectively comply with the Order, the City must be able to give clear direction to its employees who provide service to the Skid Row area and its citizens. Certain terms of the Order are vague, and certain portions could be read to conflict with other portions of the Order. To the extent the Order intersects with the City's already existing and constitutionally appropriate treatment of property in public areas, inconsistency would result in paralyzing confusion and could result in unintended violations of the Order. Moreover, the City would be unable to balance of all of its residents' needs, expectations, and rights in the Skid Row area.

### Authorities for Request for Clarification

The City has made a good faith attempt to determine the Court's intent as to each of the actions it enjoins (the "Enjoined Actions" itemized on page 11 of the Order), and to discern whether the Enjoined Actions could be implemented without further clarification. The City has an honest inability to reconcile certain portions of the Order with other portions, or with practices in which the City was engaging which seemed to be in compliance with the Order before it was issued. Thus, for the

4

purpose of directing the City as to how to implement the Order on those fronts, clarification is appropriate.

The purpose of an injunction is to preserve the status quo. *Welchen v. Harris*, 2016 U.S. Dist. LEXIS 14517 at 3 (E.D. Cal. 2016); *Stanley v. University of Southern California*, 13 F.3d 1313, 1320 (9th Cir. 1994). "The status quo is the last uncontested status which preceded the pending controversy." *Tanner Motor Livery, Ltd. v. Avis, Inc.*, 316 F.2d 804 (9th Cir. 1963). Here, it is unclear whether the Court intended a significant departure from the status quo, because the Order could be read to enjoin practices regularly engaged in by the City which presumptively were in compliance with federal law.

"The court may correct a clerical mistake or a mistake arising from oversight or omission whenever one is found in a judgment, order, or other part of the record. The court may do so on motion or on its own, with or without notice." F. R. Civ. P. 60(a). Generally, "courts would not be apt to withhold a clarification in the light of a concrete situation that left parties . . . in the dark as to their duty toward the court." *Regal Knitwear Co. v. NLRB*, 324 U.S. 9, 15 (1945).

### Requests for Clarification

1) **Whether the City may understand the phrase "Skid Row or its surrounding areas" to mean the definition of Skid Row given in *Jones v. City of L.A.*, plus an additional buffer zone around those borders.**

While "Skid Row" has been defined in previous litigation involving Los Angeles's homeless population, the "surrounding areas" of Skid Row has not. The City needs to give its employees clear and specific instructions on where the Order applies so they can perform their job duties in compliance with the Order.

The City believes a workable definition of "Skid Row and its surrounding areas" is the geographic definition given in *Jones v. City of L.A.*, 444 F.3d 1118 (9th Cir. 2006) *vacated pursuant to settlement Jones v. City of L.A.*, 505 F.3d 1006 (9th Cir. 2007), plus an additional buffer zone around three of those four streets. *Jones*

**DEFENDANTS' MOTION FOR CLARIFICATION OF ORDER**

defined Skid Row as "the area bordered by Third Street to the north, Seventh Street to the south, Alameda Street to the east, and Main Street to the west." 444 F.3d at 1121. In order to define the parameters of "Skid Row and its surrounding areas," the City would expand those borders to Second Street to the north, Eighth Street to the south, and Spring Street to the west.[1]  (A map of the boundaries of this proposed area is attached.)

The City requests clarification as to whether "Skid Row and its surrounding areas" may be defined as "the area bordered by Second Street to the north, Eighth Street to the south, Alameda Street to the east, and Spring Street to the west."

**2) Whether the Court intends the City to leave non-essential property of homeless arrestees on the street pursuant to Enjoined Action No. 1.**

Enjoined Action No. 1 allows the City to take property of a homeless arrestee only if that property is abandoned, an immediate threat to health or safety, evidence of a crime, or contraband. Otherwise, it must be left on the street, unguarded. This runs contrary to LAPD's community caretaking function, long recognized under federal and state law. *See, e.g., South Dakota v. Opperman*, 428 U.S. 364, 369-371 (1976); *People v. Ray*, 21 Cal. 4th 464, 473-474 (1999). Unattended property could be stolen or damaged, which could cause more harm to the homeless arrestee than having the property confiscated and stored until he or she is released. In addition, leaving an arrestee's property on the street may lead to claims and lawsuits against the City for any loss of or damage to unattended property. Thus, under the community caretaking function, where a police department has a policy to store an arrestee's property pending his or her release from custody, courts have upheld the policy of impounding that property to prevent it from being damaged or stolen. *See Id*.

