## I.   INTRODUCTION

In a motion brought pursuant to Federal Rules of Civil Procedure 60(a), the City seeks "clarification" of the Court's April 13, 2016 injunction. Specifically, the City seeks 1) ratification of a newly-enacted definition of "bulky items" that would allow the City to arbitrarily throw away individuals' belongings; and 2) under the guise of the City's "community caretaking function," blanket permission to seize and search a homeless person's belongings, any time they are arrested.[1] The Court's injunction is clear on these points. Clarification is not necessary, and modification of the injunction is neither appropriately before the Court, nor consistent with the Constitutional principles underpinning the Court's injunction.

## II.   PROCEDURAL HISTORY

In March 2016, Plaintiffs Carl Mitchell, Judy Coleman, Michael Escobedo, Sal Roque, and two organizational plaintiffs, the Los Angeles Catholic Worker, and the Los Angeles Community Action Network, filed this lawsuit to once again enjoin the City of Los Angeles from seizing and destroying homeless people's belongings. The suit followed the seizure and destruction or improper storage of the individuals' property after they were arrested, or during the City's massive street cleanings known as Operation Healthy Streets.

On April 13, 2016, this Court entered a preliminary injunction against the City of Los Angeles, preventing it from "confiscating" or "destroying" property of arrestees and other homeless individuals, and putting restrictions on the way the City could store belongings it did seize from residents in Skid Row. *See* Order Granting Plaintiff's Application for Preliminary Injunction, April 13, 2016, Dkt. 51 ("Injunction"), at 11. Shortly after the Court entered the Injunction, the City filed this Motion for Clarification of the Court's Injunction (Motion) under Rule 60, which provides that the "court may correct a clerical mistake or a mistake arising

---

[1] As discussed below, the parties have reached agreement on Sections 1 and 3 of the City's motion, and the City has represented to Plaintiffs that it will withdraw these portions of the motion and no longer seeks clarification on these points.

from oversight or omission whenever one is found with a judgment, order, or other part of the record." Fed. R. Civ. Pro. 60(a).

Prior to filing this opposition, and in an attempt to preserve judicial resources and reach agreement about the implementation of the Court's injunction, the parties agreed to meet and confer about the implementation of the Injunction. The parties met a number of times over the past sixteen months, often with Retired Magistrate Judge Carla Woerhle, to address issues raised in the City's Motion. As agreed in the parties' Tenth Stipulation to Continue the Hearing Date of COLA's Motion for Clarification of Order, Dkt 90, the parties "agreed that Plaintiffs should file an opposition which reflects the points of agreement that have been reached and which responds to the remaining issues." Stipulation at 3.

For purposes of this Motion and the parties' interpretation of the Injunction, the parties discussed and agreed to the relevant geographic perimeter of the enjoined zone, as raised in Section 1 of the Motion. As defined in *Jones v. City of Los Angeles*, 444 F.3d 1118 (9th Cir. 2006), *vacatur per settlement*, 505 F.3d 1006 (9th Cir. 2007), and with the buffer zone suggested by the City in Attachment A to the Motion Plaintiffs agree that for the purposes of this Injunction, Skid Row and Surrounding Areas should be defined as Second Street to the north, Eighth Street to the South, Alameda Street to the east and Spring Street to the west.

Through the discussions with Judge Woehrle, the parties also reached agreement on a number of other issues, in particular, terms that will implement Section 7 of the Injunction and moot Section 3 of the Motion. The only issues that remain before the Court are those raised in Sections 2 and 4 of the Motion: first, whether an expanded definition of bulky items may be removed without notice or warning, an issue not appropriately before this Court in the City's Motion for Clarification; and second, whether the community caretaking exception allows the City to remove a person's property during an arrest even when another person is standing by whom the owner is willing to entrust with t property. As Plaintiffs explain below, the community caretaking exception to the warrant requirement does not apply when another person is present to take custody of the property.

2

## III. ARGUMENT

### A. The Question Of Whether a Expanded Definition of Bulky Items May Be Seized and Destroyed Is Not Ripe For Decision By This Court.

