MICHAEL N. FEUER, City Attorney
THOMAS H. PETERS, Chief Assistant City Attorney
**FELIX LEBRON, Deputy City Attorney (SBN 232984)**
SUREKHA PESSIS, Deputy City Attorney (SBN 193206)
200 North Main Street, 6th Floor
Los Angeles, California 90012
Telephone: 213.978.7559
Facsimile: 213.978.7011
felix.lebron@lacity.org
sureka.pessis@lacity.org

Attorneys for Defendants CITY OF LOS ANGELES, LT. ANDREW MATHES, and SGT. RICHTER

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CARL MITCHELL, MICHEAL ESCOBEDO, SALVADOR ROQUE, JUDY COLEMAN, as individuals; LOS ANGELES CATHOLIC WORKER, CANGRESS, as organizations,<br><br>PLAINTIFFS,<br><br>v.<br><br>CITY OF LOS ANGELES, a municipal entity; LT. ANDREW MATHIS, SGT. HAMER and SGT. RICHTER, in their individual and official capacities,<br><br>DEFENDANTS. | **CASE NO. CV16-01750 SJO (JPRx)**<br>*[Assigned to the Honorable S. James Otero, Courtroom 1]*<br><br>**DEFENDANTS' REPLY IN SUPPORT OF MOTION FOR CLARIFICATION OF ORDER**<br><br>**Date:   September 11, 2017**<br>**Time:   10 a.m.**<br>**Place:  Courtroom 10C**<br><br>**Action Filed: March 14, 2016** |

**DEFENDANTS' REPLY ISO MOTION FOR CLARIFICATION**

**INTRODUCTION**

The City filed its Motion for Clarification (Motion) shortly after the Court issued its April 13, 2016 Order Granting Preliminary Injunction (Order). The Motion requested that the Court clarify the Order to address the interpretation of undefined terms, inconsistencies between certain Enjoined Actions, and limits that the plain language of the Order appear to place on otherwise lawful and constitutional activities. The City's goal then and now is to ensure that its employees who are responsible for protecting the health, safety, and welfare of every person living or working in the Skid Row area clearly understand, and are in a position to successfully implement, the terms of the Court's Order.

In the time since the Court issued its Order, the homeless population has grown by over 20%, with three out of every four homeless people living on the street.[1] The City is working constantly to address the growing homelessness crisis, including passing a $1.2 billion bond measure to build housing for the chronically homeless.[2] Throughout all of its efforts, the City strives to balance the need of all of the City's residents to have clean, sanitary, and accessible public areas, including sidewalks, with the needs of "the City's large and vulnerable homeless population" who need "access to a manageable amount of essential property for their personal use and well-

---

[1] *See L.A. County homelessness jumps a 'staggering' 23% as need far outpaces housing, new count shows*, Los Angeles Times, May 31, 2017, located at http://www.latimes.com/local/lanow/la-me-ln-homeless-count-20170530-story.html, last accessed August 28, 2017.)

[2] *See L.A. votes to spend $1.2 billion to house the homeless. Now comes the hard part*, Los Angeles Times, November 9, 2016, located at http://www.latimes.com/local/lanow/la-me-ln-homeless-20161108-story.html, last accessed August 28, 2017.); *see also Los Angeles County supervisors endorse a spending plan for Measure H homelessness tax*, Los Angeles Times, June 13, 2017, located at http://www.latimes.com/local/lanow/la-me-ln-measure-h-spending-approved-20170613-story.html, last accessed on August 28, 2017 (Los Angeles County voters approve a sales tax in March 2017 that is expected to raise $355 million annually over next ten years to fund homeless-support services.).

**DEFENDANTS' REPLY ISO MOTION FOR CLARIFICATION**

being." (*See* Los Angeles Municipal Code ("L.A.M.C.") Section 56.11, subd. 1 [Dkt 58-2].)

As part of these efforts, after filing its Motion, the City engaged in an extensive 16-month meet-and-confer process with Plaintiffs to attempt to resolve the City's clarification questions. Those efforts were partially successful as two out of the four clarification questions have now been resolved. Plaintiffs agree in their Opposition that the geographical boundaries of "Skid Row and its surrounding areas" should be the definition set forth in the City's Motion: Second Street to the north, Eighth Street to the south, Spring Street to the west, Alameda Street to the east. In addition, Plaintiffs further agree that the City is not in violation of the Order when it conducts cleanups of Skid Row and its surrounding areas under certain mutually agreed upon conditions.

The remaining two issues in the Motion relate to the treatment of an arrestee's non-essential property in the enjoined area (clarification issue no. 2), and restrictions on the removal and destruction of "bulky items" in the enjoined area (clarification issue no. 4).

