1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

MICHAEL N. FEUER, City Attorney
KATHLEEN KENEALY, Senior Assistant City Attorney
SCOTT MARCUS, Senior Assistant City Attorney
GABRIEL DERMER, Assistant City Attorney
**FELIX LEBRON, Deputy City Attorney (SBN 232984)**
Business and Complex Litigation Division
200 North Main Street, Room 675
Los Angeles, California 90012
Telephone: 213.978.7559
Facsimile: 213.978.7011
felix.lebron@lacity.org

Attorneys for Defendants CITY OF LOS ANGELES,
LT. ANDREW MATHES, SGT. RICHTER, and SGT. HAMER

### UNITED STATES DISTRICT COURT

### CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CARL MITCHELL, MICHEAL ESCOBEDO, SALVADOR ROQUE, JUDY COLEMAN, as individuals; LOS ANGELES CATHOLIC WORKER, CANGRESS, as organizations,<br><br>                    PLAINTIFFS,<br><br>          v.<br><br>CITY OF LOS ANGELES, a municipal entity; LT. ANDREW MATHIS, SGT. HAMER and SGT. RICHTER, in their individual and official capacities,<br><br>                    DEFENDANTS. | **CASE NO. CV16-01750 SJO (JPRx)** *[Assigned to the Honorable S. James Otero]*<br><br>**DEFENDANT CITY OF LOS ANGELES' OPPOSITION TO PROPOSED INTERVERNORS' MOTION TO INTERVENE FOR THE LIMITED PURPOSE OF OBJECTING TO SETTLEMENT**<br><br>[Request for Judicial Notice filed concurrently]<br><br>Date:   August 12, 2019<br>Time:   10:00 a.m.<br>Ctrm:   10C<br>Judge: Hon. S. James Otero<br><br>Action Filed: March 14, 2016<br>**Action Terminated: May 31, 2019** |

**CITY'S OPPOSITION TO MOTION TO INTERVENE**

# **TABLE OF CONTENTS**

I.    INTRODUCTION ................................................................................... 1

II.   PROCEDURAL HISTORY ................................................................... 3

    A.    Plaintiffs' First Amended Complaint and Responsive Pleadings. ............... 3

    B.    Plaintiffs' Application for Temporary Restraining Order and Court's Preliminary Injunction Order. ....................................................... 3

    C.    City's Motion for Clarification and Order Denying Clarification. ............... 5

    D.    Scheduling Orders and Settlement Efforts ................................... 6

    E.    The Parties' Settlement Agreement .............................................. 8

    F.    The Court's Dismissal Order ....................................................... 10

III.   ARGUMENT ...................................................................................... 11

    A.    The Court Must Deny the Motion for Lack of Jurisdiction Because There Is No Existing Case or Controversy under Article III. ................................. 11

        1.    The Dismissal Order Terminated the Action and F.R.Civ.P. 24 Cannot Extend the Court's Jurisdiction. .............................................. 12

        2.    There is No Existing Case or Controversy Based on the Court's Ancillary Jurisdiction to Enforce the Settlement Agreement. ................................. 13

        3.    Nonparties, like the Proposed Intervenors, Lack Standing to Challenge the Court's Dismissal Order. .................................................... 14

    B.    The Proposed Intervenors Do Not Satisfy the Requirements to Intervene as a Matter of Right under F.R.Civ.P. 24(a)(2). ........................................ 15

        1.    The Proposed Intervenors Do Not Have a Significant Protectable Interest in this Action or the Settlement Agreement. .......................................... 15

        2.    The Dismissal Order Does Not Practically Impair the Proposed Intervenors' Ability to Protect Their Alleged Statutory Interests. ........... 19

i

3.    The Motion to Intervene is Untimely..........................................21

4.    The City Adequately Represents the Interests of Its Residents and Any Cognizable Interests of the Proposed Intervenors. ..................................22

C.    The Proposed Intervenors Do Not Satisfy the Requirements for Permissive Intervention under F.R.Civ.P. 24(b)..........................................24

IV.    CONCLUSION..........................................25

**Table of Contents**

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Alaniz v. Tillie Lewis Foods*,
  572 F.2d 657 (9th Cir. 1978) .......................................................... 21, 25

*Allen v. Wright*,
  468 U.S. 737 (1984) ..................................................................*passim*

*Arakaki v. Cayetano*,
  324 F.3d 1078 (9th Cir. 2003) .............................................................. 23

*Black v. Central Motor Lines, Inc.*,
  500 F.2d 407 (4th Cir. 1974) ......................................................... 12, 21

*Cantella v. State of Cal.*,
  404 F.3d 1106 (9th Cir. 2004) ........................................... 12, 14, 21, 25

*Citibank Int'l v. Collier-Traino, Inc.*,
  809 F.2d 1438 (9th Cir. 1987) .............................................................. 14

*County of Orange v. Air Cal.*,
  799 F.2d 535 (9th Cir. 1986) ...................................................... 20, 21, 25

*DaimlerChrysler Corp. v. Cuno*,
  547 U.S. 332 (2006) ............................................................ 11, 19, 25

*Diamond v. Charles*,
  476 U.S. 54 (1986) ..................................................................*passim*

*Disability Advocates, Inc. v. New York Coalition for Quality Assisted Living, Inc.*,
  675 F.3d 149 (2d Cir. 2012) ......................................................... 12, 21

*Donnelly v. Glickman*,
  159 F.3d 405 (9th Cir. 1998) .....................................................*passim*

*Kokkonen v. Guardian Life Ins. Co. of America*,
  511 U.S. 375 (1994) ..................................................................*passim*

*Lavan v. City of Los Angeles*,
  693 F.3d 1022 (9th Cir. 2012). ........................................................ 5, 24

## TABLE OF AUTHORITIES (CONT'D)

*League of United Latin Am. Citizens v. Wilson*,
  131 F.3d 1297 (9th Cir. 1997) ................................................................. 21, 23, 24

*Lewis v. Continental Bank Corp.*,
  494 U.S. 472 (1990) .................................................................................. 11

*Lujan v. Defenders of Wildlife*,
  504 U.S. 555 (1992) .............................................................................. 16, 19

*NAACP v. New York*,
  413 U.S. 345 (1973) .................................................................................. 20

*O'Connor v. Colvin*,
  70 F.3d 530 (9th Cir. 1995) ................................................................... 12, 13

*Perry v. Proposition 8 Official Proponents*,
  587 F.3d 947 (9th Cir. 2009) ................................................................ 22, 23

*Solid Waste Agency v. United Stated Army Corp. of Eng'rs*,
  101 F.3d 503 (7th Cir. 2009) .................................................................... 22

*S. Cal. Edison v. Lynch*,
  307 F.3d 794 (9th Cir. 2002) ..........................................................*passim*

*Schulte v. Aramark Servs.*,
  Case No. 16-cv-04429-JCS, 2017 U.S. Dist. LEXIS 149450
  (N.D. Cal. Sep. 14, 2017)........................................................................ 14

*United States v. Alisal Water Corp.*,
  370 F.3d 915 (9th Cir. 2004) ......................................................... 15, 20, 21, 24

*United States v. Carpenter*,
  298 F.3d 1122 (9th Cir. 2002) ................................................................. 22

*United States v. City of Los Angeles*,
  288 F.3d 391 (9th Cir. 2002) ......................................................... 19, 20, 22, 24

*In re V-I-D, Inc.*,
  177 F.2d 234 (7th Cir. 1949) ............................................................... 12, 21

