1  | Carol A. Sobel (SBN 84483)
2  | **LAW OFFICE OF CAROL A. SOBEL**
   | 725 Arizona Avenue, Suite 300
3  | Santa Monica, California 90401
   | Tel: (310) 393-3055
4  | carolsobel@aol.com

5

6  | Shayla R. Myers (SBN 264054)        Catherine Sweetser (SBN 271142)
   | **LEGAL AID FOUNDATION OF**         **SCHONBRUN SEPLOW**
7  | **LOS ANGELES**                     **HARRIS & HOFFMAN LLP**
   | 7000 S. Broadway                    11543 Olympic Boulevard
8  | Los Angeles, CA 90003               Los Angeles, California 90064
   | Tel: (213) 640-3983                 Tel: (310) 396-0731
9  | Fax: (213) 640-3988                 Fax: (310) 399-7040
   | smyers@lafla.org                    csweetser@sshhlaw.com
10

11

12 | *Attorneys for Plaintiffs.*

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA – WESTERN DIVISION

| | |
|---|---|
| Carl Mitchell, et al., | CASE NO. 16-CV-01750 SJO (JPR) |
| Plaintiff(s), | [Assigned to Hon. S. James Otero, Courtroom 10C] |
| vs. | **PLAINTIFFS' OPPOSITION TO [PROPOSED] INTERVENORS' MOTION TO INTERVENE** |
| City of Los Angeles, et. al. | |
| Defendant(s). | *[FILED CONCURRENTLY WITH PLAINTIFFS' REQUEST FOR JUDICIAL NOTICE, DECLARATION OF SHAYLA MYERS]* |
| | DATE:       August 12, 2019 |
| | TIME:       10:00 a.m. |
| | CRTRM:    Courtroom 10C |

# TABLE OF CONTENTS

I.      INTRODUCTION .................................................................................1

II.     RELEVANT PROCEDURAL HISTORY ...........................................2

III.    APPLICANTS ARE NOT ENTITLED TO INTERVENE AS A MATTER
        OF RIGHT .........................................................................................6

   a.   Applicants Do Not Have A Significant Protectable Interest In The Property
        or Transaction that is the Subject of the Action ..................................6

        i. The alleged interests claimed by the Applicants are "undifferentiated
           and generalized" ...........................................................................7

        ii. Applicants do not have a protectable interest in the continued violation
            of Plaintiffs' constitutional rights ................................................9

   b.   Applicants Cannot Show the Settlement Has A "Direct, Immediate, and
        Harmful" Effect on Their Interests ....................................................10

   c.   Applicants' Motion to Intervene is Untimely .....................................13

        i. The motion is untimely because it was filed after approval of a
           settlement that the parties had been negotiating since May 2016 ........13

        ii. Applicants were on notice that the their interests were impacted by
            this case and the City was not representing its interests long before
            May 2019 .....................................................................................14

        iii. The Parties will be prejudiced by a lack of certainty and further
             litigation ....................................................................................18

IV.     APPLICANTS SHOULD NOT BE ALLOWED TO INTERVENE UNDER
        RULE 24(b)(1)(B) AT THIS STAGE OF THE LITIGATION .........18

   a.   Applicants' Motion for Permissive Intervention is Untimely .............19

   b.   Applicants Do Not Have Claims Related to the Settlement ................19

V.      CONCLUSION .................................................................................20

i

# <u>TABLE OF AUTHORITIES</u>

Page(s)

*Federal Cases*

*Alaniz v. Tilliee Lewis Foods*,
   572 F.2d 657 (9th Cir. 1978) ...............................................................13, 17

*Allen v. Bedolla*,
   787 F.3d 1218 (9th Cir. 2015) ....................................................................14

*Amer. Martiime Transport Inc. v. U.S.*,
   870 F.2d 1559 (Fed. Cir. 1989) ..................................................................13

*Cal. Dep't of Toxic Substances Control v. Commercial Realty Projects, Inc.*,
   309 F.3d 1113 (9th Cir. 2002) ....................................................................14

*Center for Biological Diversity v. Bartel*,
   2010 WL 11508776 (S.D. Cal. Sept. 22, 2010) ...................................15, 16

*Chamness v. Bowen*,
   722 F.3d 1110 (9th Cir. 2013) ......................................................................6

*Cty. of Orange v. Air Cal.*,
   799 F.2d 535 (9th Cir.1986) .......................................................................17

*Dilks v. Aloha Airlines Inc.*,
   642 F.2d 1155 (9th Cir. 1981) ......................................................................9

*Donnelly v. Glickman*,
   159 F.3d 405 (9th Cir. 1998) ..................................................... 6, 9, 10, 19

*Freedom from Religion Found., Inc. v. Geithner*,
   644 F.3d 836 (9th Cir. 2011) ......................................................................19

*Greene v. U.S.*,
   996 F.2d 973 (9th Cir. 1993) ........................................................................6

*In re Fine Paper Antitrust Lit.*,
   695 F.2d 494 (3d Cir. 1982) .......................................................................13

ii

# <u>TABLE OF AUTHORITIES – CONT'D</u>

Page(s)

<u>*Federal Cases - Continued*</u>

*Lavan v. City of Los Angeles*,
  797 F. Supp. 2d 1005 ............................................................................2

*Lavan v. City of Los Angeles*,
  693 F.3d 1022 ....................................................................................16

*League of United Lat. Am. Citizens v. Wilson*,
  131 F.3d 1297 (9th Cir. 1997) ................................................. 13, 14, 18

*Northern Arapho Tribe v. LaCounte*,
  2016 WL 8710178 (D. Mont. 2016) .........................................................7

