UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

| | |
|---|---|
| Priority | ____ |
| Send | ____ |
| Enter | ____ |
| Closed | ____ |
| JS-5/JS-6 | ____ |
| Scan Only | ____ |

CASE NO.: **CV 16-01750 SJO (GJSx)**         DATE: **August 27, 2019**

TITLE:   **Carl Mitchell, et al. v. City of Los Angeles et al.**

========================================================================

PRESENT: THE HONORABLE S. JAMES OTERO, UNITED STATES DISTRICT JUDGE

Victor Paul Cruz                                         Not Present
Courtroom Clerk                                       Court Reporter

**COUNSEL PRESENT FOR PLAINTIFFS:**         **COUNSEL PRESENT FOR DEFENDANTS:**

Not Present                                              Not Present

========================================================================

**PROCEEDINGS (in chambers): ORDER DENYING MOTION TO INTERVENE FOR LACK OF JURISDICTION** [Docket No. 120]**.**

This matter is before the Court on Proposed Intervenors DTLA Alliance for Human Rights, Joseph Burk, Harry Tashdijian, Karyn Pinsky, Charles Malow, and Charles Van Scoy's (collectively, "Proposed Intervenors") Motion To Intervene ("Motion"), filed June 24, 2019.  Plaintiffs Carl Mitchell, Michael Escobedo, Salvador Roque, Judy Coleman, Los Angeles Catholic Worker, and Cangress' (collectively, "Plaintiffs") filed an Opposition to the Motion ("Plaintiffs' Opposition") on July 15, 2019.  Defendants City of Los Angeles ("the City"), Lieutenant Andrew Mathes, Sergeant Hamer, and Sergeant Richter (collectively, "Defendants") filed an Opposition to the Motion ("Defendants' Opposition") on July 15, 2019.  Proposed Intervenors filed two separate Replies to each of the Oppositions on July 29, 2019.  For the following reasons, the Court **DENIES** the Motion for lack of jurisdiction.

I.      FACTUAL AND PROCEDURAL BACKGROUND

     A.      Factual Background

In this action, Plaintiffs, a group of homeless individuals and organizations providing support services to the homeless, sued Defendants for purported violations of their constitutional and statutory rights.  According to Plaintiffs, the City has undertaken a mass practice and policy of clearing homeless people from the Skid Row area in Los Angeles.  Since around December of 2015, Defendants have allegedly seized and deprived Plaintiffs of property, without a pre- or post-deprivation hearing, in violation of the Fourth and Fourteenth Amendments to the Constitution and various federal and California state laws.  (*See generally* First Am. Compl. ("FAC"), ECF No. 1).

     B.      Procedural Background

Plaintiffs initially brought eleven causes of action against Defendants.  Plaintiffs claimed that Defendants' confiscation and destruction of Plaintiffs' property, without a warrant or a pre- or post-

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

CASE NO.:  <u>CV 16-01750 SJO (GJSx)</u>          DATE:  <u>August 27, 2019</u>

deprivation hearing, violated the Fourth, Fifth and Fourteenth Amendments of the Constitution. (FAC ¶¶ 72-86).  Plaintiffs also contended that Defendants falsely arrested certain Plaintiffs based on faulty allegations that they stole shopping carts, committed the tort of conversion by wrongfully seizing Plaintiffs' property, and contravened California state and federal laws protecting disabled individuals by depriving homeless people suffering from disabilities of necessary medications and medical equipment.  (FAC ¶¶ 87-102, 106-110 119-21).

On March 30, 2016, Plaintiffs filed an Ex Parte Application for a Temporary Restraining Order ("Application"), seeking to enjoin the City from confiscating property during arrests and cleanups of homeless areas.  Plaintiffs contended that "they have lost all or nearly all of their possessions without prior notice and adequate advisement of post-deprivation resources to reclaim their property" and that "the loss of key items, including [Plaintiffs'] medications, has taken an enormous toll on them, especially when they are left without protection from the elements at night."[1]  (Appl. 4.)