The Fourth Amendment protects against unreasonable searches and seizures, but storing an arrestee's property pending that person's release has been deemed

---

[1]  There are little to no enforcement actions in the industrial area east of Alameda.

**DEFENDANTS' MOTION FOR CLARIFICATION OF ORDER**

reasonable. Defendants therefore request clarification as to whether the Court intends that the City abrogate its community caretaking function and leave homeless arrestee's property on the street in order to comply with Enjoined Action No. 1.

**3) Whether confiscating property after 24 hours advance notice in compliance with Enjoined Action No. 7 and Los Angeles Municipal Code § 56.11 is allowed under Enjoined Action No. 1.**

Enjoined Action No. 7 allows the City to confiscate property as part of a cleanup after 24 hours advance notice and failure of the owner to remove the property. Similarly, the City has an ordinance which allows for the removal of property from a public area after 24 hours advance notice. LAMC § 56.11(4). This ordinance is consistent with Enjoined Action No. 7, but could be read to conflict with Enjoined Action No. 1.

LAMC § 56.11 was amended in light of *Lavan v. City of L.A.,* 693 F.3d 1022 (9th Cir. 2012).  At the time this case was filed, the City was completing a lengthy and comprehensive process to develop a precise ordinance and operational guidelines to humanely and constitutionally manage the property of homeless individuals while protecting public health and assuring that public areas are accessible by all citizens. As amended, LAMC § 56.11, which became effective on April 11, 2016, is remarkably consistent with the Order. (A copy of the current ordinance is attached for the Court's convenience.[2])

The City Council enacted the ordinance as a method of balancing the interests of the homeless who have nowhere to live except on city streets, of businesses and pedestrians in accessing those streets, and of the City in protecting the health and

---

[2]  The new ordinance may be found online at http://clkrep.lacity.org/onlinedocs/2014/14-1656-s1_ORD_184182_4-11-16.pdf, last accessed April 28, 2016. The City Council showing § 56.11's legislative history may be located at the City Clerk's website, Council File No. 14-1656-S1, https://cityclerk.lacity.org/lacityclerkconnect/index.cfm?fa=ccfi.viewrecord&cfnumber=14-1656-S1, last accessed April 28, 2016.

**DEFENDANTS' MOTION FOR CLARIFICATION OF ORDER**

safety of its citizens by preventing the accumulation of trash and hazardous materials on its streets. The Council found:

> On the one hand, the unauthorized use of public areas for the storage of unlimited amounts of personal property interferes with the rights of other members of the public to use public areas for their intended purposes and can create a public health or safety hazard that adversely affects those who use public areas. On the other hand, the City's large and vulnerable homeless population needs access to a manageable amount of essential property for their personal use and well-being. This section attempts to balance the needs of all of the City's residents.

LAMC § 56.11(1). Accordingly, the ordinance includes various provisions to balance these competing interests, including recognizing the need of homeless individuals to maintain essential and necessary personal belongings (§ 56.11(2)(f),3(b)); allowances for access by disabled individuals (§ 56.11(3)(d)); bans against blocking building entrances (§ 56.11(3)(e)); and requiring 24 hours advance notice before the City may remove property which it then stores for 90 days (§ 56.11(4)). Furthermore, it places self-imposed limits on the City by permitting collection only if 90 days of storage space is available. (The version of § 56.11 in effect when the TRO was filed and referenced in the opposition similarly declared the statute's purpose as a balance of the competing interests of access to and storage on city streets, and provided for 24 hours advance notice before confiscating property stored in public areas.)

There is a tension between Enjoined Action No. 7, which allows property to be confiscated after 24 hours advance notice (which is the City's current practice under LAMC § 56.11), and Enjoined Action No. 1, which prohibits confiscating property "absent an objectively reasonable belief that it is abandoned, presents an immediate threat to public health or safety, is evidence of a crime, or is contraband." If the City confiscates property after 24 hours advance notice, a homeless property owner may argue that the City violated the injunction by confiscating property without evidence

**DEFENDANTS' MOTION FOR CLARIFICATION OF ORDER**

that "it is abandoned, presents an immediate threat to public health or safety, is evidence of a crime, or is contraband."