Defendant's fourth point contends clarification is necessary to address the definition of a "bulky item" that the City may remove and summarily destroy without pre- or post-deprivation notice. *See* Motion at 9-10. Since the entry of the preliminary injunction six years ago in *Lavan v. City of Los Angeles*, 797 F.Supp.2d 1005 (C.D. Cal. 2011), the City has been operating under the same definition of "bulky items" set forth in *Lavan*. Defendant's Motion is devoid of any facts to support a need to "clarify" the "bulky items" definition used for this Injunction. The City has not shown why the definition of "bulky items" by which it has been bound for the past 6 years should be changed. The fact that the City enacted a new law with a extraordinarily broad definition of "bulky items" does not establish the need for clarification. Nor have Defendants set forth any facts or scenarios that would create a case or controversy for this Court to adjudicate.

The Motion reflects a misunderstanding of the Court's authority in this instance. The City brought a motion to address a "correction[] based on clerical mistakes, oversights and omissions." Fed. R. Civ. Pro. Rule 60(a). The Court's "role is neither to issue advisory opinions nor to declare rights in hypothetical cases, but to adjudicate live cases or controversies consistent with the powers granted the judiciary in Article III of the Constitution." *Thomas v. Anchorage,* 220 F.3d 1134, 1138 (9th Cir. 1999). The Court's authority may only reach questions that are ripe for decision.[2] "[T]he ripeness inquiry contains both a constitutional and prudential component." *Id.,* citing *Portman v. County of Santa Clara*, 995 F.2d 898, 902 (9th Cir. 1993). Absent a necessity to do otherwise, the "judicial

---

[2] Defendant's Motion also runs afoul of the Declaratory Judgment Act, 28 USCS § 2201 (the "Act"), requiring that a case or controversy must exist for a federal court to exercise its jurisdiction. Although the Court's Order Granting Plaintiffs' Application for Preliminary Injunction concerns the underlying case regarding "adverse legal interests" between the parties, the motion itself does not. *Societe de Conditionnement v. Hunter Eng. Co., Inc.*, 655 F.2d 938, 942–944 (9th Cir. 1981). Defendant asks this Court to decide whether the City *might* violate the Order based wholloy on speculation. An actual controversy does not exist where the dispute is hypothetical or abstrac. *Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227 (1937).

resolution of the question presented ... should await a concrete dispute." *Nat'l Park Hospitality Ass'n v. Dep't of Interior*, 538 U.S. 803, 812 (2003). "Even a case that is 'purely legal' may be deemed unripe if 'further factual development would 'significantly advance our ability to deal with the legal issues presented.'" *Id.* (internal citations omitted). To the extent the City now seeks approval for broader authority to destroy property under the amended § 56.11, the issue is not ripe.

Neither the First Amended Complaint nor the Answer put a revised § 56.11 at issue. *See* Plaintiffs' First Amended Complaint, Dkt. 9; Defendant's Answer to Plaintiffs' First Amended Complaint, Dkt. 61. Plaintiffs did not raise it because the ordinance was not passed when this action was filed in March, 2016. Although Defendant did not file its Answer until after the Court denied the Motion to Dismiss, the City did not put the amended version of the ordinance at issue either, no doubt because the amended ordinance was not in effect at the time. The only affirmative defense raised by the City is the assertion of probable cause to arrest Plaintiffs Mitchell, Roque and Coleman. *See* Answer at 13.

Significantly, the City sought a modification in *Lavan* to permit removal of "unattended" property on sidewalks solely to facilitate OHS operations, but not to destroy the property, stating that it would store it for 90 days. *See* City Reply re Ex Parte at pgs. 7-9 (2:11-cv-02874 PSG-AJW May 8, 2013) [Doc. 65]. The amended § 56.11 would authorize the City both to remove and summarily destroy any property defined as "bulky items." *See* Motion, Attachment 2, LAMC § 56.11.3(i) (§ 56.11). This distinction is critical because the term "bulky items" in the revised § 56.11 is stunningly broad, including not only sofas, mattresses and other very large items, but anything that does not fit within a 60-gallon container.[3]

The recent amendments to § 56.11 raise serious questions about its constitutionality that should be addressed on the merits and concrete facts, not speculation and hypotheticals. For example, the definition of "bulky items" under

---

[3] In *Lavan*, the plaintiffs did not object to removing mattresses, sofas, large appliances and similar "bulky items." *See Opp. to Defendant's Ex Parte Application to Modify the Preliminary Injunction*, 2:11-cv-02874-OSG-AJW (C.D. Cal. April 30, 2013) [Doc 63, p. 8] Plaintiffs do not object to removing these items in this action.