The Court should exercise its discretion to clarify the two remaining questions in order to further the Court's goal of preventing unnecessary "litigation to enforce the injunction." (Order at 10 [Dkt 51].) As discussed below, the Court should reject the Plaintiffs' procedural objections, which misstate the Motion's scope and requested relief. Indeed, these two requests for clarification are more straightforward and significantly less complex or fact-intensive than Plaintiffs' Opposition suggests. Plaintiffs' argument that the City's Motion should be denied because the "Injunction has been in place for over 16 months and the City has not presented any evidence that any clarification is necessary" (Opp. at 10) ignores the fact that the Motion was filed less than a month after the Court issued the Order, that the 16-month delay was the result of extensive meet-and-confer efforts to resolve the issues, and that requiring new and additional evidence at this time would be inappropriate and inconsistent

**DEFENDANTS' REPLY ISO MOTION FOR CLARIFICATION**

with the Court's authority under F.R.Civ.P. 60(a).  The City should not be punished for engaging in good-faith efforts to resolve these issues outside of court.

**ARGUMENT**

A. **The Court Should Clarify Whether Or Not The Order Enjoins The City From Exercising Its Community Caretaking Functions In The Enjoined Area.**

The City requested clarification on whether the Order enjoins the City from exercising its community caretaking function in the enjoined area in order to secure and store an arrestee's non-essential property pending custodial release.  Enjoined Action No. 1 prohibits the City from confiscating property incident to an arrest "absent an objectively reasonable belief that it is abandoned, presents an immediate threat to public health or safety, is evidence of a crime, or is contraband."  Enjoined Action No. 6, in turn, provides that "[m]edication, medical equipment, and uncontaminated tents, sleeping bags, and blankets must be accessible within 24 hours of seizure *or an individual's release from custody*, whichever is later."  (emphasis added).  The City has tried to harmonize the possible conflict between these two provisions by construing Enjoined Action No. 6 to require the seizure and storage of an arrestee's "essential" property – medications, medical equipment, and uncontaminated tents, sleeping bags and blankets – so that this property is available to an arrestee within 24 hours of his or her release from custody.[3]  Plaintiffs do not appear to disagree with this interpretation.

The Order is unclear, however, as to whether the seizure and storage of an arrestee's non-essential property is prohibited in every instance, even under the City's community caretaking function.  The community caretaking function permits the seizure and storage of an arrestee's property to prevent, among other things, theft

---

[3] To the extent Enjoined Action No. 1 prohibits the confiscation of an arrestee's *essential* property, even to ensure compliance with Enjoined Action No. 6, the City

3

of or damage to the property, or threats to public safety caused by the property.  *See South Dakota v. Opperman*, 428 U.S. 364, 369-71 (1976); *U.S. v. Torres*, 828 F.3d 1113, 1118 (9th Cir. 2016); *People v. Ray*, 21 Cal. 4th 464, 473-74 (1999).  If the Court's Order enjoins the City from exercising the community caretaking function for non-essential property in the enjoined area, then an arrestee's non-essential property must be left on the street, which may result in the property being lost or damaged.  The property may also threaten public safety if it blocks a sidewalk or infringes on access required by the Americans with Disabilities Act (ADA).  Alternatively, if the Court did not intend to enjoin this practice under the Order, then the City may exercise the community caretaking function for non-essential property in the enjoined area under appropriate circumstances.

Plaintiffs' Opposition misstates the City's position.  The City does not seek an advisory opinion that the City is entitled to a "blanket exception" allowing the "wholesale seizure" of every arrestee's belongings "any time they are arrested." (Opp. at 9.)  Rather, the City asks the Court to clarify whether or not the Order enjoins the City from exercising the City's community caretaking functions in every instance.  Indeed, Plaintiffs agree that there are situations where the exercise of the community caretaking function is appropriate to protect an arrestee's property from being lost or damaged.  (*See* Opp. at 6.)  Plaintiffs also acknowledge that there is a risk of theft or damage to property left on the street, and that the loss of the property could cause more harm to arrestee than having the property seized and stored pending release from custody.  (*Id.*)

However, Plaintiffs want to dictate when and how the City's community caretaking function may be exercised in the enjoined area.  Plaintiffs' Opposition asks this Court to pre-determine the application of the caretaking function when there is an allegedly less intrusive alternative available; specifically, a third party to take

---

requests that the Court clarify the circumstances when an arrestee's essential property may be seized.