*Valley Forge Christian College v. Am. United for Separation of Church & State, Inc.*,
  454 U.S. 464 (1981)................................................................... 14, 16, 17

1

## **TABLE OF AUTHORITIES (CONT'D)**

2

*West Coast Seafood Processors Ass'n v. Nat. Res. Def. Council,*
    643 F.3d 701 (9th Cir. 2011) ..................................................... 12, 21, 25

3

4

**Rules**

5

F.R.Civ.P. 24(a) ...................................................................................... *passim*

6

F.R.Civ.P. 24(b) ............................................................................................ 24, 25

7

F.R.Civ.P. 41 ................................................................................ 10, 11, 12, 13

8

F.R.Civ.P. 60(b) ................................................................................................ 14

9

F.R.Civ.P. 82 .................................................................................................... 12

10

**Other Authorities**

11

Los Angeles City Charter Section 273(c) ..................................................... 7

12

Los Angeles Municipal Code § 56.11 ........................................................ 18

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## I.   INTRODUCTION

Several weeks after the Court dismissed this case with prejudice, a group of nonparties decided that they want to intervene into a non-existent action for the express purpose of objecting to a settlement agreement to which they are not parties and which does not impair their rights.  Specifically, nonparties DTLA Alliance for Human Rights, Joseph Burk, Harry Tashdijian, Karyn Pinsky, Charles Malow, and Charles Van Scoy (collectively the "Proposed Intervenors") want the Court to reopen this case and grant them belated party status so that they can move to set aside the Stipulated Order of Dismissal (Dkt. No. 119, hereafter "Dismissal Order") and continue this litigation against the will of the Parties.  The Proposed Intervenors are upset about the conditions of public areas in and around Skid Row caused by increased homelessness, including the "filth and crime," "squalor and disease," "violence and drug use," "vermin infestation," "unlimited property accumulation on the streets," "buildup of tents," and "inability to walk down the sidewalks" all of which they claim causes them harm as individuals who live or work in the area.  Dkt. No. 120 (Motion to Intervene, "Motion") at 5-8.  They contend that "[e]ach of them has the right to be heard on this settlement" and that this defunct litigation is an appropriate forum for voicing their generalized grievances regarding the homeless problem in Skid Row.  *Id.* at 20.

At the outset, Article III of the Constitution precludes the Proposed Intervenors' requested relief.  Intervention under Rule 24 is a procedural rule that presupposes an existing action.  The Court dismissed Plaintiffs' claims with prejudice, dissolved its three-year-old preliminary injunction, and terminated this action upon entry of the Dismissal Order on May 31, 2019.  Dkt No. 119.  Thus, there is currently no existing case or controversy pending before the Court in which to intervene.  Rule 24 does not extend the Court's jurisdiction, and cannot be used by a nonparty to reopen a nonexistent action.  The Court's ancillary jurisdiction to enforce the Settlement Agreement is limited, on its terms, to disputes (which do not

1

1  exist) between the Parties (which the Proposed Intervenors are not).  Article III is

2  dispositive because the Court cannot address the merits under Rule 24 without

3  jurisdiction.

4      The Proposed Intervenors fare no better even if the Court considers the merits

5  under Rule 24.  Federal courts are not forums for expressing generalized grievances

6  on issues of public importance, like the effects of homelessness, which are best

7  addressed by the representative branches of government.  Nor do they have any

8  judicially cognizable interest in the prosecution of homeless persons for enforcement

9  of criminal or civil violations, or in seeking to compel the City to exercise its

10  discretion on how it allocates its resources.  The contention that the Settlement

11  Agreement – as opposed to third parties not before this Court – has caused increased

12  crime, violence, drug use, vermin, excess property and nuisances is based on an

13  attenuated chain-of-causation that is entirely too speculative to be cognizable in

14  federal courts.  By contrast, the Agreement's actual terms confirms the City's broad

15  police, sanitation, and community caretaking powers to address the Proposed

16  Intervenors' concerns.  Indeed, the Proposed Intervenors do not, because they cannot,

17  articulate how the City did not adequately represent any cognizable interest.

18      Furthermore, the resolution of Plaintiffs' claims in the Settlement Agreement

19  does not impact any claim the Proposed Intervenors may seek to bring to address

20  alleged violations of the Brown Act or private or public nuisances relating to the

21  conditions in Skid Row.  The Dismissal Order does not impair these alleged claims

22  and is not preclusive or a bar to litigating these claims in a separate forum.  The

23  Motion is untimely and prejudicial to the Parties following the dismissal of the action

24  after three years of litigation and extensive settlement efforts.

25      For all these reasons, and the ones discussed below, the Court should deny the

26  Motion in its entirety.

27

28

## II.   PROCEDURAL HISTORY

### A. Plaintiffs' First Amended Complaint and Responsive Pleadings.

On March 14, 2016, Plaintiffs Carl Mitchell, Michael Escobedo, Salvador Roque, Judy Coleman, Los Angeles Catholic Worker, and Cangress (collectively "Plaintiffs") filed a complaint against Defendants City of Los Angeles ("City"), Lieutenant Andrew Mathis, Sergeant Hamer, and Sergeant Richter ("Defendants"). Dkt. No. 1.  On March 17, 2016, Plaintiffs filed the First Amended Complaint ("FAC") alleging eleven claims against Defendants.  Dkt. No. 9.

Specifically, the FAC alleged that the City seized and destroyed Plaintiffs' property without a pre- or post-deprivation hearing in violation of the Fourth, Fifth, and Fourteenth Amendments.  FAC ¶¶ 72-86.  The FAC alleged that the City deprived Plaintiffs of necessary medications and medical equipment in violations of various state and federal statutes protecting disabled individuals, including among other statutes, Title II of the Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq.* ("ADA"), Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794, and the Unruh Civil Rights Act, California Civil Code § 51 *et seq.*  FAC ¶¶ 87-116. Finally, the FAC alleged that Defendants falsely arrested certain Plaintiffs and committed the tort of conversion by wrongfully seizing and/or destroying or failing to store for 90 days Plaintiffs' personal property.  FAC ¶¶ 117-126.

On April 5, 2016, Defendants filed a motion to dismiss the FAC.  Dkt. No. 37. On May 6, 2016, the Court partially granted Defendants' motion to dismiss.  Dkt. No. 57.  The Court dismissed Plaintiffs' conversion and wrongful arrest claims with prejudice.  *Id.*  The Court denied Defendants' motion to dismiss the other nine claims.  *Id.*  Defendants filed their answer to the FAC on May 20, 2016.  Dkt. No. 61.