*People ex rel Van De Kamp v. Tahoe Reg. Planning Agency*,
  792 F.2d 779 (9th Cir. 1986) ............................................................8, 13

*Perry v. Proposition 8 Official Proponents*,
  587 F.3d (9th Cir. 2009) ........................................................................6

*Retiree Support Grp. of Contra Costa Cty. v. Contra Costa Cty.*,
  315 F.R.D. 318 (N.D. Cal. 2016) ..........................................................18

*Roman Catholic Bishop of Monterrey v. Cota*,
  2016 WL 320741 (C.D. Cal. 2016) ...........................................8, 12, 19

*So. Cal. Edison v. Lynch*,
  307 F.3d 794 (9th Cir. 2002) ....................................................6, 7, 8, 10

*U.S. v. Alisal Water Corp.*,
  370 F.3d 915 (9th Cir. 2004) ..................................................................7

*U.S.  v. Oregon*,
  913 F.2d 576 (9th Cir. 1990) ...........................................................17, 18

*U.S. v. State of Wash.*,
  86 F.3d 1499 (9th Cir. 1996) .................................................... 16, 18, 19

iii

1

## <u>TABLE OF AUTHORITIES – CONT'D</u>

2

Page(s)

3
_Federal Cases - Continued_

4

5
_U. S. v. Carpenter_,
  298 F.3d 1122 (9th Cir. 2002) ..............................................................15, 16

6

7
_Wetlands Water Dist., v. U.S._,
  700 F.2d 561 (9th Cir. 1983) ..............................................................7, 8, 13

8

9
_State Cases_

10

11
_Taylor v. Buff_,
  172 Cal.App.3d 384 (1985) ......................................................................12

12

13
_State Statutes_

14
Ca. Gov't Code Section 820.2 .......................................................................12

15
_Federal Rules_

16

17
Fed. Rule Civ. Pro. 24...............................................................................6, 8

18

19

20

21

22

23

24

25

26

27

28

__PLAINTIFFS' OPPOSITION TO [PROPOSED] INTERVENORS' MOTION TO INTERVENE__

## I.    INTRODUCTION

More than three years ago, four homeless individuals and two organizations providing services to homeless individuals in the Skid Row neighborhood of Los Angeles filed a lawsuit against the City of Los Angeles, alleging violations of their rights under the Fourth and Fourteenth Amendments to the United States Constitution. Plaintiffs brought this case after the City seized their tents, medications, and other belongings they needed to survive. Their essential belongings were either destroyed or stored by the City in a way that made the items inaccessible.

In response to Plaintiffs' application for a Temporary Restraining Order, this Court issued a preliminary injunction to stop those practices in Skid Row, and to ensure that homeless individuals could promptly access their essential belongings after they were released from custody or the belongings were seized as part of a mass cleanup. Following three years of litigation and negotiations, including numerous public and very contentious hearings in front of the Los Angeles City Council, the parties agreed to settle the case by keeping the Court's preliminary injunction in place, with some practical modifications, for an additional three years.

Now, after the case has been dismissed, a group of people who "live, work, and own property" in the area covered by the injunction ("Applicants"), seek to intervene, purportedly to object to the settlement, which they blame for every ill in the Skid Row area. But the Applicants' claimed interest in the litigation and the purported effects of the settlement demonstrate that what the Applicants truly object to is the existence of homeless people in their neighborhoods and what they really want to litigate is the City's failed response to the homelessness crisis (a crisis that long preceded this case). And as such, they are using this motion to intervene as an attempt to reopen this case and turn it into a referendum on homelessness in Skid Row.

An intervention after entry of settlement in this case is neither the time nor the place for such a referendum. Despite the Applicants' parade of horribles and their attempts to scapegoat this settlement and blame it for a decline in "quality of life" for

people who live, work and own property in Skid Row, the lawsuit and resulting settlement did not cause homelessness in Skid Row, and it is not to blame for the conditions they allege exist in Skid Row. Those conditions and any suffering alleged here are the result of years of political inaction by the City and the failure of leaders at all levels of government to respond to a housing crisis throughout the state, not a settlement that simply ensures that homeless people's constitutional rights are protected. Applicants' alleged harms are not in any way related to this litigation or settlement, nor do they justify intervention, whether by right or permission.

## II.   RELEVANT PROCEDURAL HISTORY

In March 2016, Plaintiffs Carl Mitchell, Judy Coleman, Michael Escobedo and Salvador Roque, along with the Los Angeles Community Action Network and the Los Angeles Catholic Worker, filed this lawsuit, alleging that the City had a custom, policy, and practice of violating homeless people's Fourth and Fourteenth Amendment rights by seizing and destroying their belongings. Dkt. 1, 9. Shortly thereafter, Plaintiffs filed an application for a temporary restraining order. Dkt. 13. In response, the City filed an opposition, challenging only the factual basis of the Plaintiffs' claims and the need for emergency relief. Dkt. 38.

Based on Plaintiffs' legal arguments and the factual evidence presented, the Court granted a preliminary injunction in April 2016. Dkt. 51. The injunction set forth restrictions on when and under what circumstances the City could seize homeless people's belongings, and what had to be done with the belongings in the event they were seized. The injunction, although based on the evidence presented by the Plaintiffs in this case, was largely consistent with a prior preliminary injunction against the City of Los Angeles, which had been upheld by the Ninth Circuit in 2012. *See Lavan v. City of Los Angeles*, 797 F. Supp. 2d 1005, *aff'd* 693 F.3d 1022 (9th Cir. 2012). Although Plaintiffs in this case sought a citywide injunction, the Court limited the injunction to Skid Row, reasoning that the Plaintiffs had not presented evidence of constitutional violations citywide. Dkt. 51.