The Court granted the Application in part and issued a preliminary injunction that provided as follows:

"The City, its agents and employees are hereby enjoined from:

　　1.　　Confiscating property in Skid Row or its surrounding areas, incident to an arrest or as part of a cleanup of an area where homeless people are located, absent an objectively reasonable belief that it is abandoned, presents an immediate threat to public health or safety, is evidence of a crime, or is contraband; and

　　2.　　Destroying property in Skid Row or its surrounding areas, absent an immediate threat to public health or safety, without maintaining the property in a secure location for a period of less than 90 days; and

　　3.　　Storing seized property from Skid Row or its surrounding areas in a facility not open during regular business hours; and

　　4.　　Failing to provide notice advising homeless individuals whose property is seized of the address where seized property is being stored; and

　　5.　　Storing seized property from Skid Row or its surrounding areas in a facility that does not clearly catalog and segregate property based on the names

---

[1] The instant case is related to a prior case in the Central District of California, *Tony Lavan et al. v. City of Los Angeles*, CV-11-2874 (PSG).

    and identification, where available, of individuals from whom the property is taken; and

6. Storing seized property from Skid Row or its surrounding areas in a facility that is not accessible within 72 hours of seizure. Medication, medical equipment, and uncontaminated tents, sleeping bags, and blankets must be accessible within 24 hours of seizure or an individual's release from custody, whichever is later.

7. Additionally, where the City plans to engage in a mass cleanup of an area in Skid Row or its surrounding areas, the City must provide 24 hours advance notice advising homeless people of the cleanup and possible seizure of property and advising such individuals to remove essential property that they do not want confiscated."

The Court modeled the injunction after a prior injunction issued against the City in *Lavan v. City of Los Angeles*, 797 F. Supp. 2d 1005, a*ff'd* 693 F.3d 1022 (9th Cir. 2012). The Court limited the scope of the injunction to the area surrounding Skid Row.

After this preliminary injunction, the instant litigation remained dormant for several years. On April 25, 2019, Plaintiffs and Defendants entered a Settlement Agreement. (*See* Settlement Agreement, ECF No. 119.) Among several provisions, the Settlement Agreement contained the following requirements: (1) the City shall pay a total amount of $645,000 to Plaintiffs in this action (Settlement Agreement at 2); (2) Plaintiffs released Defendants from any claims related to the instant litigation (Settlement Agreement at 3); (3) the City would not seize property as part of a cleanup "absent an objectively reasonable belief that it is abandoned, presents an immediate threat to public health or safety, is evidence of a crime, or is contraband" (Settlement Agreement at 4); (4) "the City must provide at least 24 hours advance notice of the cleanup, advising homeless individuals of the cleanup and possible seizure of property and advising such individuals to remove property from the cleanup area before the cleanup begins" (Settlement Agreement at 4); and (5) "[t]he City must provide a 30 minute warning and opportunity for individuals to remove property when a cleanup is imminent on any block about to be cleaned" (Settlement Agreement at 4).

Prior to entering the Settlement Agreement, the City held several closed-door City Council sessions to analyze the merits of entering the Settlement Agreement. (Letter From City Attorney Dated March 16, 2019, Ex. B., ECF No. 123-1). During the public portion of the closed-door hearings, the City asked for and received comments from constituents, interested individuals, and organizations. (Speaker Request List, Special Meeting – Homelessness and Poverty Committee dated September 7, 2018, Ex. C, ECF No. 123-1; Speaker Request List, Homelessness and Poverty Committee Meeting dated October 3, 2018, Ex. D, ECF No. 123-1). Prior to voting on

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

CASE NO.:  CV 16-01750 SJO (GJSx)          DATE: August 27, 2019

the Settlement Agreement, City Council members also considered correspondence from constituents. (*See* Letter To Councilmember Huizar dated September 10, 2018, Ex. E, ECF No. 123-1; Letter To Council President Wesson dated March 4, 2019, Ex. G, ECF No. 123-1).

After considering the Settlement Agreement and the comments submitted at the hearings on the Settlement Agreement, the City Council voted to enter the Settlement Agreement with Defendants. The Court dismissed the instant litigation, reserving its jurisdiction only for the purpose of "resolv[ing] any future disputes regarding the interpretation, performance, or enforcement of the Settlement Agreement for a period of no more than three (3) years from the date of this Order."