The City requests clarification whether confiscating property after 24 hours advance notice in compliance with Enjoined Action No. 7 and LAMC § 56.11 is consistent with, and not a violation of, Enjoined Action No. 1.

### 4) Whether the Order prohibits the City from removing sofas, appliances, sheds, and other bulky items from City sidewalks and streets.

As discussed above, the City has a need for certain enforcement actions in order to balance the interests and rights of the homeless with the interests and rights of other citizens. The City Council found that property stored on a public sidewalk or street must not be "unlimited" so as to create a health or safety hazard. In addition, the City must enforce the laws against illegal dumping of bulky items and other discarded property in public areas. *See, e.g.*, Cal. Penal Code § 374.3; LAMC § 190.02. The City also must keep sidewalks accessible for those pedestrians with disabilities pursuant to the Americans with Disabilities Act ("ADA"). *See, e.g.*, 28 C.F.R. § 35.150(a), (d); *Barden v. City of Sacramento*, 292 F.3d 1073, 1076 (9th Cir. 2002). The City is required to enforce these statutes or face litigation claiming it is deliberately indifferent to the health, safety, and welfare needs of its constituents. One such suit is currently pending in this District (*Willits v. City of Los Angeles*, Case No. CV 10-05782 CBM (RZx)).

Accordingly, LAMC § 56.11 allows for immediate removal and destruction of "bulky items" that cannot fit within a 60-gallon container with the lid closed. LAMC § 56.11(2)(c), (3)(i). This provision is designed to address the problem of oversized items as large as sofas, mattresses, and appliances being kept on city sidewalks, streets, and in other public areas. The City adopted these procedures in order to prohibit the accumulation of such items which, due to their size, provide places for rodents to live and breed, create traps or hazards for pedestrians, impose access

9

**DEFENDANTS' MOTION FOR CLARIFICATION OF ORDER**

problems for the disabled, and significantly limit the overall access and use of the City's public areas for their intended purposes.

Some bulky items are designed for use as living quarters. A prime example is a small shed or similar structure sometimes seen on the sidewalk. These non-permitted structures are deemed *per se* unsafe and subject to deconstruction under the City and County Building Codes, as they often lack proper building, ventilation, and hygienic safeguards. Also, these structures are often large enough to block an entire sidewalk. They then violate the ADA and its predecessor the Rehabilitation Act (which outlaws discrimination based on disability in programs receiving federal funds), as both statutes follow the same analytic framework for determining violations. *See* 29 U.S.C. § 794(d). The City's ordinance requires 24 hours advance notice before removing these shed-like bulky items, but if the item is not removed by the owner and is seized by the City, it may be discarded immediately.  LAMC § 56.11(3)(i).

The City requests clarification as to whether the Order prohibits the City from removing sofas, appliances, sheds, and other bulky items from City sidewalks and streets.

## CONCLUSION

The City wants to comply fully with this Court's Order. Indeed, the City is already in compliance with much of the Order through the protocols developed to implement the newly-amended LAMC § 56.11. There are a few instances, however, where the Order may cause consequences that were not intended by this Court:

- The Order enjoins the City from engaging in community caretaking functions and other municipal obligations whose constitutionality has been confirmed.
- It is unclear whether compliance with one Enjoined Action may be a violation of another.
- The boundaries of the area covered by the Order are unclear.

/ / /

/ / /

**DEFENDANTS' MOTION FOR CLARIFICATION OF ORDER**

For all of the foregoing reasons, and for any additional reasons that may be discussed at the hearing on this matter, the City respectfully requests clarification of the Court's Order.

DATED:  May 11, 2016            MICHAEL N. FEUER, City Attorney
                               THOMAS H. PETERS, Chief Asst. City Attorney
                               ERIC BROWN, Deputy City Attorney
                               SUREKH PESSIS, Deputy City Attorney


                               By:  _____/S/_____
                                     ERIC BROWN
                                     Deputy City Attorney

                               Attorneys for Defendants
                               CITY OF LOS ANGELES, LT. ANDREW
                               MATHES, and SGT. RICHTER

**DEFENDANTS' MOTION FOR CLARIFICATION OF ORDER**