4

the revised ordinance excludes "operable" bicycles, and wheelchairs and other mobility assistive devices. § 56.11.2(c). As amended, this gives the City authority to seize and instantly destroy "inoperable" bicycles, wheelchairs and other assistive mobility items without notice. "Inoperable" items may be repairable, yet the City would seize and irrevocably demolish them. These items are essential for many individuals who are homeless and do not own a car or have mobility challenges. Indisputably, they have substantial due process interests in these items. The City may not now remove such items without notice. No facts show a need to change.

As a second example, "bulky items" are defined as anything that will not fit within a 60-gallon trash can with the lid closed, exempting operable tents and a few other items. The ordinance authorizes "immediate … destruction" of anything that will not fit in a 60-gallon container.[4] Motion at 9, 21-23 and § 56.11(2)(c), (3)(i). The City asserts this section addresses the issue of oversized items such as "large sofas, mattresses and other appliances … on city sidewalks …." But Defendant already has the ability to remove such items, and the definition the City now seeks to validate goes far beyond the items enumerated in the City's motion.[5]

Defendant's motion is premised on hypotheticals without a scintilla of evidence to support the need for "clarification" on this issue. While the court has the authority to provide clarity to a party bound by the terms of an injunction so that there is adequate notice of the actions parties are enjoined from doing to avoid "unwitting contempt," *Regal Knitwear Co. v. N.L.R.B.*, 324 U.S. 9 (1945), such motions are disfavored and clarity, if any is necessary, is usually provided after a hearing based on a specific factual showing. This approach honors the cardinal rule that "[n]o one can be punished for contempt…until after a judicial hearing, in which…operation could be determined on a concrete set of facts." *Id.*

### B. The City Does Not Have the Authority To Seize Attended Property Under the Community Caretaking Exception.

The City also seeks a modification of the Court's injunction, to allow it to

---

[4] This would allow destruction of Nathaniel Ayres' cello. *See "The Soloist"* by Steve Lopez.
[5] *See* Fn. 3, *supra*.

5

seize arrestees' property when they are detained, which they contend is consistent with the "community caretaking" exception to the Fourth Amendment.

Plaintiffs do not argue that the City must leave an arrestee's property that would "otherwise . . . be left on the street unguarded." Motion at pg. 6, Ln. 14, or that there are not instances in which "unattended property could be lost or damaged, which would cause more harm to the homeless arrestee than having the property confiscated and stored until he or she is released." Motion at pg. 6, Ln. 17. Nor do Plaintiffs dispute the general principle that, under the Community Caretaking exception, there are situations that could arise that would justify the City seizing and storing an individual's belongings when an individual is taken into custody and there is no one available to take custody of their belongings. However, the broad exception advocated by the City is not justified, either by the (lack of) evidence put forth by the City or by the constitutional principles that give rise to the narrow application of the Community Caretaking Exception to the warrant requirement of the Fourth Amendment.

"A seizure conducted without a warrant is per se unreasonable under the Fourth Amendment—subject only to a few specifically established and well delineated exceptions." *Brewster v. Beck*, 859 F.3d 1194, 1196 (9th Cir. 2017) (explaining that "exigency" must exist to seize property without a warrant). The Community Caretaking exception is one such exception, but it is "available only to impound vehicles that jeopardize public safety and efficient movement of vehicular traffic." *Id.*, citing *United States v. Cervantes*, 703 F.3d 1135, 1141 (9th Cir. 2012). A seizure pursuant to the Community Caretaking exception and subsequent inventory search "must not be a ruse for a general rummaging in order to discovery incriminating evidence." *Cervantes*, 70 F.3d at 1141 (quoting *Florida v. Wells*, 495 U.S. 1, 4 (1990). The Community Caretaking exception is applicable only where the seizure is necessary to serve "a valid caretaking purpose." *Id*.