**DEFENDANTS' REPLY ISO MOTION FOR CLARIFICATION**

possession of the arrestee's non-essential property.[4]  This contention, however, is inconsistent with well-established U.S. Supreme Court precedent discussing the community caretaking exception.  *See Colorado v. Bertine*, 479 U.S. 367, 373 (1987) ("The real question is not what could have been achieved, but whether the Fourth Amendment *requires* such steps….The reasonableness of any particular governmental activity does not necessarily or invariably turn on the existence of alternative less intrusive means.") (emphasis in original) (internal quotations omitted); *Illinois v. Lafayette*, 462 U.S. 640, 647 (1983) ("Even if less intrusive means existed of protecting some particular types of property, it would be unreasonable to expect police officers in the everyday course of business to make fine and subtle distinctions in deciding which containers or items may be searched and which must be sealed as a unit."); *Cady v Dombroski*, 413 U.S. 433, 447 (1973) ("The fact that the protection of the public might, in the abstract, have been accomplished by less intrusive means does not, by itself, render the search unconstitutional.").  This line of Supreme Court precedent reaffirms the important principle that "[a] single familiar standard is essential to guide police officers, who have only limited time and expertise to reflect on and balance the social and individual interests involved in the specific circumstances they confront."  *Lafayette*, 462 U.S. at 648 (quoting *New York v. Belton*, 453 U.S. 454, 458 (1981)).

Because the Parties ultimately reached an impasse in attempting to resolve this issue, the City requires clarification from the Court so that the City may provide

---

[4] Plaintiffs' request for an advisory opinion on the application of the community caretaking function in every instance a third party may be present would require the resolution of a number of factual issues, including the effectiveness of the arrestee's consent, the competency of the third party, the legal jeopardy the third party may be placed in by taking responsibility of the property, and the consequences if the third party later rejects responsibility for the property, among others.  None of these issues need to be addressed to clarify the question posed by the City:  whether Enjoined Action No. 1 forecloses the application of the community caretaking function in every instance.

**DEFENDANTS' REPLY ISO MOTION FOR CLARIFICATION**

guidance to the LAPD officers who patrol the enjoined areas.  The City requests that the Court clarify whether or not the Order enjoins the City from seizing and storing an arrestee's non-essential property under its community caretaking function in the enjoined area.

**B. The Court Should Clarify Whether Or Not The Order Enjoins The Removal Or Destruction Of Bulky Items Left On City Sidewalks And Streets In The Enjoined Area.**

Defendants requested clarification on whether the Court intended to enjoin the enforcement of laws in the enjoined area designed to protect against illegal dumping and to ensure accessible sidewalks for pedestrians with disabilities under the ADA. Specifically, Defendants sought clarification on whether the City could remove appliances, furniture, mattresses, sheds or other bulky items from the City's streets or sidewalks in the enjoined area and, if so, whether such bulky items could be discarded without storing these items for 90 days.  For example, Enjoined Action No. 2 prohibits the City from "[d]estroying property in Skid Row or its surrounding areas, absent an immediate threat to public health or safety, without maintaining the property in a secure location for a period of less than 90 days."  This provision applies on its face to *all* property seized in the enjoined area.  The Court may have intended for Enjoined Action No. 2 to regulate the destruction of property "confiscated" under Enjoined Action No. 1, that is, property confiscated "incident to an arrest or as part of a cleanup of an area where homeless people are located."  But the Court's Order is not clear on this point.

Contrary to Plaintiffs' assertion, the City does not contend "clarification is necessary to address the definition of 'bulky item' in L.A.M.C. Section 56.11." (Opp. at 3.)  The City's Motion did not ask the Court to clarify the definition of "bulky item" or rule upon its constitutionality.  Rather, the City seeks clarification on the threshold question of whether the City *may* remove *any* bulky item on the City's sidewalks or streets in the enjoined area when enforcing the City's anti-dumping or

**DEFENDANTS' REPLY ISO MOTION FOR CLARIFICATION**

ADA-access laws.  Indeed, Plaintiffs' Complaint does not raise a challenge to the definition of "bulky item" in L.A.M.C. Section 56.11.  Therefore, the City agrees with Plaintiffs that any dispute regarding the definition of "bulky item" under L.A.M.C. Section 56.11 is not ripe for a decision by this Court.  (*See* Opp. at 4.)

Despite arguing that the definition of bulky item is not properly before the Court, Plaintiffs nonetheless venture into that very argument.  Plaintiffs first contend that pleadings filed in *Lavan v. City of Los Angeles*, 797 F.Supp.2d 1005 (C.D. Cal. 2011) should control whether *this* Court's Order applies to bulky items.  (Opp. at 4, fn 3.)  In the *Lavan* brief cited in Plaintiffs' Opposition, the Plaintiffs stated:

> Plaintiffs have never opposed the removal of furnishings and refrigerators dumped on Skid Row by nearby loft dwellers and apartment owners.  There is no serious dispute that such 'bulky items' as they are classified for trash removal, create a potential public safety issue by blocking the sidewalks.  *See* Pltfs' Opp. to Defs' *Ex Parte* App. to Modify the Preliminary Injunction, 2:11-cv-02874-PSG-AJW (C.D. Cal. Apr. 30, 2013) [Dkt. 63] at 8-9.