### B. Plaintiffs' Application for Temporary Restraining Order and Court's Preliminary Injunction Order.

On March 30, 2016, Plaintiffs filed an *ex parte* motion for temporary restraining order ("TRO") to enjoin the City from confiscating property incident to

3

arrests of homeless individuals or during cleanups of homeless areas.  Dkt. No. 13. Defendants filed their opposition to the *ex parte* application on April 7, 2016.  Dkt. No. 38.  On April 13, 2016, the Court granted Plaintiff's *ex parte* application for TRO and issued a preliminary injunction enjoining Defendants from seven actions ("P.I. Order").  Dkt. No. 51.  Specifically, the Court enjoined the City from the following seven actions:

1) "Confiscating property in Skid Row or its surrounding areas, incident to an arrest or as part of a cleanup of an area where homeless people are located, absent an objectively reasonable belief that it is abandoned, presents an immediate threat to public health or safety, is evidence of a crime, or is contraband;"

2) "Destroying property in Skid Row or its surrounding areas, absent an immediate threat to public health or safety, without maintaining the property in a secure location for a period of less than 90 days;"

3) "Storing seized property from Skid Row or its surrounding areas in a facility not open during regular business hours;"

4) "Failing to provide notice advising homeless individuals whose property is seized of the address where seized property is being stored;"

5) "Storing seized property from Skid Row or its surrounding areas in a facility that does not clearly catalog and segregate property based on the names and identification, where available, of individuals from whom the property is taken;"

6) "Storing seized property from Skid Row or its surrounding areas in a facility that is not accessible within 72 hours of seizure.  Medication, medical equipment, and uncontaminated tents, sleeping bags, and blankets must be accessible within 24 hours of seizure or an individual's release from custody whichever is later;"

**CITY'S OPPOSITION TO MOTION TO INTERVENE**

7)    "[W]here the City plans to engage in a mass cleanup of an area of Skid Row or its surrounding areas, the City must provide 24 hours advance notice advising homeless people of the cleanup and possible seizure of property and advising such individuals to remove essential property that they do not want confiscated."

Dkt. No. 51 at 11.  In support of its preliminary injunction, the Court recognized the possibility of future constitutional violations involving arrests of homeless individuals and the seizure and/or destruction of their personal property citing *Lavan v. City of Los Angeles*, 693 F.3d 1022 (9th Cir. 2012).  Dkt. No. 51.  The Court identified additional "protocol and process" that, if implemented, would satisfy the Fourteenth Amendment's Due Process Clause.  *Id.* at 8-9.

### C. City's Motion for Clarification and Order Denying Clarification.

On May 11, 2016, the City filed a motion for clarification of the P.I. Order. Dkt. No. 58.  The City requested clarification on four issues:  (1) the geographical boundaries of the "surrounding areas" of Skid Row; (2) whether the P.I. Order enjoined the City from exercising its community caretaking function in the enjoined area to secure and store an arrestee's non-essential property; (3) whether the P.I. Order allowed the City to confiscate property after 24 hours advance notice; and (4) whether the P.I. Order prohibited the City from removing sofas, appliances, and other bulky items from City sidewalks and streets.  Dkt. No. 58.  After filing its motion for clarification, the City engaged in an extensive 16-month meet-and-confer process with Plaintiffs and resolved clarification on issues (1) and (3).  Dkt. Nos. 63-74, 76-81, 90-91, 94-95, and 100.

On September 25, 2017, the Court issued an order denying the motion for clarification.  Dkt. No. 102.  In response to issue (2), the Court held that under the P.I. Order "the City is permitted to hold the personal, non-essential property of arrestees consistent with its community caretaking function as defined by relevant legal standards."  *Id.* at 4.  On issue (4), the Court held that "if a bulky item presents

5

**CITY'S OPPOSITION TO MOTION TO INTERVENE**

an immediate threat to public health or safety then it may be seized by the City and stored for the period of time designed in the [P.I.] Order.  If a bulky item does not pose such a threat, it must not be seized." *Id.* at 5.  The Court also stated that the question of whether or not the amended version of Los Angeles Municipal Code ("LAMC") § 56.11, and the definition of "bulky item" therein, was enforceable was not ripe for resolution. *Id.*  Specifically, the Court stated that "a decision regarding the constitutionality of LAMC § 56.11" must be addressed "in a setting that squarely raises that issue." *Id.*

### D. Scheduling Orders and Settlement Efforts.

On October 20, 2017, the Court issued an order setting a scheduling conference.  Dkt. No. 104.  On December 4, 2017, the Court conducted the scheduling conference and issued a Scheduling Order setting an October 9, 2018 trial date, and discovery and motion cutoff dates.  Dkt. No. 107.  The Court referred the Parties to mediation pursuant to L.R. 16-15.4.  Dkt. Nos. 107-108.

The Parties retained Magistrate Judge Carla Woehrle (Ret.) as a private mediator and conducted multiple mediations with Judge Woehrle during the course of the litigation.  Dkt. Nos. 109, 112, 114.  The Court granted three requests to amend the Scheduling Order finding good cause existed based on the Parties' efforts to resolve and settle this action.  Dkt. Nos. 110, 113, 115.  Specifically, on July 6, 2018, the Parties requested that the Court continue the trial and cutoff dates because the "Parties [had] been engaged in discussions in an effort to resolve this dispute" and had "conducted four mediations with Judge Woehrle" at that point in time.  Dkt. No. 109.  On July 12, 2018, this Court granted the Parties' first request finding "good cause" to amend the Scheduling Order based on the stipulation.  Dkt. No. 110.

On September 19, 2018, the Parties filed a second request to continue the trial and cutoff dates.  Dkt. No. 112.  The Parties informed the Court that they had "been engaged in significant and lengthy discussions in an effort to resolve this dispute", that "the matter was heard by the City Council Committee on Homelessness and

**CITY'S OPPOSITION TO MOTION TO INTERVENE**

Poverty on September 7, 2018," and that the "City Council [had] not provided guidance to the City" yet at that time.  *Id.*  The Parties stated that they wished "to continue to engage in discussions in an attempt to reach a resolution of the matter without the need for significant expenditure of taxpayer resources."  *Id.*  On October 15, 2018, this Court granted the second request finding "good cause" based on the Parties' stipulation to amend the Scheduling Order.  Dkt. No. 113.

On March 4, 2019, the Parties filed their third request to continue the trial and cutoff dates.  Dkt. No. 114.  In their third request, the Parties informed the Court that they had "conducted in-person mediation sessions with Judge Woehrle, and continue[d] to work with Judge Woehrle to reach a resolution of this matter."  *Id.*  The stipulation informed the Court that the Parties had "continued their settlement discussions, but any settlement must be approved by the full City Council."  *Id.*  At that time, the Parties estimated that "they [would] be able to resolve the matter within the next ninety days and need additional time to finalize their settlement discussions."  *Id.*  On March 8, 2019, the Court granted the third request finding "good cause" based on the Parties' stipulation to amend the Scheduling Order.  Dkt. No. 115.  The Court continued the trial and cutoff dates for ninety days setting a September 10, 2019 trial date, a July 8, 2019 motion cutoff, and a June 3, 2019 discovery cutoff.  *Id.*

The Los Angeles City Council Homelessness and Poverty Committee was briefed in closed session regarding this litigation on September 7, 2018, October 3, 2018, and February 6, 2019.  *See* Request for Judicial Notice ("RJN"), **Ex. A** (City Clerk Report and Action History for Council File Number 18-0751, *Carl Mitchell et al. v. City of Los Angeles et al.*).  Each time, the *Mitchell* case appeared on the public agenda for the committee, allowing for public comment.  *Id.*  The full City Council was briefed in closed session regarding settlement terms and recommendations on March 6, 2019 and May 22, 2019.  *Id.*  Again, the *Mitchell* case appeared on the public agenda for the City Council meeting.  *Id.*  The City obtained final approval to

**CITY'S OPPOSITION TO MOTION TO INTERVENE**

enter into the Settlement Agreement under Los Angeles City Charter Section 273(c) on May 24, 2019.  *Id.*

### E.   The Parties' Settlement Agreement.

The Parties to the Settlement Agreement are Plaintiffs Mitchell, Coleman, Roque, Los Angeles Catholic Worker, Cangress, and Defendant City.[1]  Dkt. No. 119, Ex. A.  The Agreement expressly states that "there are no intended third-party beneficiaries that may assert rights or defenses under this Agreement, except the Parties to this Agreement."  *Id.* at § 17.  The Agreement contains non-monetary and monetary terms, as well as modification and dispute resolution provisions.  *See id.* at §§ 1-6, 17, 22-23.