2

Before the Court ruled on the Plaintiffs' application, the City filed a Motion to Dismiss, arguing only that the existence of state court remedies foreclosed the federal due process claims and that Plaintiffs' state law claims were insufficient. Dkt. 37. The Court dismissed two state law claims but denied the motion as to Plaintiffs' due process claims and other state law claims. Dkt. 57.

Shortly after the Court granted the preliminary injunction, the City filed a motion for clarification of the Court's preliminary injunction. Dkt. 58. The motion largely did not challenge the procedures in the preliminary injunction; instead the City requested clarification about what to do with homeless arrestees' property, the geographic boundaries of Skid Row, whether the City could confiscate property not moved after 24 hours advance notice, and whether the City would be in compliance with the injunction if it followed the procedures in the newly amended Los Angeles Municipal Code (LAMC) § 56.11, particularly as it related to the City's handling of bulky items. In an attempt to resolve these issues without further court intervention, the parties engaged in a series of mediations with Retired Magistrate Judge Carla Woehrle. In May 2017, the parties notified the Court they had reached agreement on some of the issues in the motion, but that the Court would still need to rule on the remaining issues. Dkt. 90. Plaintiffs filed an opposition in August 2017. Dkt. 98. In September 2017, the Court denied the motion, ruling in part that issues raised by the City in the motion were not properly before the Court in this case. Dkt. 102.

After the Court denied the City's motion, the parties resumed negotiations to finally resolve the case. In July 2018, the parties sought an extension of the trial dates and notified the Court (and the public) that they were engaging in settlement negotiations in an attempt to resolve the case without further litigation. Dkt. 109. Shortly thereafter, the City Attorney requested a closed session with the City Council to discuss the pending litigation and potential settlement. *See* Request for Judicial Notice, Los Angeles City Council File 18-0751 ("RJN"), Exh. B. In response, the business community in downtown Los Angeles lobbied the City Council, City

3

Attorney, and Mayor, fighting against a settlement of the case.

In September and October 2018 and February 2019, the Homelessness and Poverty Committee of the City Council held public hearings on the case, followed by the requested closed sessions with the City Attorney. RJN, Exh. A.  At each public hearing, representatives from the business community, including Applicants and organizations with which they are affiliated,[1] attended and continued to rally against a potential settlement—specifically, to fight against limiting an agreement to just Skid Row or to restrict enforcement of limits on property, including LAMC § 56.11. On March 6, 2019, the City Council heard significant public comment and then engaged in a lively public discussion, before adjourning to closed session. Following the closed session, council's vote was announced: 10-2 to authorize the City Attorney to settle.

These discussions, and especially the March 6, 2019 City Council hearing, were reported on by the local media.[2] On March 8, 2019, Council Member Joe Buscaino published an op-ed in the Los Angeles Daily News decrying the council decision to settle, and outlining specific objections to the settlement (most of which are echoed by

---

[1] *Id.* For example, Harold Bastian was present to testify at the October, February, and March meetings.  Larry Rauch submitted a speaker card at the September and October meetings.  Mark Shinbane, Robert Smiland, and Rauch are board members for the Central City East Association and the Los Angeles Downtown Industrial District, the BID for the Covered Area. *See* RJN, Exh. I. CCEA's executive director testified at the September 7 meeting and their general counsel testified at the March meeting. Representatives from other BIDs also testified at each meeting.  In addition, representatives from the Midnight Mission and Union Rescue Mission where Applicant and Alliance members Galvester Gaulding, Donald Shaw, Charles Malow, and Charles Van Scoy work or live, submitted oral and written comments.

[2] *See e.g.*, Gale Holland, "L.A. settles homeless rights case, likely limiting ability to clear skid row streets," Los Angeles Times (Mar. 6, 2019), https://www.latimes.com/local/lanow/ la-me-ln-skid-row-property-settlement-20190306-story.html ("L.A. Times").  *See also* Elijah Chiland, LA settles homeless property rights case, LA Curbed (Mar. 6 2019) https://la.curbed.com/2019/3/6/18253888/mitchell-settlement-los-angeles-homeless-property.

Applicants in their motion to intervene).[3] Other council members publicly discussed the settlement in news outlets as well.[4]

After the City Council authorized settlement, the parties worked out the details of the settlement, which was finally approved by the City Council on May 22, 2019 and approved by the Mayor on May 24, 2019. RJN, Exh. A.  On May 29, 2019, the parties filed the fully executed settlement agreement along with a stipulated order of dismissal, Dkt. 117-18, which this Court entered on May 31, 2019. Dkt. 119.

As reported, the settlement largely tracks this Court's injunction and extends its protections for an additional three years.  There are some changes, which were the result of three years of negotiations, mediations, monitoring and factual investigations, and in response to concerns from constituents, city workers, homeless individuals, and the changing conditions in Skid Row. Among the changes, the parties agreed to: 1) include provisions that made it explicitly clear that the injunction did not prevent the City from ensuring clear, passable sidewalks and ingresses and egresses; 2) clarify that the injunction did not prevent the City from clearing some categories of bulky items, including pallets, large furniture, and appliances, without a showing that the individual items were blocking sidewalks or constituted an immediate threat to public health and safety; and 3) require the City to provide documentation of its compliance with the injunction. In addition, the parties agreed to amend the settlement in the event that there was a subsequent ruling on the constitutionality of LAMC § 56.11.

///

///

///

---

[3] Joe Buscaino, "Settling the Mitchell case the wrong move for Los Angeles,", Los Angeles Daily News (Mar. 8, 2019)https://www.dailynews.com/2019/03/08/settling-the-mitchell-case-the-wrong-move-for-los-angeles/.

[4] *See supra* n.2, LA Times (quoting council members Jose Huizar and Marquis Harris-Dawson).