Proposed Intervenors, a group of people who "live, work, and own business and/or property within the area entitled 'Skid Row and Surrounding Area,'" subsequently filed the instant Motion.  (Mot. at 5, ECF No. 120.)  They seek to intervene in this litigation to challenge the terms of the Settlement Agreement.  (*See generally* Mot.)  Proposed Intervenors mainly contend that the City entered the Settlement Agreement without giving them a meaningful opportunity to object to its terms. Moreover, they contend that the City's actions pursuant to the Settlement Agreement have had a hugely detrimental effect on them.  For example, the City has purportedly caused health and hygiene issues at some of Proposed Intervenors' businesses.

II.     DISCUSSION

   A.     Legal Standard

"Federal courts are courts of limited jurisdiction. They possess only that power authorized by Constitution and statute, which is not to be expanded by judicial decree." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994) (internal citations omitted).  Article III of the federal Constitution limits the jurisdiction of federal courts to actual "cases" or "controversies."  "It is not enough that a case presents a live controversy when it is filed. An actual controversy must exist at all stages of federal court proceedings." *Protectmarriage.com-Yes on 8 v. Bowen*, 752 F.3d 827, 834 (9th Cir. 2014) (internal citations omitted).

A third party may intervene in litigation only if the underlying litigation meets the case or controversy requirement of the federal Constitution.  Accordingly, before allowing a third party to intervene, a court must determine if it has jurisdiction over the underlying litigation.  *See Hernandez v. Campbell*, 204 F.3d 861, 865 (9th Cir. 2000).  Where there is no such jurisdiction, a court must deny the motion to intervene. *W. Coast Seafood Processors Ass'n v. Nat. Res. Def. Council, Inc.*, 643 F.3d 701, 704 (9th Cir. 2011)   A court has "a continuing obligation to assess its own subject-matter jurisdiction," *Allstate Ins. Co. v. Hughes,* 358 F.3d 1089, 1093 (9th Cir.2004), and the court "may not entertain an action over which it has no jurisdiction." *Hernandez,* 204 F.3d at 865 (citation omitted).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

CASE NO.:  CV 16-01750 SJO (GJSx)         DATE: August 27, 2019

The burden to demonstrate proper subject matter jurisdiction lies with the party seeking to invoke federal jurisdiction—here, the Proposed Intervenors. *See Jou v. Kimberly-Clark Corp.*, No. 13-CV-03075-JSC, 2015 WL 4537533, at *2 (N.D. Cal. July 27, 2015).

    B.    Application

Having reviewed the pleadings in this matter, the Court concludes that it lacks jurisdiction over the litigation between Plaintiffs and Defendants. Because there is no active case or controversy before this Court, the Court **DENIES** Proposed Intervenors' Motion for lack of jurisdiction.

On May 31, 2019, the Court dismissed the underlying litigation between Plaintiffs and Defendants with prejudice and terminated the case. (*See* Stipulated Order of Dismissal at ¶ 6, ECF No. 119.) As summarized in detail above, the Settlement Agreement provided that the City would pay Plaintiffs a sum of $645,000, that Plaintiffs relinquished legal claims against the City, and that the City would provide notice prior to seizing property from Plaintiffs and other homeless people located in certain areas of Skid Row. (*See* Settlement Agreement at 2, 4.) This Settlement Agreement brought an end to the litigation, which at its core involved the City's seizure of Plaintiffs' property in a series of organized cleanups. The Court's dismissal terminated the proceedings before this Court, eliminating the active case or controversy that had existed.

Accordingly, Proposed Intervenors cannot intervene in this litigation. *See Kokkonen*, 511 U.S. at 382. "Because the underlying litigation is over, [t]his Court cannot grant [Intervenors] any 'effective relief' by allowing [them] to intervene now." *W. Coast Seafood Processors Ass'n*, 643 F.3d at 704 (quoting *United States v. Ford*, 650 F.2d 1141, 1143 (9th Cir. 1981)).