As such, the exception to the warrant requirement is not applicable where the property does not present a "hazard or impediment to other traffic" or where there is no greater threat that property could be "stolen, broken into, or vandalized" if left when the owner is taken into custody than when it would be left parked on the

6

street. *United States v. Caseres*, 533 F.3d 1064, 1075 (9th Cir. 2008); *see also Miranda v. City of Cornelius*, 429 F.3d 858, 860, 864-65 (9th Cir. 2005). And the exception is not applicable where another person can take control of the vehicle. "The policy of impounding the car without regard to whether the defendant can provide for its removal is patently unreasonable if the ostensible purpose for impoundment is for the 'caretaking' of the streets." *Id.* quoting *United States v. Duguay*, 93 F.3d 346, 352 (7th Cir. 1996)). Any exigency that could justify seizing property evaporates when someone is available to take control of the property that was seized. *Brewster*, 859 F.3d at 1196 ("The exigency that justified the seizure vanished once… Brewster showed up with proof of ownership and a valid driver's license.").

Plaintiffs put forth significant evidence in support of their motion for a Preliminary Injunction that the City has seized the property of arrestees, not pursuant to a "a valid caretaking purpose," but instead, to illegally search and subsequently destroy homeless individuals' belongings. This case arises from the City's practice of using arrests for "minor quality of life offenses," "as a pretext to seize and confiscate Plaintiffs' property." Injunction at 1. Plaintiffs alleged and put forth evidence to demonstrate that the seizure and destruction of property violates the "well delineated" principles that Courts have established to ensure that the exception is applied narrowly and only on a case-by-case basis. In fact, Plaintiffs specifically raised the Community Caretaking exception to the warrant requirement in their Application for a Temporary Restraining Order, *see* Dkt. 13-1 at 11-12, which the City failed to address, let alone effectively rebut. In fact, the facts of this case show how the City has disregarded the "well-delineated" bounds of the Community Caretaking exception.

Plaintiff Sal Roque was arrested on an outstanding warrant. Declaration of Sal Roque in Support of Plaintiffs' Application for a Temporary Restraining Order (Roque Decl.,), Dkt. 13-6, at 1:26-2:4. When he was arrested, the police seized all of his belongings, including his tent, and at the same time, also seized his neighbor's belongings. *Id.* at 2:10-18; Supplemental Declaration of Eric Ares in Support of Plaintiffs' Application (Ares Decl.,) Dkt 25 at 9:8-10:4. This seizure

occurred without any regard for Mr. Roque's Fourth Amendment rights. As the Court previously noted, "the seizure of the entirety of Roque's property, including his tent, raises countervailing Fourth Amendment concerns, especially after LAPD officers had placed Roque in handcuffs." Injunction at pg. 5, (citing *Arizona v. Gant*, 556 U.S. 332, 335 (2009)).

Particularly important for the Community Caretaking analysis, other individuals were present at the scene and were willing to take custody of Mr. Roque's belongings. In fact, as the Court's Order noted, Mr. Aguirre is seen on Plaintiff's Exhibit 14, begging law enforcement to not take property that belonged to him, which was seized by LAPD with Mr. Roque's belongings. *See* Injunction at pg. 5. Under these circumstances, which helped to form the basis for this Court's Injunction, the Community Caretaking exception would not justify the City's seizure of Mr. Roque's belongings. *Miranda*, 429 F.3d at 865-66

Similarly, Judy Coleman's husband, Paul Brown, was at the scene when Judy Coleman was arrested, and was not arrested. Decl. of Judy Coleman (Coleman Decl), Dkt. 17 at 1:6-16, 2:11-13. Because Mr. Brown was present and could have taken custody of Ms. Coleman's belongings, there was no need to seize them to preserve only what the City arbitrarily decides is worth saving. The Community Caretaking exception would not have applied under those circumstances either. *Miranda*, 429 F.3d at 865-66. Similar to the facts presented in *Miranda*, where the Ninth Circuit found that impounding a car based on the unlawful driving of plaintiff was unreasonable where her husband was present and able to take charge of the car, *id.*, since Ms. Coleman's husband was present and able to care for the property, the seizure of their tent and all her property was unreasonable. *Id. See also Brewster*, 859 F.3d at 1196.