Plaintiffs contend that the above-quoted language renders clarification unnecessary in this Motion.  It does not.  The *Lavan* case neither mandates a definition of "bulky item" nor governs whether the enforcement of L.A.M.C. Section 56.11 may violate the Court's Order in *this* case.  Indeed, Section 56.11 did not contain a definition of bulky item at the time Plaintiffs filed their *Lavan* brief.  The City defined the term "bulky item" for the first time in an ordinance amending L.A.M.C. Section 56.11, which the City approved in June 2015.

Nonetheless, the citation from *Lavan* reveals two things.  ***First***, Plaintiffs have no legal objection to the removal without notice and destruction of bulky items left on the City's streets or sidewalks in the enjoined area; their objection is to the definition of "bulky item" the City included in the April 2016 amendment to L.A.M.C. Section 56.11.  Again, this Motion is not the proper vehicle for Plaintiffs to take issue with the definition.  However, it should be noted that the definition was crafted with an eye toward balancing several competing public interests, including of

**DEFENDANTS' REPLY ISO MOTION FOR CLARIFICATION**

the homeless who need access to essential property in public areas for their use and well-being; of the residents, business owners, and pedestrians who also need clean and safe access to those public areas; and of the City to protect the health, safety, and welfare of all of its citizens.  (*See* Dkt 58-2 at subd. 1.)

> ***Second***, Plaintiffs and the City agree on the substantial majority of items that are "bulky" and can be removed.  Plaintiffs attempt to mask this agreement by focusing on the few differences they have with the City's definition.  For example, Plaintiffs take issue with the exemption in the "bulky item" definition for bicycles and wheelchairs that are "operable" but not for ones that are inoperable but can be repaired.  (*See* Opp. at 4.)  The City recognizes that bicycles, wheelchairs, and other assistive mobility devices may be essential to homeless individuals.  Similarly, the City understands that a homeless individual may repair his or her inoperable bicycle.  However, when the City is faced with hundreds of bicycles, in various forms of disrepair, in a make-shift repair shop or "chop shop" on a public sidewalk (as has been the case), the City cannot be barred from removing these bulky items.

> Plaintiffs also take issue with the exemption in the "bulky item" definition for property that fits within a 60-gallon container.  (*See* Opp. at 4.)  The City recognizes Plaintiffs' concerns with the size limitation, but balancing competing interests requires that there be a limit on the amount of property that may be left on City sidewalks or in public areas.  The City made certain that items necessary to the health and welfare of a homeless person living on the street – such as a constructed tent or a bicycle, crutch, or wheelchair – were excluded from the definition of bulky item.  (*See* Dkt 58-2 at subd. 2(c).)  Limiting what a homeless individual may retain by amount, as opposed to type, gives that individual the freedom to determine what he or she deems most significant while providing the City with the ability to limit the overall amount of property in public spaces – again to allow for a balance that addresses competing public interests.

**DEFENDANTS' REPLY ISO MOTION FOR CLARIFICATION**

To be clear, the City is not seeking an advisory opinion from the Court on whether a particular bulky item should or should not be removed.  Nor should a dispute between the Parties regarding the definition of bulky item prevent the Court from issuing clarification on this threshold question.  The City remains willing to continue its discussions with Plaintiffs to try to reach an agreement on the few remaining disputed issues.  However, the City does need clarification on whether the enforcement of anti-dumping and ADA-access laws in the enjoined area is permitted. The Court's clarification on this issue is important not just for the City to give clear directions to its employees who operate in Skid Row and its surrounding area, but also for the residents and business owners located in the enjoined area whose interests should also be considered.

## **CONCLUSION**

For the foregoing reasons, and for any reasons that may arise at the hearing on this matter, the City respectfully requests that the Court clarify its Order with respect to the two outstanding clarification issues.


Dated:  August 28, 2017          **LOS ANGELES CITY ATTORNEY'S OFFICE**

By:  _____/s/Felix Lebron_____
FELIX LEBRON
Deputy City Attorney

Attorney for Defendants
CITY OF LOS ANGELES, LT. ANDREW MATHES, and, SGT. RICHTER

**DEFENDANTS' REPLY ISO MOTION FOR CLARIFICATION**