First, the Agreement contains non-monetary terms that address protocol and process for conducting cleanups and storing personal property seized in the covered area.[2]  *Id.* § 4.  These include:

> ➢ providing 24 hours advance notice of a cleanup and advising people of the cleanup and possible seizure of property not removed from the cleanup area; providing an additional 30-minute warning when a cleanup is imminent; allowing individuals to recover medication and medical equipment at the scene as opposed to a storage facility; and rescheduling a cleanup in cold weather below 50 degrees or if it is raining.  *Id.* at § 4(b).
>
> ➢ seizing property incident to arrest only when applicable exceptions to the Fourth Amendment's warrant requirement exists.  *Id.* at § 4(c).
>
> ➢ storing property seized within the covered area for no less than 90 days in facilities open during normal business hours and using storage methods to catalog property and identify owner information when available; providing

---

[1] Plaintiff Escobedo passed away during the pendency of the action and is not a party to the Settlement Agreement.  Dkt. No. 116.

[2] The Settlement Agreement's covered area coincides with the geographic boundaries on the injunction.  Dkt. No. 119, Ex. A § 4(a); Dkt. Nos. 51, 100, 102.

8

**CITY'S OPPOSITION TO MOTION TO INTERVENE**

post-seizure notice identifying the location where seized property may be recovered; ensuring that medication, medical equipment, and uncontaminated tents, sleeping bags, or blankets are accessible within 24 hours of seizure and all other seized property is available within 72 hours of seizure.  *Id.* at § 4(d).

➢ acknowledging the City's right to seize and dispose of large furniture, appliances, similarly-sized items, wooden pallets, and open-flame cooking devices located in public areas on streets or sidewalks.  *Id.* at § 4(e).

➢ addressing property that impedes access as required by the ADA, or property that obstructs entrance into or exit from buildings or property, including ingress or egress to driveways, loading docks, businesses, and residences, including process for moving property to provide appropriate clearance when such property can reasonably be moved or providing post-seizure notice and storing property when it must be seized.  *Id.* at § 4(h).

➢ maintaining records sufficient to document compliance with this protocol and process during the Agreement's term.  *Id.* at § 4(g).

The Agreement contains express ***exceptions*** to the protocol and process for seizing and storing any property that presents an immediate threat to public health or safety, or any property that is contraband, evidence of a crime, or abandoned.  *Id.* §§ 4(b)-(f).  The Agreement confirms that the protocol and process does not limit the City's right to seize property under any applicable exceptions to the Fourth Amendment's warrant requirement, including under the Community Caretaking doctrine.  *Id.* at § 4(c).  The Agreement further confirms the City's ability to perform routine sanitation services, including collecting trash, debris, litter, recycling, and sanitizing or cleaning streets and sidewalks so long as such cleaning does not involve seizing individuals' property.  *Id.* at § 4(b).  The Agreement expressly reserves the City's right to enforce laws otherwise applicable in the covered area.  *Id.* at § 5.  The Agreement will be in place only for a three-year term that commences on the date the Court enters the Dismissal Order.  *Id.* at § 2.

**CITY'S OPPOSITION TO MOTION TO INTERVENE**

Second, the City agreed to pay a total settlement sum of $645,000, inclusive of all attorneys' fees, costs, and any damages. *Id.* at § 1. Plaintiffs released all claims against Defendants, and agreed to dismiss the action with prejudice. *Id.* at §§ 2-3.

Third, the Agreement contains a modification clause to address any future orders or judgments regarding the constitutionality, or the City's enforcement, of any law, code, regulation or ordinance, including LAMC § 56.11. *Id.* at § 6. In the event a future order or judgment addresses the constitutionality or enforcement of any law or ordinance, including LAMC § 56.11, and such order or judgment conflicts with the Agreement, the order or judgment controls over the inconsistent parts of the Agreement. *Id.* If the Parties dispute whether or not such a conflict exists, the Agreement permits the Parties to petition the Court to resolve the dispute. *Id.*

Finally, the Agreement contains a dispute resolution process for resolving any future disputes regarding the enforcement or interpretation of the Agreement. *Id.* at §§ 22-23. The Parties to the Agreement may provide written notice of a future dispute to the other side, and the Parties must meet and confer in good faith to try to resolve the dispute before petitioning the Court for review. *Id.* at § 22.

### F. The Court's Dismissal Order.

The Parties' extensive discussions began well over a year before the Settlement Agreement was finally drafted and approved. *See* Section II.D, *supra*; Dkt. Nos. 109-110, 112-115; RJN, Ex. A. On May 29, 2019 – more than three years after the Court issued the P.I. Order enjoining the City – the Parties filed a notice of lodging the proposed stipulated order of dismissal within the ninety-day period identified in the Parties' third stipulation. Dkt. No. 118; Dkt. No. 114.

On May 31, 2019, the Court entered the Dismissal Order pursuant to F.R.Civ.P. 41 and terminated the case. Dkt. No. 119. The Dismissal Order dissolved the Court's preliminary injunction, dismissed Plaintiffs' claims with prejudice, incorporated the Settlement Agreement, and expressly retained jurisdiction for three years to enforce the Settlement Agreement. *Id.* The Court expressly ordered the

10

**CITY'S OPPOSITION TO MOTION TO INTERVENE**

Parties to comply with the Settlement Agreement's dispute resolution procedures before petitioning the Court to review any future dispute between the Parties regarding enforcement of the Settlement Agreement. *Id.*

### III.   ARGUMENT

#### A. The Court Must Deny the Motion for Lack of Jurisdiction Because There Is No Existing Case or Controversy under Article III.

As a threshold matter, the Court must address whether a pending "case or controversy" exists in which a non-party may intervene.  "Article III of the Constitution limits the power of federal courts to deciding 'cases' and 'controversies.'"  *Diamond v. Charles*, 476 U.S. 54, 61 (1986).  "Federal courts are courts of limited jurisdiction.  They possess only that power authorized by Constitution and statute, which is not to be expanded by judicial decree."  *Kokkonen v. Guardian Life Ins. Co. of America*, 511 U.S. 375, 377 (1994) (internal citations omitted).  "The case-or-controversy doctrines state fundamental limits on federal judicial power in our system of government."  *Allen v. Wright*, 468 U.S. 737, 750 (1984); *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 341 (2006) ("[N]o principle is more fundamental to the judiciary's proper role in our system of government than the constitutional limitation of federal-court jurisdiction to actual cases of controversies.").  "This case-or-controversy requirement subsists through all stages of federal judicial proceedings, trial and appellate."  *Lewis v. Continental Bank Corp.*, 494 U.S. 472, 477 (1990).

"To sustain jurisdiction … it is not enough that a dispute was very much alive when suit was first filed."  *Id.*  Federal courts are presumed to lack jurisdiction, unless the party asserting jurisdiction affirmatively establishes to the contrary. *Kokkonen*, 511 U.S. at 377*; DaimlerChrysler,* 547 U.S. at 342, fn2 ("the party asserting federal jurisdiction when it is challenged has the burden of establishing it.").  As discussed below, the Motion must be denied for lack of jurisdiction because there is no pending case or controversy under Article III in which to intervene.