5

## III.   APPLICANTS ARE NOT ENTITLED TO INTERVENE AS A MATTER OF RIGHT

Under Rule 24(a) of the Federal Rules of Civil Procedure, a party "who claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest" must be allowed to intervene in a case "unless existing parties adequately represent that interest." Fed. Rule Civ. Pro. 24(a)(2).

An applicant seeking intervention as of right must show that: (1) it has a "significant protectable interest" relating to the property or transaction that is the subject of the action; (2) the disposition of the action may, as a practical matter, impair or impede the applicant's ability to protect its interest; (3) the application is timely; and (4) the existing parties may not adequately represent the applicant's interest. *Donnelly v. Glickman*, 159 F.3d 405, 409 (9th Cir. 1998). "While Rule 24 traditionally receives liberal construction in favor of applicants for intervention, it is incumbent on the party seeking to intervene to show that all the requirements for intervention have been met." *Chamness v. Bowen*, 722 F.3d 1110, 1121 (9th Cir. 2013). The party seeking intervention bears the burden of demonstrating each of the factors. Each of the factors is necessary to intervene as a matter of right; failure to satisfy any one of the factors is fatal to the application. *Perry v. Proposition 8 Official Proponents*, 587 F.3d 97, 950 (9th Cir. 2009).

### a.   Applicants Do Not Have a Significant Protectable Interest in the Property or Transaction that is the Subject of the Action

Applicants seeking to intervene as a matter of right must show they have a "'significant protectable interest' relating to the property or transaction that is the subject of the action." *So. Cal. Edison v. Lynch,* 307 F.3d 794, 803 (9th Cir. 2002). While "no specific legal or equitable interest need be established, . . . [n]evertheless, the movant must demonstrate a significantly protectable interest." *Greene v. U.S.*, 996 F.2d 973, 976 (9th Cir. 1993) (citations omitted).

6

This case stems from the seizure and destruction of homeless people's belongings by the City of Los Angeles. Applicants cannot claim an interest in the property that is the subject of the action—Plaintiffs' belongings—nor can they claim an interest in the transaction—the seizure of those belongings. As such, Applicants concede, as they must, that they have no interest in the City's liability in the case, *See* Mot. at 12, n.1. This alone is sufficient to defeat Applicants' claim to intervene as of right in this case. *See U.S. v. Alisal Water Corp*., 370 F.3d 915, 920 (9th Cir. 2004) ("Regardless of the phase of litigation at which an interest arises, that interest must be related to the underlying subject matter of the litigation").

Applicants claim they have a "specific, protectable interest" in the settlement; because they "live, work, own a business and/or own property" in Skid Row, the area covered by the settlement, they contend this is sufficient to allow them to intervene as of right solely to object to the settlement. There is no support for this position. *Id.* Applicants do not have such an interest in this case, and finding one here would result in a nearly limitless expansion of the concept of a "specifically protectable interest."

### i.      The alleged interests claimed by the Applicants are "undifferentiated and generalized"

While Applicants claim they are entitled to intervene in this lawsuit because they all "live, work, and own property" in downtown Los Angeles, this type of generalized, broad interest in a community does not constitute a "significantly protectable interest." "An undifferentiated, generalized interest in the outcome of an ongoing action is too porous a foundation on which to premise intervention as of right." *So. Cal. Edison*, 307 F.3d at 803. *See also Northern Arapho Tribe v. LaCounte*, 2016 WL 8710178 (D. Mont. 2016). The interest must be specific to the individual asserting the right to intervene and cannot simply be an interest that is shared by the entire community.

On this point, *Wetlands Water Dist., v. U.S.*, 700 F.2d 561 (9th Cir. 1983) is instructive. There, a water district brought a lawsuit against the United States,

regarding the delivery of water the United States owed to it under a contract.
Environmental Defense Fund, an environmental group with aims similar to the DTLA
Alliance here, moved to intervene and defend against Wetlands' motion for a
preliminary injunction (which subsequently formed the basis for a settlement between
Wetlands and the United States). *Id.* at 563.

The district court denied the motion to intervene, which the Ninth Circuit
upheld. The Court noted that the underlying litigation was a property dispute between
the U.S. Government and Wetlands Water District, and while the Court acknowledged
that EDF had an interest in the water that was the subject of the litigation, this interest
was shared by everyone in the region. As such, it was not a "legally protectable
interest" under Rule 24(a). "EDF and its members do indeed have an interest in the
extent of the right of Wetlands to water exported from the Delta. The same can be said
of a substantial portion of the population of northern California." The Court denied
EDF's motion to intervene. *See also So. Cal. Edison*, 307 F.3d at 803 (citing
*Wetlands*).

As in *Wetlands*, the underlying litigation is a dispute between the Plaintiffs
whose property was seized, and the City of Los Angeles, which unlawfully seized and
destroyed their belongings. The Applicants who now seek to intervene in the case
claim an interest not in the individual belongings, but instead, in the neighborhood and
public spaces from which Plaintiffs' property was seized. As with EDF, Applicants
may in some sense have an interest in the neighborhood where they live, work, and
own property; however, they share that interest with the tens of thousands of others
who also live, work, and own property in downtown Los Angeles. This interest is
exactly the sort of "undifferentiated, generalized interest" Courts have repeatedly held
is insufficient to form the basis of intervention. *See People ex rel Van De Kamp v.
Tahoe Reg. Planning Agency*, 792 F.2d 779, 781-82 (9th Cir. 1986); *Roman Catholic
Bishop of Monterrey v. Cota*, 2016 WL 320741 (C.D. Cal. 2016) at *5.
///

**PLAINTIFFS' OPPOSITION TO [PROPOSED] INTERVENORS' MOTION TO INTERVENE**

ii.     **Applicants do not have a protectable interest in the continued violation of Plaintiffs' constitutional rights**

Applicants claim that the injunction and now the settlement, which prevents the unconstitutional seizure and destruction of homeless people's belongings, has led to an increase in homeless people living in Skid Row and an increase in the number of tents and belongings on the sidewalk. Even if it were true that the unconstitutional seizure and destruction of people's belongs had made the sidewalks more presentable or even passable to people who "live, work, and own property in Skid Row," this is not a protectable property interest that courts have been willing to recognize.