In *West Coast Seafood Processors*, the Natural Resource Defence Council and the Pacific Marine Conservation Council (together, "NRDC") challenged the National Marine Fisheries Service's ("NMFS") program to preserve groundfish species off the coast of California. *Id.* at 702-03. The West Coast Seafood Processors Association ("WCSPA") sought to intervene in the litigation, and the district court denied this intervention. *Id.* at 704. While an appeal of the district court's denial was pending, the underlying litigation ran its course. The district court issued a final decision on NRDC's and NMFS' cross-motions for summary judgment and entered a final judgment, which the parties did not appeal. *Id.* After this occurred, the Ninth Circuit held that the motion to intervene was moot and dismissed it for lack of jurisdiction. *Id.* The Ninth Circuit ruled that it could not order WCSPA to be included as intervenors in litigation that had terminated. *Id.*

The instant case is in almost the same procedural posture as *West Coast Seafood Processors*. Plaintiffs and Defendants were litigating before this Court, but the parties entered the Settlement Agreement. This Court then dismissed the litigation with prejudice. After the Court granted

**CASE NO.:** CV 16-01750 SJO (GJSx)　　　　　　**DATE:** August 27, 2019

dismissal, the parties did not appeal.  The litigation between Plaintiffs and Defendants was over. After all of this occurred, Proposed Intervenors filed the instant Motion. Much like in *West Coast Seafood Processors*, Proposed Intervenors cannot participate in litigation that has terminated.

Proposed Intervenors contend, perhaps rightly, that some of Plaintiffs' and Defendants' actions taken pursuant to the Settlement Agreement have resulted in adverse consequences to them. Proposed Intervenor Harry Tashidijian, for example, argues that as a result of this Court's injunction and the subsequent Settlement Agreement, "[t]he risk to his property from fire damage and vandalism has increased exponentially in the last several years; the business is constantly having to replace gates and other property, clean the facilities, and post security to safeguard its property. They have had to spend over $100,000 in upgrades to their system and increased monitoring and pest control just as a result of the increased homeless and property in the area." (Mot. at 7.) If these types of allegations are true and are traceable to Plaintiffs' or Defendants' actions under the Settlement Agreement, Proposed Intervenors may have standing to pursue independent litigation against Plaintiffs or Defendants.  Any such litigation is not part of the litigation between Plaintiffs and Defendants, which has terminated.

To clarify this last point, the Court provides Proposed Intervenors with an example.  Consider that Neighbor A and Neighbor B are engaging in private nuisance litigation because Neighbor A has raucous parties seven days a week that begin at 10 p.m..  The neighbors enter a settlement agreement, which provides that Neighbor A may continue to have parties, but the parties must begin at 8:00 pm and can only occur three times a week.  Although contractually binding on Neighbor A and Neighbor B, the results of this agreement could impact the rights of third parties that were not involved in the litigation (for example, Neighbor C, who lives on the other side of Neighbor A).  Neighbor C, of course, retains the right to bring a lawsuit against Neighbor A for having parties three times a week.

Similarly, Proposed Intervenors can bring a lawsuit against Plaintiffs or Defendants for actions that Plaintiffs or Defendants are taking pursuant to the Settlement Agreement, assuming that the actions have an adverse effect on Proposed Intervenors. Such an action is a separate dispute requiring its own basis for jurisdiction.

As a final matter, the Court addresses Proposed Intervenors' argument that this Court has jurisdiction over the instant Motion because the Settlement Agreement specifies that: "The Court hereby expressly retains jurisdiction to resolve any future disputes regarding the interpretation, performance, or enforcement of the Settlement Agreement for a period of no more than three (3) years from the date of this Order."  Although the Court retains jurisdiction over disputes between Plaintiffs and Defendants about the interpretation and enforcement of the Settlement Agreement, this is the extent of the Court's jurisdiction.  The Settlement Agreement is only binding on Plaintiffs

**UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

CASE NO.: **CV 16-01750 SJO (GJSx)**          DATE: **August 27, 2019**

and Defendants, and the Court can only resolve disputes between these parties.[2]  This Court's jurisdiction does not extend to non-parties' desire to challenge the Settlement Agreement.

III.     RULING

The Court **DENIES** Intervenors Motion To Intervene for lack of jurisdiction.

IT IS SO ORDERED.

---

[2]  Although the City has incurred broad obligations under the Settlement Agreement, this is not a class action, and the terms of the Settlement Agreement are only binding on the named Plaintiffs and Defendants.  Proposed Intervenors insist that the City has enacted a legislative policy through the Settlement Agreement without following the constitutionally-required process.  Although this may be true, the instant litigation is not the appropriate forum in which to pursue this argument.