The City failed to address this issue or present any evidence to dispute Plaintiff's evidence that the Community Caretaking exception was inapplicable in the circumstances that gave rise to this injunction. Nor does the City put forth any evidence now in support of its request for a modification of the injunction, a request that, if granted, would eviscerate this Court's injunction. In fact, the City has put forth no evidence that the injunction as written has prevented it from seizing

property when there is a legitimate need to do so to preserve the property because there is no one present whom the arrestee can entrust to take custody for the belongings.

Instead, the City seeks a broad and hypothetical exception to the warrant requirement that would allow it to seize and search individuals' belongings any time they are arrested. The Community Caretaking exception is nowhere near as broad as the City has suggested. *See e.g., Brewster,* 859 F.3d at 1196; *Cervantes,* 703 F.3d at 1141–42; *Casares,* 533 F.3d at 1075*; Miranda,* 429 F.3d at 866. There is simply no exception to the Fourth Amendment that allows for the wholesale seizure of arrestees' belongings, and the blanket exception advocated by the defendants would serve only to incentive the activities that gave rise to this litigation. The City has a long history of using arrests as a justification for seizing, searching, and destroying homeless individuals' belongings. The City was previously under another federal injunction based on the City's illegal searches of arrestees' property in Skid Row. *See Fitzgerald v. City of Los Angeles*, 485 F.Supp.2d 1137, 1149 (C.D. Cal. 2007). In a 2007 ruling in that case, and applicable here, the Court ruled that the arrest of individuals for quality of life offenses did not justify the search of homeless individuals' belongings, because "there is no physical evidence necessary to prove a violation" of those offenses. 485 F.Supp.2d at 1149, citing *Knowles v. Iowa*, 525 U.S. 113, 118 (1998). And similarly here, the Court noted in its Order granting the Preliminary Injunction, that because Mr. Roque was already in custody in the back of a police car and, therefore, there was no danger that he could access his tent to destroy evidence or obtain a weapon, there was no justification for searching and seizing his tent. Injunction at p. 5; *see also Gant*, 556 U.S. at 335.

The Community Caretaking exception to the warrant requirement is a fact-specific doctrine that cannot be used to justify the full-scale search and seizure of homeless people's belongings any time they are arrested. In this case, Plaintiffs allege that the LAPD is using the arrests of individuals as a way to seize, search, and ultimately destroy homeless individuals' belongings. The City had the opportunity to raise concerns about the community caretaking exception in its

9

opposition to the injunction and it failed to do so.

As a practical matter, Plaintiffs do not object to the application of the Community Caretaking exception where it is applied on a case-by-case basis, consistent with court rulings that have provided an appropriate framework for its application, including most importantly the seach storage of property, pursuant only to an established inventory procedure, and only where there is no one with whom the arrestee can leave their belongings.[6] *See Cervantes,* 703 F.3d at 1141-42; *Casares,* 533 F.3d at 1075; *Miranda,* 429 F.3d at 866; *Brewster,* 859 F.3d at 1196. But as in Mr. Roque's case and Ms. Coleman's case, where a third party is present who can safeguard an individual's belongings, there is no constitutional basis for the seizure of an arrestee's property. The Community Caretaking exception simply does not apply, and a modification of the injunction to allow such an application is not justified, nor allowed under the Fourth Amendment.

## III. CONCLUSION

Under the guise of a Motion for Clarification, the City seeks permission to engage in contested and constitutionally suspect practices that gave rise to the Court's Injunction, and it does so without any evidentiary or even factual support. The Injunction has been in place for over 16 months and the City has not presented any evidence that any clarification is necessary. The motion should be denied.

---

[6] Over the past 16 months, Plaintiffs repeatedly attempted to reach agreement with the City on this issue, but the City refused to acknowledge that the Community Caretaking exception did not allow the City to seize individuals' belongings where there was a third party present to take custody of the belongings.