11

**CITY'S OPPOSITION TO MOTION TO INTERVENE**

1

2

1.  The Dismissal Order Terminated the Action and F.R.Civ.P. 24 Cannot Extend the Court's Jurisdiction.

3      Intervention under F.R.Civ.P. 24 is a procedural means for entering an existing

4  federal action.  *Cantella v. State of Cal.*, 404 F.3d 1106, 1113 (9th Cir. 2004).

5  F.R.Civ.P. 24 does not and cannot extend the Court's jurisdiction.  *Cantella*, 404

6  F.2d at 1113; F.R.Civ.P. 82 ("These rules do not extend or limit the jurisdiction of

7  the district courts[.]").  "Rule 24 states under what circumstances intervention is

8  proper as a matter of procedure, but intervention still must be denied, though all of

9  the requirements of Rule 24 are met, if the federal court cannot take jurisdiction with

10  regard to the intervenor."  *Cantella*, 404 F.2d at 1113.

11      Here, the Court dismissed this entire action with prejudice and terminated the

12  case on May 31, 2019 upon entry of the Dismissal Order pursuant to F.R.Civ.P 41.

13  Dkt. 119.  "When the initial action is dismissed, federal jurisdiction terminates."

14  *O'Connor v. Colvin*, 70 F.3d 530, 532 (9th Cir. 1995) (citing *Kokkonen*, 511 U.S. at

15  378-79).  Because there is no existing action or pending case or controversy under

16  Article III, the Motion must be denied for lack of jurisdiction.  *Cantella*, 404 F.2d at

17  1113; *West Coast Seafood Processors Ass'n v. Nat. Res. Def. Council,* 643 F.3d 701,

18  704 (9th Cir. 2011) ("Because the underlying litigation is over, we cannot grant

19  [proposed intervenor] any 'effective relief' by allowing it to intervene now.");

20  *Disability Advocates, Inc. v. New York Coalition for Quality Assisted Living, Inc.,*

21  675 F.3d 149, 160 (2d Cir. 2012) ("Since intervention contemplates an existing suit

22  in a court of competent jurisdiction, and because intervention is ancillary to the main

23  cause of action, intervention will not be permitted to breathe life into a nonexistent

24  law suit."); *Black v. Central Motor Lines, Inc.*, 500 F.2d 407, 408 (4th Cir. 1974)

25  ("Intervention is ancillary and subordinate to a main cause and whenever an action is

26  terminated, for whatever reason, there no longer remains an action in which there can

27  be intervention."); *In re V-I-D, Inc.*, 177 F.2d 234, 236 (7th Cir. 1949) ("Intervention

28

**CITY'S OPPOSITION TO MOTION TO INTERVENE**

presupposes the pendency of a suit in a court of competent jurisdiction and the intervenor … accepts the proceedings as he finds them at the time of intervention.").

2.   There is No Existing Case or Controversy Based on the Court's Ancillary Jurisdiction to Enforce the Settlement Agreement.

In *Kokkonen*, the Supreme Court held that federal courts may retain ancillary jurisdiction to enforce a settlement agreement after a dismissal of an action under Rule 41 by incorporating the terms of the settlement agreement into the dismissal order. *Kokkonen*, 511 U.S. at 380-81.  Absent such action, the court lacks jurisdiction to address disputes regarding the settlement agreement after dismissal under Rule 41.  *Id.* at 381-82; *O'Connor*, 70 F.3d at 532.  Here, the Court expressly retained ancillary jurisdiction in the Dismissal Order to enforce the Settlement Agreement.  Dkt. No. 119 (citing *Kokkonen*, 511 U.S. at 381).

A motion to enforce the Settlement Agreement, however, "is a separate contract dispute requiring its own independent basis for jurisdiction."  *O'Connor*, 70 F.3d at 532.  Here, the Settlement Agreement is a contract entered into between the City and Plaintiffs; the Agreement expressly disclaims any third-party beneficiaries, and permits only the Parties to petition the Court to resolve a dispute regarding the enforcement of the Agreement after following the Agreement's dispute resolution procedures.  Dkt. No. 119, Ex. A at §§ 17, 22; Section II.E, *supra*.  Neither Plaintiffs nor the City have filed any motions to enforce or interpret the Agreement since the Court entered the Dismissal Order and terminated the action on May 31, 2019.  Accordingly, no pending case or controversy exists under the Court's ancillary jurisdiction.  *Kokkonen*, 511 U.S. at 381 ("a breach of the agreement would be a violation of the order, and ancillary jurisdiction to enforce the agreement would therefore exist."); *O'Connor*, 70 F.3d at 532 ("The settlement terms must be part of the dismissal in order for a violation of the settlement agreement to amount to a violation of the court's order.  Without a violation of the court's order, there is no jurisdiction.").

**CITY'S OPPOSITION TO MOTION TO INTERVENE**

3.   Nonparties, like the Proposed Intervenors, Lack Standing to Challenge the Court's Dismissal Order.

Nonparties generally lack standing to challenge a district court's final orders or judgment. *Citibank Int'l v. Collier-Traino, Inc.*, 809 F.2d 1438, 1440-41 (9th Cir. 1987). In *Citibank*, the Ninth Circuit held that a nonparty had standing to challenge a final judgment only in "exceptional circumstances" when "(1) the party participated in the proceedings below; and (2) the equities favor hearing the appeal." *Id.* at 1441.

Here, the Proposed Intervenors did not participate in this action in any capacity or at any time before the Court entered the Dismissal Order and terminated the case. *E.g.,* Dkt. No. 120 at 11. Accordingly, no "exceptional circumstances" apply and cannot provide an independent basis for the Court's jurisdiction to consider either the Motion or the Proposed Intervenors' objections. *Citibank,* 809 F.2d at 1441; *see also S. Cal. Edison v. Lynch*, 307 F.3d 794, 804 (9th Cir. 2002) (submitting an application to intervene is insufficient to establish participation in the proceedings under the *Citibank* exceptional-circumstances test); *Schulte v. Aramark Servs.*, Case No. 16-cv-04429-JCS, 2017 U.S. Dist. LEXIS 149450, at *14-16 (N.D. Cal. Sep. 14, 2017) (denying non-party and proposed intervenor's F.R.Civ.P. 60(b) motion to vacate order dismissing action due to lack of standing under *Citibank*.).

The Proposed Intervenors must, but cannot, establish that the Court has Article III jurisdiction to consider the merits of the Motion, much less jurisdiction to adjudicate the merits of the proposed objections. *Kokkonen*, 511 U.S. at 377; *Diamond*, 476 U.S. at 68; *Cantella*, 404 F.2d at 1113; *Citibank*, 809 F.2d at 1441. Because Rule 24 cannot expand or confer jurisdiction, the Court need not (and indeed should not) address the merits of the Motion. *Cantella*, 404 F.2d at 1113; *Diamond*, 476 U.S. at 68; *see also Valley Forge Christian College v. Americans United for Separation of Church and State, Inc.*, 454 U.S. 464, 471 (1981) ("The requirements of Article III are not satisfied merely because a party requests a court of the United States to declare its legal rights[.]");

14

**B. The Proposed Intervenors Do Not Satisfy the Requirements to Intervene as a Matter of Right under F.R.Civ.P. 24(a)(2).**

Although it does not, if this Court had jurisdiction to consider the Motion, the Motion should still be denied on the merits.  F.R.Civ.P 24(a)(2) governs intervention as a matter of right.  "An applicant seeking intervention as a matter of right must show that: (1) it has a significant protectable interest relating to the property or transaction that is the subject of the action; (2) the disposition of the action may, as a practical matter, impair or impede the applicant's ability to protect its interest; (3) the application is timely; and (4) the existing parties may not adequately represent the applicant's interest."  *Donnelly v. Glickman*, 159 F.3d 405, 409 (9th Cir. 1998); *S. Cal. Edison*, 307 F.3d at 802.  "The party seeking to intervene bears the burden of showing that *all* of the requirements for intervention are met."  *United States v. Alisal Water Corp.*, 370 F.3d 915, 919 (9th Cir. 2004) (emphasis in original).