Individuals who claim an interest in benefits they derive from unconstitutional or illegal activities do not have a "protectable interest" in those benefits, and are therefore are not entitled to intervene as of right in actions related to those unconstitutional or illegal activities. *See Donnelly v. Glickman*, 159 F.3d 405, 411 (9th Cir. 1998)(denying motion to intervene to object to remedies aimed at preventing discrimination because the intervenors have "no protectable interest in positions that they may have obtained due to specific discriminatory employment decisions."); *Dilks v. Aloha Airlines Inc*., 642 F.2d 1155, 1157 (9th Cir. 1981)("It is, of course, true that whenever someone is discharged, those junior to him may improve their seniority, and, if a reinstatement is required, the juniors will revert to a lesser seniority. But the juniors have no legally protectable right to benefit from an invalid discharge.").

Applicants argue that their interests are harmed because the sidewalks were clearer as a result of the City's unconstitutional practices. They also claim that there has been an increase in the number of homeless people living in Skid Row, since it has now become more hospitable to unhoused people as a result of the injunction and settlement preventing these constitutional violations.[5] But even if this were true that

---

[5] *See e.g*., Dec. of Bastian at 3 (with the settlement in place, "'undesirables' will continue to be funneled into the Skid Row area" from other areas in the City not covered by the settlement); Dec. of Smiland at 3. There is no evidence to support this

9

absence of homeless people's belongings makes it easier for business owners to rent out their properties for film shoots, sell fish, and keep tenants in their buildings, the Applicants simply do not have a protectable interest in the unconstitutional seizure and destruction of people's belongings.

### b. Applicants Cannot Show the Settlement Has a "Direct, Immediate, and Harmful" Effect on Their Interests

In addition to showing a protectable interest, which Applicants have not done, they must also show that the resolution of the Plaintiffs' claims "actually will affect the applicant". This effect must be "direct, non-contingent, substantial and legally protectable" to constitute the basis for an intervention as a matter of right. *So. Cal. Edison*, 307 F.3d at 803. Where, as here, Applicants seek to intervene solely to object to proposed remedies, they must show the remedy has a "direct, immediate, and harmful effect" on their legally protected interest. *Donnelly*, 159 F.3d at 411.

In this case, Applicants argue they are entitled to intervene in this case because they are subjected to "disease, squalor, foul odors, and violence," which affects their quality of life and economic interest in their businesses and properties. They also allege the settlement has made neighborhood sidewalks impassible. Mot. at 1.

Applicants' declarations and related arguments do not show (nor can they) that the myriad harms they allege are the direct result of the settlement in this case, which simply prevents the City from seizing and destroying homeless people's belongings in violation of the U.S. Constitution. In fact, many of Applicants' complaints are about the very presence of homeless people in their neighborhood.[6] And many of the

---

claim, and in fact, the 2019 Point in Time Count, offered by applicants, *see* Decl. of Mitchell, Exh. 3, indicates that Council District 14, which includes Skid Row, had a lower-than-average increase this year—in fact, the increase to CD 14 was far lower than for some other districts not covered by the settlement.

[6] *See e.g.*, Dec. of Bastian at 3 (complaining about "people every night sleeping on the benches around the south lawn of the Police Headquarters building, making it scary to take [his] dog there"); Dec. of Smiland at 3 (radical increase "street inhabitants");

---

Applicants concede that the issues blamed on the settlement exist outside the Covered Area and throughout downtown.[7] Applicants' conclusory assertion that the settlement "coincides with a near-catastrophic increase in health and safety issues on Skid Row" Mot. at 2, fails to allege, let alone show, a causal connection between this parade of horribles and the settlement. In fact, the harm asserted by Applicants is entirely unrelated to this litigation, let alone the remedy in this case.[8]

Nothing in the settlement prevents (or even relates to) the City taking actions outlined by the Los Angeles County Department of Public Health in its numerous letters to the City regarding the accumulation of trash and rodents in Skid Row.[9] In fact, Plaintiffs in this litigation as well as others have been advocating for years for the City to take the actions outlined by the Department of Public Health to address the harms Applicants now attempt to blame on this settlement.[10]

The same is true for Applicants' claim that the settlement has created impassable sidewalks in Skid Row. Applicants argue that the settlement "prohibits City workers from enforcing nearly any property restrictions in the area," and as a

---

Dec. of Shaw at 4 (complaining about "people out on the street"); Dec. of Harpt (blaming issues on "people living on Skid Row [who] seem emboldened to do whatever they want on the streets, because they know the law will not be enforced").

[7] *See e.g.*, Dec. of Bastian at 4 ("This tragedy affects all areas of DTLA, not just the 'Designated Area'"); Dec. of Pinsky.

[8] While applicants provide no evidence of a typhus outbreak, let alone a connection between the settlement and the disease, it is worth noting that on July 8, 2019, Mayor Garcetti announced that the declared typhus outbreak had been contained and the city returned to baseline levels. *See* Dec. of Myers, Exh. J.

[9] *See e.g.,* Dec. of Mitchell, Exh. 2, Letter Los Angeles Cty. Dept. of Public Health to Brian Buchner, dated June 7, 2019 (recommending City establish and maintain public sanitation systems, a plan for identification and cleaning of feces, urine, and waste, and provide adequate waste receptacles and routine trash collection).