1.  The Proposed Intervenors Do Not Have a Significant Protectable Interest in this Action or the Settlement Agreement.

"An applicant has a significant protectable interest in an action if (1) it asserts an interest that is protected under some law, and (2) there is a relationship between its legally protected interest and the plaintiff's claims."  *S. Cal. Edison*, 307 F.3d at 803.  "The relationship requirement is met if the resolution of the plaintiff's claims actually will affect the applicant."  *Id.*  "When an applicant's purported interest is so tenuous, intervention is inappropriate."  *Donnelly*, 159 F.3d at 411.

Here, the Proposed Intervenors contend the following interests are legally protected and related to the Plaintiffs' claims in this action:

> ➢ the existing conditions of public areas in and around Skid Row caused by increased homelessness, including the increase in "filth and crime," "squalor and disease," "violence and drug use," "vermin infestation," "unlimited property accumulation on the streets," "buildup of tents," and "inability to walk down the sidewalks" cause them harm.  *See* Dkt. No. 120 at 5-8.

15

➢ the settlement subjects them "to increased squalor, disease, interference with the enjoyment of their respective life and property, and obstruction of free passage or use of public spaces." *Id.* at 15-16.

➢ the settlement permits the homeless population to maintain an "unlimited amount of property" allowing violations of state and federal law, "public and private nuisance" statutes, and LAMC § 56.11. Dkt. No. 120-1 at 4-7, 9-10.

➢ the settlement "condones" and permits ADA violations by permitting unattended property to block access to sidewalks. *Id.* at 11-13.

➢ the City violated the Brown Act, California Government Code § 54950 *et seq.*, because the settlement "modified" LAMC § 56.11. *Id.* at 13-16;

➢ the City abnegated its police powers in the settlement by not prosecuting the homeless population for violations of LAMC § 56.11. *Id.* at 15-17.

➢ the settlement violates equal protection because "the high concentration of homeless population" should "rationally lead to increased enforcement" to reduce crime and disease. *Id.* at 18.

The homeless residing in Skid Row and the current conditions in that area are issues of public importance to the City and many, if not all, of its residents. But federal courts are not forums for members of the public – like the Proposed Intervenors – to express their generalized grievances on such issues of wide public importance. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 573 (1992); *Valley Forge*, 454 U.S. at 475; *Allen*, 468 U.S. at 754 (such "generalized grievances" are not judicially cognizable under Article III); *see also S. Cal. Edison*, 307 F.3d at 803 ("[A]n undifferentiated, generalized interest in the outcome of an ongoing action is too porous a foundation on which to premise intervention as of right.").

Resolving the issues that create or arise out of homelessness, is a problem that will not and cannot be solved by federal courts, but by the representative and co-equal branches of government. *Valley Forge*, 454 U.S. at 475 (Federal courts must refrain "from adjudicating abstract questions of wide public significance which

16

1    amount to generalized grievances pervasively shared and most appropriately

2    addressed in the representative branches.") (internal quotations omitted).  For this

3    reason, the Court must decline the invitation to reopen this case and serve as a de-

4    factor special master over the Proposed Intervenors' generalized grievances regarding

5    homelessness and the City's efforts to address the problem and mitigate its effects in

6    the Skid Row area.  *Allen v. Wright*, 468 U.S. 737, 760 (1984) (federal courts are not

7    "virtually continuing monitors of the soundness of Executive Action").

8         The Proposed Intervenors assertion that the Settlement Agreement will cause

9    increased crime, violence, drug use, accumulation of property and tents, obstruction

10   of access and nuisances is entirely speculative and based on pure conjecture.   Dkt.

11   No. 120 at 14-18; Dkt. No. 120-1 at 6-12.  Third parties who are not before this Court

12   commit any such acts.  Injuries like these that "result from the independent action of

13   some third party not before the court" are "attenuated" and too "speculative" to "meet

14   the minimum requirement of Art. III" or establish the necessary "links in the chain of

15   causation between the challenged Government conduct and the asserted injury."

16   *Allen*, 468 U.S. at 757-759.

17        Moreover, it is clear that the Settlement Agreement *itself* (which is less

18   restrictive than the injunction) causes no such injuries.  Rather, as discussed in

19   Section II.E, *supra*, the Agreement confirms and strengthens the City's ability to

20   address the Proposed Intervenors' identified concerns.  The Agreement contains

21   express exceptions for seizing and storing any property that creates an immediate

22   threat to public health or safety, or property that is contraband, evidence of crime or

23   abandoned.  Dkt. No. 119, Ex. A. at §§ 4(b)-(f).  The Agreement expressly does not

24   limit the City's ability to perform routine sanitation services in the normal course,

25   including collecting trash, debris, litter, recycling, and sanitizing or cleaning streets

26   and sidewalks.  *Id.* at § 4(b).  The Agreement confirms the City's right to remove

27   large furniture, appliances, similarly-sized items, pallets, and open-flame cooking

28   devices located in public areas on streets or sidewalks.  *Id.* at § 4(e).  The Agreement

17

**CITY'S OPPOSITION TO MOTION TO INTERVENE**

provides for clearing obstructions that block required access under the ADA or ingress or egress into buildings, residences, driveways, or loading docks. *Id.* at § 4(h). The City retains the right to remove any and all property from public areas or sidewalks so long as the City provides pre- and post-seizure notice and stores property in accordance with the additional "protocol and process" that satisfy Due Process. *Id.* at. §§ 4(b)-(f). Finally, the City maintains all rights to seize any property where such seizure is permitted under the Fourth Amendment, including exceptions to the warrant requirement like the Community Caretaking doctrine. *Id.* at § 4(c).

For these reasons, the Proposed Intervenors' grievances have little, if anything, to do with the Agreement's actual terms. Rather, their complaints arise out of (i) the failure to prosecute homeless individuals for violations of LAMC § 56.11, and (ii) the City's allocation of resources to address homelessness, cleanups and abatement. These "interests" are not judicially cognizable under Article III.

First, the Proposed Intervenors have no protectable or legal interest in the prosecution of homeless individuals or others for violations of LAMC § 56.11. *Diamond*, 476 U.S. at 65. The Supreme Court's analysis in *Diamond* is instructive in distinguishing the fundamentally different "interests" between the Plaintiffs' claims (alleging constitutional violations for arrests, seizures and destruction of property without due process) and the Proposed Intervenors' objections.

"The conflict between state officials empowered to enforce a law and private parties subject to prosecution under that law is a classic 'case or controversy' within the meaning of Art. III." *Diamond*, 476 U.S. at 64. In contrast, "a private citizen lacks a judicially cognizable interest in the prosecution or nonprosecution of another." *Id.* "The concerns for state autonomy that deny private individuals the right to compel a State to enforce its laws apply with even greater force to an attempt by a private individual to compel a State to create and retain the legal framework within which individual enforcement decisions are made." *Diamond*, 476 U.S. at 65.