[10] *See* Dec. of Myers, Exh. J ("Dirty Divide:  Out of Service," November 10, 2017); *see also*, "Services Not Sweeps: Our Demands," https://servicesnotsweeps.com (last visited Jul. 15 2019) (calling on the City to provide public health infrastructure like bathrooms, showers, and increase trash collection at homeless encampments).

11

result, the sidewalks in Skid Row have become impassible. But even if the right to passable sidewalks was a significant legal interest (which under *Wetlands* it is not), Applicants cannot show that the settlement has had a "direct, immediate and harmful effect on this interest," or that the settlement adversely affects their ability to protect this interest. Applicants grossly mischaracterize this Court's injunction and the settlement, which do not prevent the City from ensuring passable sidewalks. In fact, both are explicit that the City can (and indeed should) guarantee clear and passable sidewalks. The settlement provides that the City may move or even seize property that is blocking sidewalks or entrances and exits to buildings. *See* Dkt. 118-1 (Settlement at 6-7). And the settlement explicitly provides that nothing prohibits the City from enforcing any of its laws that are not inconsistent with the agreement. *Id.* at 7.

Given that the settlement does not allow for the blocking of sidewalks, ingresses or egresses, and it in no way prevents the City from ensuring clear and passable sidewalks, any problems with passable sidewalks are not the "direct, immediate" effect of the settlement agreement. Instead, they are the result of political decisions by the City of Los Angeles related to the allocation of resources in Skid Row. This is not at issue in this litigation, nor is it "protectable legal interest" under California law. *See e.g.,* Ca. Gov't Code Section 820.2; *Taylor v. Buff*, 172 Cal.App.3d 384 (1985) ("allocation of available resources according to variable priorities of need" does not, without more, create tort liability).

The issues Applicants raise in their declarations and the motion to intervene are not the type of "direct, immediate effects" that give rise to intervention as a matter of right. While they may be serious, from a legal standpoint, they constitute "incidental quality of life effects" that are insufficient to support a motion to intervene as a matter of right in this case. *Roman Catholic Bishop of Monterrey v. Cota*, 2016 WL 320741 (C.D. Cal. 2016) at *5 (denying intervention as a matter of right into a quiet title action to a group of constituents concerned about the health, safety, welfare and environment that would be affected by the construction of a casino on neighboring

12

lands). *See also People ex rel Van De Kamp v. Tahoe Reg. Plan'ng Agency*, 792 F.2d 779, 781-82 (9th Cir. 1986) (local landowners denied intervention in lawsuit filed by State against regional planning agency regarding a land use plan, on the ground that the lawsuit had only incidental, not direct impact on their property); *Am. Martiime Transport Inc. v. U.S.*, 870 F.2d 1559, 1561 (Fed. Cir. 1989). And more to the point, the concerns raised by Applicants and their resulting demands are, as the Court in *Wetlands* described it, demands for "enlightened public policy"—namely "what they believe the public policy . . . ought to be." 700 F.2d at 563. They are the kind of political interests that should be aimed at the Executive or Legislative Branches, and they are insufficient to support an application for intervention as a matter of right.

### c.   Applicants' Motion to Intervene is Untimely

Applicants' motion, filed more than three years after the case began, following months of public discussions and negotiations, and after the Court's dismissal of the case, is untimely. As with the other factors, timeliness is a threshold requirement and must be met in order to intervene under Rule 24(a). The timeliness inquiry is a pragmatic one concerning the amount of "water" under the "litigation bridge." *League of United Lat. Am. Citizens v. Wilson*, 131 F.3d 1297, 1303 (9th Cir. 1997) ("LULAC"). "Intervention after entry of a consent decree is reserved for exceptional cases." *Alaniz v. Tilliee Lewis Foods*, 572 F.2d 657, 659 (9th Cir. 1978). *See also In re Fine Paper Antitrust Lit.*, 695 F.2d 494, 500 (3d Cir. 1982).

### i.   The motion is untimely because it was filed after approval of a settlement that the parties had been negotiating since May 2016.

Contrary to Applicants' position that very little litigation occurred in this matter, by the time the Applicants moved to intervene, the entire case had already been dismissed, following three years of litigation, during which this Court "substantively—and substantially—engaged the issues," ordered a preliminary injunction, and denied a motion to dismiss and subsequent motion for clarification of

13

the injunction.  *See LULAC*, 131 F.3d at 1303 (where both a preliminary injunction and a motion to dismiss have already been litigated, that militates against allowing intervention). Moreover, Applicants acknowledge that the core of this lawsuit is the need for the City to "develop[] mechanisms and procedures to ensure that property is handled in a constitutionally and legally appropriate manner." Mot. at 2. The question of whether the prior practices were constitutional was at the heart of this Court's previous rulings on the preliminary injunction, the motion to dismiss, and the motion for clarification; all of these rulings, along with prior rulings by the District Court and the Ninth Circuit in *Lavan v. City of Los Angeles*, significantly influenced the negotiations and formed the basis for this settlement.

Therefore, as in *LULAC*, "the district court and the original parties [have] covered a lot of legal ground together." *LULAC*, 131 F.3d at 1303. This fact "weighs heavily against allowing intervention as of right." *Id.; see also Allen v. Bedolla*, 787 F.3d 1218, 1222 (9th Cir. 2015) (Where a motion to intervene "was filed after four years of ongoing litigation, on the eve of settlement, and threatened to prejudice settling parties by potentially derailing settlement talks," the motion was untimely.).