18

**CITY'S OPPOSITION TO MOTION TO INTERVENE**

1   "[T]he power to create and enforce a legal code, both civil and criminal is one of the

2   quintessential functions of a State." *Id.*  "Because the State alone is entitled to create

3   a legal code, only the State has the kind of direct stake … in defending the standards

4   embodied in that code." *Id*.

5          Second, separation-of-powers principles preclude the Court from dictating how

6   the City exercises its discretionary spending to address issues arising out of

7   homelessness.  *DaimlerChrysler*, 547 U.S. at 346.  "State policymakers … retain

8   broad discretion to make policy decisions concerning state spending in different ways

9   depending on their perceptions of wise state fiscal policy and myriad other

10  circumstances." *Id.*  Federal courts do not serve as "virtually continuing monitors of

11  the wisdom and soundness of state fiscal administration." *Id.*; *Lujan*, 504 U.S. at

12  577; *Allen*, 468 U.S. at 760 ("[A] federal court is not the proper forum to press

13  general complaints about the way in which government goes about its business.").

14         Finally, the Agreement's additional protocol and process cannot implicate any

15  protectable interests of the Proposed Intervenors.  *Donnelly*, 159 F.3d at 411; *United

16  States v. City of Los Angeles*, 288 F.3d 391, 398-99 (9th Cir. 2002) ("no protectable

17  interest in violating other individuals' constitutional rights.").  As discussed below,

18  the Proposed Intervenors' alleged statutory interests under the Brown Act and Civil

19  Code are not impacted by Plaintiffs' claims nor impaired by the Dismissal Order.

20              2.   The Dismissal Order Does Not Practically Impair the Proposed

21                   Intervenors' Ability to Protect Their Alleged Statutory Interests.

22         Plaintiffs' FAC alleged the City seized and destroyed Plaintiffs' property

23  without a pre- or post-deprivation hearing in violation of the Fourth, Fifth, and

24  Fourteenth Amendments, and that the City deprived Plaintiffs of necessary

25  medications and medical equipment in violations of various state and federal statutes

26  protecting disabled individuals. FAC ¶¶ 72-126; Section II.A, *supra*.  The Proposed

27  Intervenors purport to allege claims for violation of the Brown Act, California Civil

28  Code, in addition to the generalized- grievance claims discussed above that are not

**CITY'S OPPOSITION TO MOTION TO INTERVENE**

judicially cognizable under Article III.  These are fundamentally different claims and alleged injuries.  *Alisal Water Corp.*, 370 F.3d at 920 (the "interest must be related to the underlying subject matter of the litigation.")

The Dismissal Order dismisses with prejudice Plaintiffs' claims against Defendants.  Dkt. No. 119.  The Settlement Agreement is between the Parties, resolves disputes between only the Parties, disclaims any third-party beneficiaries, and permits only the Parties to petition to the Court for enforcement.  Dkt. No. 119, Ex. A at §§ 17, 22.  Neither the Dismissal Order nor the Agreement are preclusive of or a bar to subsequent nonparty claims, including any alleged Brown Act, Civil Code or purported state-law violations.  Because the Proposed Intervenors are not foreclosed by the Court's order from litigating claims in a separate action, there is no impairment under F.R.Civ.P. 24(a).  *NAACP v. New York*, 413 U.S. 345, 368 (1973); *City of Los Angeles*, 288 F.3d at 402 ("The litigation does not prevent any individual from initiating suit against LAPD officers who engage in unconstitutional practices or against the City defendants for engaging in unconstitutional patterns or practices."); *Alisal Water Corp.*, 370 F.3d at 921 (interests are not impaired because proposed intervenor had "other means by which to protect its interests"); *County of Orange v. Air Cal.*, 799 F.2d 535, 538 (9th Cir. 1986) (no impairment where "stipulated judgment made pursuant to negotiated settlement effecting only the signing parties" had no "*stare decisis* effect" or any "res judicata or collateral estoppel effect").

In fact, what the Proposed Intervenors are seeking to do is insert an entirely new set of claims under Rule 24 by requesting that this Court adjudicate alleged Brown Act, nuisance, and state law violations.  F.R.Civ.P. 24 cannot be used "to allow the creation of whole new lawsuits by the intervenors." *S. Cal. Edison*, 307 F.3d at 803; *Donnelly*, 159 F.3d at 412.  Accordingly, the Proposed Intervenors fail to establish the second required element of impairment of any cognizable interest under F.R.Civ.P. 24(a).

20

### 3.   The Motion to Intervene is Untimely.

"Courts weigh three factors in determining whether a motion to intervene is timely: (1) the stage of the proceeding at which the applicant seeks to intervene; (2) the prejudice to other parties; and (3) the reason for and length of the delay." *Alisal Water Corp.*, 370 F.3d at 921; *County of Orange*, 799 F.2d at 537.

The first element – stage of the proceedings at which the applicant seeks to intervene – is dispositive on the timeliness factor because the Proposed Intervenors filed the Motion *after* the Court dismissed the case with prejudice and terminated the action.  *See* Section III.A, *supra*; *Cantella*, 404 F.2d at 1113; *West Coast Seafood Processors Ass'n*, 643 F.3d at 704; *Disability Advocates, Inc.*, 675 F.3d at 160; *Black*, 500 F.2d at 408; *In re V-I-D, Inc.*, 177 F.2d at 236; *see also Alaniz v. Tillie Lewis Foods*, 572 F.2d 657, 569 (9th Cir. 1978) (motion to intervene filed 17 days after consent decree approved untimely); *County of Orange*, 799 F.2d at 538 (motion filed after five years of litigation that would undue settlement untimely); *League of United Latin Am. Citizens v. Wilson*, 131 F.3d 1297, 1303 (9th Cir. 1997) (motion filed after 27 months of litigation untimely).

The second element – prejudice – also weighs against the Proposed Intervenors.  The Agreement became effective on May 31, 2019 upon entry of the Dismissal Order, and the exchange of consideration on its terms has occurred.  Dkt. No. 119, Ex. A, §§ 1-4; *Alaniz*, 572 F.2d at 659 ("Here, the decree is already being fulfilled; to countermand it now would create havoc and postpone the needed relief.").  The Agreement resolved and settled disputed claims, dissolved the injunction that had been imposing greater restrictions on the City for more than three years, and implemented additional protocol and process that satisfy Due Process. *Id.*; Dkt. Nos. 51, 102; *Alaniz*, 572 F.2d at 659 ("In evaluating the second factor, courts have emphasized the seriousness of the prejudice which results when relief from long-standing inequities is delayed."); *County of Orange*, 799 F.2d at 538.

**CITY'S OPPOSITION TO MOTION TO INTERVENE**

1    The third factor – cause for delay – is rendered immaterial because no excuse

2    can cure the jurisdictional defect from filing the Motion after the Court dismissed the

3    case and terminated the action.  For this reason, the Proposed Intervenors' reliance on

4    *United States v. Carpenter*, 298 F.3d 1122 (9th Cir. 2002), is misplaced.  In

5    *Carpenter*, the interveners filed a motion to intervene ***before*** the district court

6    approved the settlement and entered a final order.  *Id.* at 1124.  At that stage of the

7    proceeding, there was still a case in which to intervene and, unlike here, an active

8    case or controversy establishing the district court's Article III jurisdiction.  *Id.* at

9    1124-25; *see also City of Los Angeles*, 288 F.3d at 400 (allowing intervention where

10   "consent decree had not been approved, judgment had not been entered, and although

11   the decree had been proposed, the possibility remained that it would not be

12   entered.").