### ii. Applicants were on notice long before May 2019 that their interests were impacted by this case and the City was not representing their interests

In general, "a party must act as soon as he knows or has reason to know that his interests might be adversely affected by the outcome of litigation." *Cal. Dep't of Toxic Substances Control v. Commercial Realty Projects, Inc*., 309 F.3d 1113, 1120 (9th Cir. 2002).  Here, the City has been under this Court's injunction for more than three years. As Applicants acknowledge, "the proposed settlement at its core extends that preliminary injunction for an additional 3-4 years." Mot. at 13. Moreover, they agree that continuing the injunction "cause[s] no upset or change in policy". Mot. at 13. The City has been following roughly the same practices for the past three years—during that time, the same interests Applicants allege are impacted by the settlement would have also been impacted by the injunction. As such, Applicants were on notice since

**PLAINTIFFS' OPPOSITION TO [PROPOSED] INTERVENORS' MOTION TO INTERVENE**

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

the case began that their interest might be impacted by the outcome of the litigation. And yet they still failed to intervene. This makes their current application, filed after the case has already been dismissed, untimely.

Applicants excuse this delay by arguing that, although they waited for the case to be dismissed to move to intervene, their application is nonetheless timely under *U.S. v. Carpenter*, 298 F.3d 1122, 1125 (9th Cir. 2002), a per curium decision that creates a narrow exception to the general rule in cases involving government entities. Relying on C*arpenter*, Applicants argue that this Court should ignore the three years of litigation history and two years of settlement negotiations that preceded the entry of dismissal because all of the details of the settlement were not made public until the final settlement was filed with the court on May 29, 2019, and as such, Applicants were entitled to rely on the government to protect its interests.

While under *Carpenter*, "until parties have notice that the government may not be representing their interests, parties are entitled to rely on the presumption that the government is representing those interests," 298 F.3d at 1125, *Carpenter* does not give Applicants a pass to delay when they know the government *may* not be representing their interests.  Here Applicants knew or should have known that the government may not have been representing their specific interests in this case long before they moved to intervene. *Id.* [11]

*Center for Biological Diversity v. Bartel*, cited by Applicants, discusses at length when parties may be entitled to rely on the government to protect their interests. 2010 WL 11508776, at *4 (S.D. Cal. Sept. 22, 2010). There, the key factor in favor of timeliness was that the government had issued letters assuring applicants that the Endangered Species Act did not restrict their development.  They intervened as soon as they discovered the service was now taking a contrary position.  As such,

---

[11] Notably, none of the Applicants indicate they understood the City was acting in their interests or indicate when they were aware the City was not acting in their interests.

15

the Court held that they had acted timely.  *Id.* at *4-5.

Here, the government gave no indication that the City intended to fight this case after it received a number of early substantive rulings. On the contrary, unlike in previous cases brought related to the City's seizure and destruction of property, *see Lavan v. City of Los Angeles*, 693 F.3d 1022, the City did not appeal the preliminary injunction or the decision on the motion for clarification decided in September 2017. Instead, the City began engaging in negotiations around the implementation of terms of the injunction as early as 2016, all of which was documented in public court filings.

And this did not go unnoticed. Although Applicants attempt to characterize the settlement negotiations as confidential and outside the realm of public discussion, members of the business community, including groups related to the Applicants, indicated as early as August 2018 that they were concerned that the City would settle this litigation without going to trial and that they were lobbying city leaders to take specific positions in this litigation. In October 2018, the Central City Association and eleven other organizations (including the Midnight Mission and Union Rescue Mission), sent a letter to the City Council, expressing many concerns that Applicants now raise with the settlement. RJN, Exh. 3.  They indicated an understanding the City "has the ability to settle the *Mitchell* case in accordance with the current injunction," a position numerous individual opposed at the four public hearings held on the case. *Id.*

At that point, the positions taken by individuals in the community indicated strongly that it was known, or people had reason to believe, that the government may not be acting in accordance with their interests, such that they could no longer rely on the government's representation of their interests. *See U.S. v. State of Wash.*, 86 F.3d 1499, 1504-05 (9th Cir. 1996); *U.S.  v. Oregon*, 913 F.2d 576, 589 (9th Cir. 1990).

But even if, under *Carpenter*, the Applicants remained legally entitled to rely on a presumption of representation at that point, there was no question after March 6, 2019 that Applicants had notice that the City Council intended to settle the case in contradiction to the Applicants' stated interests. After the City Council announced it

16

was authorizing the City Attorney to negotiate a settlement, a number of council members publicly discussed terms of the settlement. Council Member Buscaino published an op-ed in the Daily News, decrying a settlement and indicating that neither LAMC 56.11 nor any other property limits would be enforced.[12] The LA Times announced that the settlement would be specific to Skid row, citing Council Member Huizar as the source.[13] These public statements about specific points in the settlement that Applicants oppose made it clear the City intended to negotiate a settlement that the Applicants now contend is contrary to their interests.

Yet, the Applicants did not move to intervene until almost three months later, after the parties negotiated and executed the settlement agreement and the case was actually dismissed. Had Applicants moved to intervene sooner (and the Court had found they had a protectable interest in the settlement), Applicants could have had their objections considered by the parties before the case was dismissed. Instead, they waited until after every detail was resolved and the case was dismissed. By waiting more than three years since they knew their interests were impacted by the case  and nearly three months after it was unquestionable that the settlement would include similar terms as the existing injunction and to which Applicants objected, the *Carpenter* exception simply does not apply. Instead, Applicants are bound by the general rule that "intervention after entry of a consent decree is reserved for exceptional cases." *Alaniz*, 572 F.2d at 659.  As in *Retiree Support Grp. of Contra Costa Cty. v. Contra Costa Cty*., 315 F.R.D. 318, 322 (N.D. Cal. 2016), Applicants had notice and information about the proposed settlement and nonetheless waited until the settlement stage had concluded to intervene.  Applicants' motion is untimely. *See also Cty. of Orange v. Air Cal.*, 799 F.2d 535, 538 (9th Cir.1986) (entry of settlement after five years of litigation preceded by well-publicized negotiations is too late a stage to intervene).