13   Moreover, the Proposed Intervenors do not adequately explain why they did

14   not seek to intervene when the City publically signaled its intention to resolve the

15   dispute through negotiation, rather than litigation, nearly one year before the Parties

16   lodged the proposed stipulated order of dismissal with the Court.  Section II.D.,

17   *supra*; Dkt. Nos. 109-110, 112-115; RJN Ex. A; *Solid Waste Agency v. United States*

18   *Army Corp. of Eng'rs*, 101 F.3d 503, 509 (7th Cir. 1996) (recognizing that would-be

19   intervenors could file a standby or conditional application for leave to intervene at

20   any time in a case to protect against the possibility that "the government's

21   representation of their interests may turn inadequate.").

22       4.   The City Adequately Represents the Interests of Its Residents and

23            Any Cognizable Interests of the Proposed Intervenors.

24   The Ninth Circuit considers three factors in determining adequacy of

25   representation under F.R.Civ.P. 24(a): "(1) whether the interest of a present party is

26   such that it will undoubtedly make all of the a proposed intervenor's arguments; (2)

27   whether the present party is capable and willing to make such arguments; and (3)

28   whether a proposed intervenor would offer any necessary elements to the proceeding

22

**CITY'S OPPOSITION TO MOTION TO INTERVENE**

that other parties would neglect." *Arakaki v. Cayetano*, 324 F.3d 1078, 1086 (9th Cir. 2003). "The most important factor to determine whether a proposed intervenor is adequately represented by a present party to the action is how the intervenor's interest compares with the interests of existing parties." *Id.; Perry v. Proposition 8 Official Proponents,* 587 F.3d 947, 950-51 (9th Cir. 2009) (same).

A presumption of adequate representation exists when the representative is a government body. *City of Los Angeles*, 288 F.3d at 401. A presumption of adequate representation also exists when the proposed intervenor and a party share the same "ultimate objective." *Perry,* 687 F.3d at 951. In either situation, the applicant must make "a very compelling showing to the contrary" to rebut these presumptions. *Arakaki*, 324 F.3d at 1086.

Here, the Proposed Intervenors cannot overcome the presumption of adequate representation. The Proposed Intervenors and the City have similar – if not identical – interests in "not being subjected to squalor, disease, foul odors, obstruction of free passage in public areas, violent activity and decreased economic use of their property." Dkt. No. 120 at 19. The Proposed Intervenors do not allege any judicially cognizable interests to demonstrate how their purported interests or arguments differ from the City's. *See* Section III.B(1), *supra*. An applicant "must produce something more than speculation as to the purported inadequacy in order to justify intervention as a matter of right" under F.R.Civ.P. 24(a). *League of United Latin Am. Citizens*, 131 F.3d at 1307.

The Agreement's protocol and process do not abnegate the City police powers, community caretaking functions, abatement of health and safety hazards, or sanitation services provided in the normal course. *See* Section II.E; Dkt. No. 119, Ex. A at § 4. The Agreement contemplates future litigation squarely addressing LAMC § 56.11 and includes a modification provision that any decision or judgment regarding the constitutionality or enforceability of LAMC § 56.11 shall supersede any inconsistent terms in the Agreement. Dkt. No. 119, Ex. A at § 6. This Court

23

1    stated that "a decision regarding the constitutionality of LAMC § 56.11" must be
2    addressed "in a setting that squarely raises that issue" and that the question of
3    whether the definition of "bulky item" was enforceable was "not ripe for resolution."
4    Dkt. No. 102 at 5; *see also* Dkt. No. 51 at 6 (the "violation of a City ordinance does
5    not vitiate the Fourth Amendment's protection of one's property.").  Litigating this
6    issue in a future, ripe dispute does not render the City's representation inadequate.

7    The Proposed Intervenors' only argue that the City has "a misguided analysis
8    of the law or facts."  Dkt. No. 120 at 19.  Such opinions do not constitute a
9    "compelling showing" of inadequate representation.  *City of Los Angeles*, 288 F.3d at
10   402-03; *League of United Latin Am. Citizens*, 131 F.3d at 1306 ("A difference of
11   opinion concerning litigation strategy does not overcome the presumption of
12   adequate representation.").  The failure to establish any one of the four elements is
13   fatal to a motion under F.R.Civ.P. 24(a).  *Alisal*, 370 F.3d at 919.  Here, the Proposed
14   Intervenors fail to establish all four.  The Motion must denied under F.R.Civ.P. 24(a).

15              **C. The Proposed Intervenors Do Not Satisfy the Requirements for**
16                    **Permissive Intervention under F.R.Civ.P. 24(b).**

17   F.R.Civ.P. 24(b) governs permissive intervention.  "An applicant who seeks
18   permissive intervention must prove that it meets three threshold requirements: (1) it
19   shares a common question of law or fact with the main action; (2) the motion is
20   timely; and (3) the court has an independent basis for jurisdiction over the applicant's
21   claims."  *Donnelly*, 159 F.3d at 412; *City of Los Angeles*, 288 F.3d at 403.

22   The Motion does not address all three elements for permissive intervention,
23   much less establish all of them.  *See* Dkt. No. 120 at 20 (vaguely asserting a common
24   claim regarding the "appalling conditions" and "right to be heard on this settlement").

25   First, there are no common questions of law or fact between Plaintiffs' claims
26   and the Proposed Intervenors' objections.  *See* Section III.B(1)-(2); *Donnelly*, 159
27   F.3d at 412; *S. Cal. Edison*, 307 F.3d at 803.  Second, the Motion is untimely because
28   it was filed after the Court dismissed the action with prejudice and terminated the

**CITY'S OPPOSITION TO MOTION TO INTERVENE**

action.  *See* Section III.B(3); *West Coast Seafood Processors Ass'n,* 643 F.3d at 704; *Alaniz*, 572 F.2d at 569.  Third, the Proposed Intervenors fail to establish an independent basis for jurisdiction.  *Kokkonen*, 511 U.S. at 377; *Cantella*, 404 F.2d at 1113; *Allen*, 468 U.S. at 760; *Diamond*, 476 U.S. at 65; *see also DaimlerChrysler*, 547 U.S. at 351-52 (Federal courts cannot exercise supplemental jurisdiction over a state law claim that "does not itself satisfy those elements of the Article III inquiry[.]").  Thus, the Court must also deny the Motion under F.R.Civ.P. 24(b).  *S. Cal. Edison*, 307 F.3d at 803; *Donnelly*, 159 F.3d at 412; *County of Orange,* 799 F.2d at 539.

## IV.   CONCLUSION

For the foregoing reasons, and for any reasons that may arise at the hearing on this matter, the Motion to Intervene should be denied for lack of jurisdiction under Article III or, alternatively, on the merits under F.R.Civ.P 24.

Dated:  July 15, 2019          MICHAEL N. FEUER, City Attorney
                               KATHLEEN KENEALY, Sr. Asst. City Attorney
                               SCOTT MARCUS, Sr. Asst. City Attorney
                               **FELIX LEBRON, Deputy City Attorney**


                               By:  _____/s/Felix Lebron_____
                                        FELIX LEBRON
                                        Deputy City Attorney
                                        Attorney for DEFENDANTS

25

**CITY'S OPPOSITION TO MOTION TO INTERVENE**