---

[12]*See Supra* Note 3.
[13]*See Supra* Note 2.

### iii. The Parties will be prejudiced by a lack of certainty and further litigation

Prejudice exists where "intervention would complicate the issues and prolong the litigation." *State of Wash.*, 86 F.3d 1499, 1504 (9th Cir. 1996); *see also Oregon*, 913 F.2d at 589 (district court did not abuse its discretion in denying a motion to intervene after years of settlement negotiations, because it could upset the delicate balance the parties have achieved); *Cty. of Orange*, 799 F.2d at 538 ("[t]he possibility of this settlement unraveling is so prejudicial that to allow the [city] to intervene at this date would be tantamount to disaster"). As discussed above, the parties have spent almost three years expending resources on conducting factual investigation, observing the injunction at work, litigating significant legal questions, and negotiating reasonable and constitutional policies and practices.

While Applicants argue there is no prejudice to the parties from reopening negotiations and delaying settlement because the injunction will remain in effect in the interim, this ignores the cost to the individual Plaintiffs who brought this case more than three years ago to ensure their rights would not be violated. Since the case was filed, one of the Plaintiffs has passed away.  Dkt. 116.  They will be prejudiced by the additional time and lack of finality in the settlement, and there is no question they would be prejudiced by disrupting the balance that was struck in order to reach a settlement in this case. *See State of Wash.*, 86 F.3d at 1504 (prejudicial to "upset the delicate balance achieved by the district court"). *See also LULAC*, 131 F.3d at 1304 (where proposed intervenors waited 27 months before moving to intervene, the court can consider "additional delay caused by intervenors' presence" in determining the timeliness calculus and "counsels against granting [applicants'] motion").

On the other hand, given the lack of a protectable interest and the fact that the settlement simply extends for a limited duration an injunction that has been in place for three years (which Applicants concede would remain in place if the case was reopened), Applicants will not be prejudiced if not allowed to intervene.

## IV.   APPLICANTS SHOULD NOT BE ALLOWED TO INTERVENE UNDER RULE 24(b)(1)(B) AT THIS STAGE OF THE LITIGATION

Applicants also seek to intervene under Rule 24(b)(1)(B), which gives the court the discretion to allow a party to intervene permissively to participate in litigation. "[P]ermissive intervention 'requires (1) an independent ground for jurisdiction; (2) a timely motion; and (3) a common question of law and fact between the movant's claim or defense and the main action.'" *Freedom from Religion Found., Inc. v. Geithner*, 644 F.3d 836, 843 (9th Cir. 2011). "Even if an applicant satisfies those threshold requirements, the district court has discretion to deny permissive intervention." *Donnelly*, 159 F.3d at 412.

### a.   Applicants' Motion for Permissive Intervention is Untimely

A finding of untimeliness defeats a motion for permissive intervention. *State of Wash.*, 86 F.3d at 1507. The factors for determining timeliness under Rule 24(b) are the same as Rule 24(a), except "for permissive intervention, courts analyze timeliness more stringently against the prospective intervention." *Roman Catholic Bishop of Monterrey*, 2016 WL 320741, at *6.

As discussed above, the application is untimely. In fact, the application for permissive intervention is even more untimely, since Applicants' sole justification for waiting until the case was settled to move to intervene was because they believed their interests were represented by the government. Such a showing is not required under Rule 24(b). Applicants offer no other justification for waiting so long to move to intervene, especially since the alleged harms caused by the settlement apply equally to this Court's preliminary injunction, which has been in effect for three years.

### b.   Applicants Do Not Have Claims Related to the Settlement

While the Applicants allege they have standing to intervene in this action, as discussed above, they fail to identify actual claims that are relevant to the settlement itself. Nor are Applicants' vague claims about crime in the area or the spread of typhus linked causally to the constitutional procedures agreed to here. Applicants do not even attempt to cite to any evidence of a causal link.

19

Finally, none of these claims "share with the main action a common question of law and fact" as required under Rule 24(b). The questions of law in this case relate to the constitutionality of the City's treatment of homeless people's belongings—this is not the same as Applicants' claim that the City should be doing more to address homelessness in Skid Row. There is simply no constitutional right to *increased* enforcement of the laws or to specific police action on one's behalf. The proposed Applicants have failed to identify any claim that they have at all, let alone one common to this action. At this point, they should not be permitted to intervene.

## V.   CONCLUSION

Applicants attempt to use this motion to raise unrelated questions about the sufficiency of the City's response to the homeless crisis. Applicants have no legally justifiable basis for doing so. As such, and for the other reasons outlined herein, Plaintiffs respectfully request the Court deny Applicants' motion to intervene.[14]

Dated: July 15, 2019

**LAW OFFICES OF CAROL SOBEL**

**LEGAL AID FOUNDATION OF LOS ANGELES**

**SCHONBRUN SEPLOW
HARRIS AND HOFFMAN LLP**

BY: */s/ Shayla Myers*

Shayla Myers
*Attorney for Plaintiffs.*

---

[14]Applicants attached as Exhibit A, Motion and Motion for Relief From Order or Modification; however, the motion has not yet been filed. Plaintiffs assume that Applicants intend to file the motion when and if they are allowed to intervene. At such time, Plaintiffs intend to file an opposition to the motion. If the Court grants Applicants' motion to intervene, Plaintiffs request this Court set either a hearing date or a briefing schedule for parties to respond.